John A. Yanchunis
(Admitted Pro Hac Vice)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: 813-223-5505
jyanchunis@forthepeople.com

David M. Berger
(Admitted Pro Hac Vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Tel.: 510-350-9700
dmb@classlawgroup.com

J. Gerard Stranch IV
(Admitted Pro Hac Vice)
**STRANCH, JENNINGS & GARVEY,**
**PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: 615-254-8801
gstranch@stranchlaw.com

James J. Pizzirusso
(Admitted Pro Hac Vice)
**HAUSFELD LLP**
888 16th Street, Ste 300
Washington, DC 20006
Tel: 202-540-7200
jpizzirusso@hausfeld.com

Douglas J. McNamara
(Admitted Pro Hac Vice)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave
5th Floor Washington, DC 20005
Tel.: 202-408-4600
dmcnamara@cohenmilstein.com

E. Michelle Drake
(Admitted Pro Hac Vice)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612-594-5999
emdrake@bm.net

Lynn Toops
(Admitted Pro Hac Vice)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: 317-636-6481
ltoops@cohenandmalad.com

Gary Klinger
(Admitted Pro Hac Vice)
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Jeff Ostrow
(Admitted Pro Hac Vice)
**KOPELOWITZ OSTROW, P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-332-4200
ostrow@kolawyers.com

*Proposed Settlement Class Counsel*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE MGM INTERNATIONAL RESORTS DATA BREACH LITIGAITON<br><br>This Document Relates To: All actions. | Case No.: 2:20-cv-00376-GMN |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TANYA OWENS, et al.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MGM RESORTS INTERNATIONAL<br><br>　　　　Defendant. | Master File No. 2:23-cv-01480-GMN<br>(Consolidated for pretrial proceedings with<br>Case Nos. 2:23-cv-1481, 2:23-cv1537,<br>2:23-cv-1549, 2:23-cv-1550, 2:23-cv1577,<br>2:23-cv-1698, 2:23- cv-1719, 2:23-cv1777,<br>2:23-cv-1826, 2:23-cv- 1981, 2:23-cv2042,<br>2:23-cv-2064, 2:24-cv-81, 2:24-cv-00995,<br>2:24-cv-00999) |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL**
**OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL HISTORY .................................................................................2

III.  MATERIAL TERMS OF THE SETTLEMENT ................................................6

    A.   Settlement Class ........................................................................................6

    B.   Settlement Fund .........................................................................................6

    C.   Settlement Class Member Benefits ...........................................................6

    D.   Settlement Class Notice .............................................................................8

    E.   Claim Submission Process .........................................................................9

    F.   Disposition of Residual Funds ..................................................................9

    G.   Settlement Administrator .........................................................................10

    H.   Opt-Out and Objection Procedures .........................................................10

    I.   Release of Claims ....................................................................................10

    J.   Service Awards ........................................................................................11

    K.   Attorneys' Fees and Costs .......................................................................11

IV.   ARGUMENT .....................................................................................................11

    A.   The Settlement Class Should Be Certified...............................................12

        1.   Ascertainability ............................................................................12

        2.   Rule 23(a)......................................................................................12

        3.   Rule 23(b)(3).................................................................................15

    B.   The Settlement Should be Preliminarily Approved ..................................16

        1.   Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5)...........18

        2.   The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Churchill* Factor 5)..................................................................18

        3.   The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1-4)...........................................................19

        4.   The Equitable Treatment of Settlement Class Members

i

(Rule 23(e)(2)(D)).................................................................................21

C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel,
and Settlement Administrator ........................................................................21

D.    The Notice Program Will Provide the Best Notice Practicable and the
Claim Process is Reasonable ........................................................................22

E.    Proposed Schedule of Post-Settlement Events ...........................................24

V.    CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Adoma v. Univ. of Phoenix, Inc.*,

   913 F.Supp.2d 964 (E.D. Cal. 2012) ............................................................. 19

*Amchem Prods. Inc. v. Windsor*,

   521 U.S. 591 (1997) ........................................................... 11, 12, 15, 16

*Andersen v. Briad Restaurant Group LLC*,

   2020 WL 633599 (D. Nev. Jan. 13, 2020) ................................................ 12

*Andersen v. Briad Restaurant Group LLC*,

   2022 WL 181262 (D. Nev. Jan. 19, 2022) ................................. 11, 20, 23

*Andersen v. Briad Restaurant Group, LLC*,

   333 F.R.D. 194 (D. Nev. 2019) ............................................................ 13, 14

*Briseno v. ConAgra Foods, Inc.*,

   944 F.3d (9th Cir. 2017) ........................................................................ 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,

   361 F.3d 566 (9th Cir. 2004) ............................................................... 18

*Class Plaintiffs v. City of Seattle*,

   955 F.2d 1268 (9th Cir. 1992) ............................................................. 11

*Eisen v. Carlisle & Jacquelin*,

   417 U.S. 156 (1974) ............................................................................. 23

*Ellis v. Costco Wholesale Corp.*,

   657 F.3d 970 (9th Cir. 2011) ............................................................... 14

*FultonGreen v. Accolade, Inc.*,

   2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...................................... 20

*Gen. Tel. Co. Sw. v. Falcon*,

   457 U.S. 147 (1982) ............................................................................. 14

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) ................................................... *Passim*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

1    *Harris v. Palm Springs Alpine Estates, Inc.*,

2      329 F.2d 909 (9th Cir. 1964) ..................................................................... 13

3    *Hashemi v. Bosley, Inc.*,

4      2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ............................................ 14

5    *Hester v. Vision Airlines, Inc.*,

6      2009 WL 4893185 (D. Nev. Dec. 16, 2009) ............................................. 15

7    *In re Anthem, Inc. Data Breach Litig.*,

8      327 F.R.D. 299 (N.D. Cal. 2018) .............................................................. 21

9    *In re Blackbaud, Inc., Customer Data Breach Litig.*,

10      2024 WL 2155221 (D.S.C. May 14, 2024) ............................................... 20

11    *In re Bluetooth Headset Prods. Liab. Litig.*,

12      654 F.3d 935 (9th Cir. 2011) ............................................................... 18, 19

13    *In re Equifax Inc. Customer Data Sec. Breach Litig.*,

14      999 F.3d 1247 (11th Cir. 2021) ........................................................... 20, 21

15    *In re Mednax Serv., Customer Data Sec. Breach Litig.*,

16      2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ........................................... 20

17    *In re Online DVD-Rental Antitrust Litig.*,

18      779 F.3d 934 (9th Cir. 2015) ..................................................................... 23

19    *In re PostMeds, Inc. Data Breach Litig.*,

20      2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) .......................................... 13

21    *In re T-Mobile Customer Data Sec. Breach Litig.*,

22      2023 WL 11878508 (W.D. Mo. June 29, 2023) ........................................ 21

23    *In re Wells Fargo Home Mortg.*,

24      571 F.3d 953 (9th Cir. 2009) ..................................................................... 16

25    *In re Yahoo! Inc. Customer Data Breach Litig.*,

26      2020 WL 4212811 (N.D. Cal. July 20, 2020) ........................................... 21

27    *Linney v. Cellular Alaska P'ship*,

28      151 F.3d 1234 (9th Cir. 1998) ................................................................... 17

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

*McKinney-Drobnis v. Oreshack*,

  16 F.4th 594 (9th Cir. 2024) ........................................................................... 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

  339 U.S. 306 (1950) ....................................................................................... 23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 19

*Officers for Justice v. Civil Service Comm'n*,

  688 F.2d 615 (9th Cir. 1982) *cert. denied sub nom.*

  *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983) ........................... 17, 18, 20

*Rodriguez v. W. Publ'g Corp.*,

  563 F.3d 948 (9th Cir. 2009) ......................................................................... 18

*Staton v. Boeing Co.*,

  327 F.3d 938 (9th Cir. 2003) ................................................................... 11, 14

*Vizcaino v. Microsoft Corp.*,

  290 F.3d 1043 (9th Cir. 2002) ....................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,

  564 U.S. 338 (2011) ....................................................................................... 13

*Wolin v. Jaguar Land Rover N. Am. LLC*,

  617 F.3d 1168 (9th Cir. 2010) ....................................................................... 16

*Wren v. RGIS Inventory Specialists*,

  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................ 19

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................. 1, 12

Fed. R. Civ. P. 23(a) ................................................................................................ 12

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 14

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 14

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

Fed. R. Civ. P. 23(b) ..................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 12, 15, 16

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 23

Fed. R. Civ. P. 23(e) .................................................................................................. 1, 11

Fed. R. Civ. P. 23(e)(1) ........................................................................................... 12, 22

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 17, 18, 19

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................... 19

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 17, 21

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................... 22

Fed. R. Civ. P. 23(g)(1)(B) .......................................................................................... 22

Fed. R. Civ. P. 23(h)(1) ............................................................................................... 23

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 23, Plaintiffs, on behalf of themselves and the Settlement Class,[1] respectfully submit this Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

Defendant is a global gaming, hospitality, and entertainment company headquartered in Las Vegas, Nevada. In the course of operating its business, Defendant collects, maintains, and stores Private Information pertaining to its customers, including, but not limited to, names, contact information (such as telephone number, email address, and postal address), gender, dates of birth, driver's license numbers, passport numbers, and Social Security numbers.

In July of 2019, and then again in September of 2023, Defendant's computer systems were hacked in two separate incidents by cybercriminals resulting in the unauthorized access of tens of millions of Defendant's customers' Private Information. Following the Data Incidents, Plaintiffs and Settlement Class members began receiving notices that their Private Information was potentially involved. Thereafter, lawsuits were filed against the Defendant related to each incident.

To avoid the risk and expense of litigation, the Parties agreed to a global settlement to resolve Plaintiffs' claims for both Data Incidents on a classwide basis.[2] As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary all cash $45,000,000.00 Settlement Fund and valuable non-monetary relief.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Fed. R. Civ. P. 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel for the Settlement Class; (v) approving the form of

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.

[2] Due to this Court's familiarity with the 2019 Data Incident and the similarity of the claims in both cases, including the overlapping classes, Plaintiffs' counsel for the 2019 Action and the 2023 Action collectively determined it would be in the best interest of all concerned – the Plaintiffs, the Defendant, the putative classes, and the Court – to have this Court preside over both cases, which are now being joined for settlement purposes.

the Notices and the Notice Program; (vi) approving the Claim Form and the Claim process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (viii) establishing the opt-out and objection procedures and deadlines; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs and Service Awards.

## II.    PROCEDURAL HISTORY

### The 2019 Action

1.      In or about July 2019, unauthorized individuals accessed Defendant's network and downloaded certain customer data for approximately 37 million MGM guests. *See* Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, ¶ 3. Defendant discovered the 2019 Data Incident on or about July 10, 2019. *Id.* According to Defendant, the unauthorized individuals acquired personally identifiable information including customers' names, postal addresses, telephone numbers, email addresses, dates of birth, and passport numbers. *Id.* However, for the vast majority of the victims, the exposure was limited to their name, postal address, email address, telephone number, and/or their date of birth. *Id.*

2.      Following the 2019 Data Incident and commencing on February 21, 2019, Defendant was named in the first of eight class action lawsuits (ECF No. 1), which were eventually consolidated into the 2019 Action before the Honorable Gloria M. Navarro. (ECF No. 22, 86). The Court also appointed the 2019 Plaintiffs' interim class counsel. (ECF No. 93.)

3.      On April 2, 2021, the 2019 Plaintiffs filed a consolidated class action complaint, asserting claims for negligence, negligent misrepresentation, breach of implied contract, unjust enrichment, and various state consumer protection law violations. (ECF No. 101.).

4.      On June 1, 2021, Defendant filed a motion to dismiss the consolidated class action complaint, which was fully briefed. (ECF No. 103, 109, 117.)

5.      On August 13, 2021, Defendant filed a motion to stay discovery while the motion to dismiss was pending, which the 2019 Plaintiffs opposed, but the Court granted. (ECF No. 115, 116, 120, 121.)

6.      On November 2, 2022, the Court granted in part and denied in part Defendant's motion

2

to dismiss. (ECF No. 128.) The Court upheld the 2019 Plaintiffs' claims for negligence, breach of implied contract, and violations of some state consumer protection laws, but dismissed claims for violations of other state consumer protection laws, negligent misrepresentation, and unjust enrichment. *Id.*

7.      On December 19, 2022, Defendant answered the 2019 consolidated complaint, denying all material allegations and alleging affirmative defenses. (ECF No. 136.)

8.      After the Court's ruling on Defendant's motion to dismiss, the Parties in the 2019 Action engaged in substantial fact discovery, including written discovery, document production, depositions, and discovery motion practice. Joint Decl. ¶ 5.

9.      The Parties filed a Stipulated Discovery Plan and Scheduling Order on December 12, 2022. (ECF No. 133.)

10.     On December 28, 2022, the Parties attended by telephone a Scheduling Conference regarding their Joint Discovery Plan and Scheduling Order. (ECF No. 142.)

11.     On December 29, 2022, the Court entered a Scheduling Order, granting in part and denying in part the Parties' proposed discovery plan and scheduling order. (ECF No. 143.).

12.     On April 7, 2023, the Parties filed a joint stipulation and proposed protective order, which the Court entered on April 10, 2023. (ECF Nos. 160, 161.)

13.     On August 8, 2023, the Parties filed a joint stipulation for voluntary dismissal without prejudice of John Dvorak as a named plaintiff and proposed class representative, which the Court granted the same day. (ECF Nos. 163, 164.)

14.     After the Parties had engaged in and completed significant discovery, the Parties filed a stipulation and proposed order regarding modification of the discovery schedule, to complete depositions and resolve any outstanding discovery disputes. (ECF No. 175.) The Court entered the stipulation on November 8, 2023. (ECF Nos. 180, 181.)

15.     The 2019 Plaintiffs' counsel took six depositions (five MGM employees and one of a third-party) and defended seven named-Plaintiff depositions. Joint Decl. ¶ 6. The 2019 Plaintiffs produced thousands of documents, and Plaintiffs' counsel reviewed and coded over 180,000 documents produced by the Defendant. *Id.*

16.    The 2019 Plaintiffs filed notices of related cases on December 6, 2023 (ECF No. 183) and December 20, 2023 (ECF No. 185), seeking to relate several cases filed relating to the 2023 Data Incident, which Defendant and 2023 Plaintiffs opposed. (ECF Nos. 184, 186, 187, 188.)

17.    On February 20, 2024, the 2019 Plaintiffs filed a motion to compel discovery regarding the 2023 Data Breach. (ECF No. 200.) On March 15, 2024, the 2019 Plaintiffs filed a motion to compel Rule 30(b)(6) deposition testimony from Defendant. (ECF No. 211.) The Court denied both motions without prejudice on May 8, 2024. (ECF No. 229.)

18.    On March 15, 2024, the 2019 Plaintiffs filed a motion to compel production regarding the 2019 Plaintiffs' Fourth Set of Requests for Production, which the Court denied on May 8, 2024. (ECF Nos. 209, 230.) On April 12, 2024, the Court entered an Order granting the 2019 Parties' second request to modify the case management schedule. (ECF No. 224.)

19.    On July 9, 2024, the 2019 Parties filed a stipulation to stay the case pending mediation, which the Court granted that same day. (ECF Nos. 233, 234.)

20.    On August 14, 2024, Defendant filed a notice of withdrawal of its response to the 2019 Plaintiffs' notices of related cases. (ECF No. 235.)

21.    On September 18, 2024, the Court issued a Minute Order stating it would accept transfer of the consolidated cases in the 2023 Action. (ECF No. 237.)

**The 2023 Action**

22.    Beginning on September 7, 2023, in a separate cybersecurity incident, unauthorized individuals accessed Defendant's network by impersonating an information technology administrator and gaining access to employees' network access credentials. Joint Decl. ¶ 7. Once inside the network, the unauthorized individuals locked down Defendant's network and further gained access to approximately 37 million customers' personally identifiable information, including, but not limited to MGM's customers and guests' names, addresses, telephone numbers, email addresses, dates of birth, driver's license numbers, passport numbers, military identification numbers, and in some cases, Social Security numbers. *Id*.

23.    Following the 2023 Data Incident, and commencing on September 21, 2023, the Defendant was named in the first of 14 class action lawsuits. (2023 ECF No. 1.)

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

24. On March 19, 2024, the 2023 Plaintiffs moved to consolidate the cases. (2023 ECF No. 29.) On March 22, 2024, the Court consolidated the cases into the 2023 Action before the Honorable Richard F. Boulware, II. (2023 ECF No. 32.)

25. On April 19, 2024, the 2023 Plaintiffs moved the Court for appointment of interim lead counsel, which the Court granted on October 21, 2024. (2023 ECF No. 42, 55.)

**The 2019 Plaintiffs and 2023 Plaintiffs Agreement to Work Cooperatively for Mediation**

26. In July 2024, the 2019 Plaintiffs and the 2023 Plaintiffs agreed to participate in a joint mediation with Defendant before an experienced data breach mediator, Bruce Friedman, Esq., with JAMS in Las Vegas on August 5, 2024. Joint Decl. ¶ 8. In advance of the mediation, the 2019 Plaintiffs and the 2023 Plaintiffs propounded informal discovery requests to learn as much as possible about the 2019 Data Incident and the 2023 Data Incident. *Id*. Through the provision of informal discovery, Plaintiffs in both cases were able to evaluate the merits of Defendant's position. *Id*. The Parties also exchanged detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id*. The mediation was canceled for various reasons. *Id*. Thereafter, the 2019 Plaintiffs and the 2023 Plaintiffs decided to work together and collectively pursue a global settlement of the Actions. *Id*.

27. The Parties rescheduled and participated in mediation for October 10, 2024, with Mr. Friedman, in Las Vegas. (*See* ECF No. 236.) In advance of the mediation, Plaintiffs propounded additional informal discovery requests regarding the size and scope of the Data Incidents, including, but not limited to, the number of persons potentially impacted, the data elements impacted, and the geographical makeup of the putative classes. Joint Decl. ¶ 9.After a full day of negotiations, the Parties were unable to reach a settlement. Over the next several weeks, however, the Parties continued to negotiate the contours of a potential global resolution. *Id.*

28. On October 31, 2024, the 2019 Plaintiffs filed a notice of settlement, notifying the Court that all Parties (including the 2023 Plaintiffs) were able to resolve the cases. (ECF No. 238.)

29. On November 4, 2024, the Court entered a Minute Order requiring the Parties to file a joint status report every 60 days, beginning on December 2, 2024, informing the Court of the status of settlement. (ECF No. 239.)

30.    On November 7, 2024, consistent with the September 18, 2024 Minute Order (ECF No. 237), the Clerk of Court was directed to transfer the 2023 Action for all further proceedings (2023 ECF No. 57).

31.    The Parties signed the Agreement, which requires Plaintiffs to file this Motion for Preliminary Approval of the collective Settlement of the Actions.

## III.    MATERIAL TERMS OF THE SETTLEMENT

**A.    Settlement Class -** Plaintiffs seek Preliminary Approval of the following Settlement Class:

[A]ll persons in the United States whose Private Information was accessed during the

Data Incidents.

Excluded from the Settlement Class are the judges presiding over the Actions and members of their direct families. Agreement ¶ 76.

**B.    Settlement Fund -** The Settlement provides for a non-reversionary $45,000,000 all cash Settlement Fund, which will be fully funded by the Defendant within 10 business days of Preliminary Approval and used to pay: (1) all Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel and any Service Awards to the Class Representatives; and (3) all Settlement Administration Costs. *Id.* ¶ 89. Once Defendant funds the Settlement Fund, Defendant will not be required to make any other payments under this Settlement. *Id.* ¶¶ 79, 88.

**C.    Settlement Class Member Benefits -** All eligible Settlement Class members who may elect to receive Cash payments consisting of: (1) a Documented Loss Cash Payment in a maximum amount of $15,000.00 per individual; and (2) a Tier 1, 2, or 3 Cash payment depending on whether they are a Tier 1, 2, or 3 Settlement Class Member; and (3) Financial Account Monitoring. *Id.* ¶ 92. All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against without receiving a Settlement Class Member Benefit. *Id.*

*Documented Loss Cash Payment*

All Settlement Class Members may submit a Claim Form for a Documented Loss Cash

6

Payment for up to $15,000.00 per Settlement Class Member upon presentation of documented losses fairly traceable to either Data Incident and attest under penalty of perjury to incurring documented losses, supported by reasonable documentation. These losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the applicable Data Incident through the date of claim submission; and miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges. The supporting documentation may include receipts or other documentation not "self-prepared" by the Claimant. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. The lack of reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, will result in the rejection of the Claim for a Documented Loss Cash Payment. *Id.* ¶ 92.a.

### *Tiered Cash Payments*

In addition to a Document Loss Cash Payment, all Settlement Class members may elect a Tier Cash Payment, which is a flat cash payment the amount in which is based upon whether they are a Tier 1 Settlement Class Member, Tier 2 Settlement Class Member, or Tier 3 Settlement Class Member. The tiers are determined by the type of data a Settlement Class member had exposed in a Data Incident. The Notice will provide a unique identifier which Settlement Class members can use on the Settlement Website to determine the applicable tier. *Id.* ¶ 92.b.-d.

### 1. Tier 1 Cash Payment – $75.00 for Tier 1 Settlement Class members

In addition to a Documented Loss Cash Payment, Tier 1 Settlement Class Members may also elect to receive a Tier 1 Cash Payment, which is an estimated flat cash $75.00 payment. *Id.* ¶ 92.b.

### 2. Tier 2 Cash Payment – $50.00 for Tier 2 Settlement Class members

In addition to a Documented Loss Cash Payment, Tier 2 Settlement Class Members may also elect to receive a Tier 2 Cash Payment, which is an estimated flat cash $50.00 payment. *Id.* ¶ 92.c.

**3.  Tier 3 Cash Payment – $20.00 for Tier 3 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 3 Settlement Class members may also elect to receive a Tier 3 Cash Payment which is an estimated flat cash $20.00 payment. *Id.* ¶ 92.d.

***Financial Account Monitoring***

In addition to electing a Cash Payment, all Settlement Class Members may elect to submit a Claim for Financial Account Monitoring consisting of identity theft protection and credit monitoring as follows: one year of CyEx Identity Defense Total with three-bureau monitoring and at least $1,000,000 of fraud/identity theft insurance. The one-year period will commence when Settlement Class Members use their codes to activate the Financial Account Monitoring product. *Id.* ¶ 92.e.

**D.    Settlement Class Notice** - The Parties have agreed on a comprehensive Notice Program, which includes Email Notice, Postcard Notice, Publication Notice, Long Form Notice, a Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* § VIII.

Within 10 days of Preliminary Approval, Defendant will provide the Settlement Administrator with a Class List containing, if available, the Settlement Class members' names, email addresses, postal addresses, and telephone numbers. *Id.* ¶¶ 38, 99. Within 30 days of Preliminary Approval, the Settlement Administrator will initiate Publication Notice (digitally publish on the internet and on select social media platforms) and send Email Notice to all Settlement Class members for which an email address has been provided by Defendant. *Id.* ¶¶ 67, 100. Those Settlement Class members whose Email Notice is undelivered or bounces back, as well as those Settlement Class members for which email addresses are unknown, shall be sent a Postcard Notice disseminated via U.S. Mail no later than 60 days before the original scheduled Final Approval Hearing date. *Id*. ¶ 107. Notice shall also be published on the Settlement Website and available by mail in a Long Form Notice upon request of the Settlement Administrator. *Id.* ¶¶ 53, 100. The Notice Program shall be completed 45 days before the original scheduled Final Approval Hearing. *Id*. ¶ 108.

Settlement Class members may review the Long Form Notice, key documents and dates, and answers to frequently asked questions on the Settlement Website. *Id.* ¶¶ 97(d)-(e),101-102. They get can also get answers to the frequently asked questions and request the Long Form Notice and Claim Form by calling a toll-free telephone number. *Id*.

8

The Notice will inform the Settlement Class of the Settlement's general terms, including a description of the Actions, who is in the Settlement Class, and what claims will be released. Agreement, Exs. 1-4. All Notices shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out deadline to be excluded from the Settlement Class; the Objection Deadline to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which the Agreement and other related documents and information may be found. Also, the Long Form Notice includes the opt-out and objection procedures. *Id.* ¶¶ 101, 104-105.

**E.     Claim Submission Process** - To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX.  A copy of the proposed Claim Form is attached to the Agreement as Exhibit 5. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.* ¶ 111. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. *Id.* ¶ 112. The Claims process includes procedures for the Settlement Administrator to identify and reject duplicate Claims; to take any reasonable steps to prevent fraud and abuse; to send a Notice of Deficiency to a Settlement Class Member whose Claim Form was rejected for containing  incomplete or inaccurate information, and/or omitting required information in the Claim Form, allowing for the submission of information to validate the Claim; and to reduce or reject a Claim. *Id.* ¶¶ 113-116. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after the Effective Date. *Id.* ¶ 120. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Financial Account Monitoring with activation instructions. *Id.* ¶¶ 121-122. Greater detail on the Claims process is in Section IX of the Agreement.

**F.     Disposition of Residual Funds** - The Settlement is designed to exhaust the Settlement Fund. However, in the event there are funds remaining in the Settlement Fund, including from uncashed checks, within 45 days following the 180-day check negotiation period, the Parties will ask

9

the Court to approve the distribution of all remaining funds to a *cy pres* recipient. *Id*. ¶ 128.

**G.    Settlement Administrator** - The proposed Settlement Administrator, Epiq, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. *Id*. ¶ 74; *see also generally* Declaration of Cameron R. Azari, Esq. Regarding Notice Program ("Admin. Decl."), attached as ***Exhibit C***. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement § VII.

The Settlement Administrator's duties include those specified in the Agreement. *Id.* ¶ 97. The Parties shall jointly oversee the Settlement Administrator. *Id*. ¶ 95.

**H.    Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the original Final Approval Hearing date. *Id.* ¶ 61. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator including the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶ 104. Any Settlement Class member who does not timely opt-out shall be bound by the Agreement's terms even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶ 106. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id*. ¶ 105. To be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice (30 days before the original Final Approval Hearing date). *Id*. The objection requirements are in the Agreement, proposed Long Form Notice, and proposed Preliminary Approval Order, and will be on the Settlement Website. *Id*. ¶ 106, Exs. 4, 6.

**I.    Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the Settlement terms, including the Releases discharging the Released Claims against the Released Parties. *Id*. § XIII. The Released Claims are

narrowly tailored to only claims arising out of or relating to the Data Incidents.

**J.    Service Awards** – The amount of any Service Awards for the Class Representatives shall be determined by the Court and payable from the Settlement Fund. Agreement ¶ 125. Class Counsel shall apply for a Service Award in the amount of $10,000.00 each for those Plaintiffs that were deposed in the 2019 Action and $3,500.00 each for those Plaintiffs in the 2023 Action. *Id.* The Settlement is not contingent on approval of the requests for Service Awards, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 127. The Notice advise of the Service Awards that will be sought. *Id.*, Ex. 1-4.

**K.    Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs shall be determined by the Court and payable from the Settlement Fund. Agreement ¶ 126. In the Application for Attorneys' Fees, Costs, and Service Awards filed as part of the Motion for Final Approval, Class Counsel shall apply for an award of attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of costs. *Id.* The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 127. The Notice will advise the Settlement Class of the amount of attorneys' fees that Class Counsel intends to seek. *Id.*, Ex. 1-4.

**IV.    ARGUMENT**

A class action may not be settled without the approval of the court. Fed. R. Civ. Proc. 23(e). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In *Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022) (Navarro, J.), this Court observed:

> The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess

whether a class exists. *Id*. (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## A.    The Settlement Class Should Be Certified.

Plaintiffs must satisfy all Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

**1.    Ascertainability** - Ascertainability is an implied Rule 23 prerequisite. Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "precise, objective, and presently ascertainable." *Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2020 WL 633599, at *1 (D. Nev. Jan. 13, 2020) (Navarro, J.). Class certification and ascertainability typically involve one inquiry because, without an adequate class definition, a court cannot ascertain who belongs in the class. A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc*., 944 F.3d 1121 (9th Cir. 2017). Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notice that their Private Information was accessed during the Data Incidents. Agreement ¶ 76.

**2.    Rule 23(a)** - Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each requirement is satisfied here.

1    ***Numerosity*** - Rule 23(a)(1) requires that a class include so many members that joinder of all

2    would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or

3    inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329

4    F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). Generally, numerosity is satisfied when the class

5    exceeds 40 members. *Andersen v. Briad Restaurant Group, LLC*, 333 F.R.D. 194, 202 (D. Nev. 2019)

6    (Navarro, J.). Here, the joinder of millions of Settlement Class members would certainly be

7    impracticable, satisfying numerosity.

8    ***Commonality*** - Rule 23(a)(2) requires a showing that there are questions of law or fact

9    common to the class. Commonality is satisfied where the plaintiffs assert claims that "depend upon a

10    common contention" that is "of such a nature that it is capable of class-wide resolution—which means

11    that determination of its truth or falsity will resolve an issue that is central to the validity of each one

12    of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality

13    is a permissive requirement, and "not all questions of fact and law need be common to satisfy the

14    rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual

15    predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

16    within the class." *Id.* at 1019–20. A single common question will do. *Andersen*, 333 F.R.D. at 203.

17    Courts in this Circuit have previously addressed this requirement in the context of data breach

18    class actions and found it satisfied. *See, e.g., In re PostMeds, Inc. Data Breach Litig.*, No. 23-cv-

19    05710-HSG, 2024 WL 4894293, at *2 (N.D. Cal. Nov. 26, 2024) (commonality satisfied because

20    claims turn on whether defendant had legal duty to use reasonable security measures to protect class

21    members' personal information, whether that duty was breached, and whether defendant's data

22    security was adequate to protect personal information). Here, as in other data breach cases, the claims

23    turn on whether Defendant's security environment was adequate to protect the Settlement Class'

24    Private Information. That inquiry can be fairly resolved for all Settlement Class members once

25    because it revolves around evidence that does not vary between members, at least for purposes of the

26    Settlement. Indeed, the Data Incidents impacted each Settlement Class member's Private Information.

27    ***Typicality*** - The commonality and typicality analyses often overlap—both focus on whether

28    a sufficient nexus exists between the legal claims of the named class representatives and those of

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

1  individual class members to warrant class certification. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG

2  (RAOx), 2022 WL 2155117, at *3 (C.D. Cal. Feb. 22, 2022) (citing *Gen. Tel. Co. Sw. v. Falcon*, 457

3  U.S. 147, 157 n.13 (1982)). "The test of typicality 'is whether other members have the same or similar

4  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

5  other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale

6  Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). *See also Andersen*, 333 F.R.D. at 203

7  (same). "Typicality refers to the nature of the claim or defense of the class representative, and not to

8  the specific facts from which it arose or the relief sought." *Id.* "Under the 'permissive standards' of

9  Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of

10  absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020.

11      Here, typicality is satisfied because Plaintiffs' interests are aligned with the Settlement Class

12  in that they all received a notice letter(s) informing them their Private Information was accessed in

13  one or both the Data Incidents and were therefore impacted by the same purportedly inadequate data

14  security that allegedly harmed the rest of the Settlement Class. Their claims are based on the same

15  legal theories and underlying event.

16      ***Adequacy of Representation*** - "'To satisfy constitutional due process concerns, absent class

17  members must be afforded adequate representation before entry of a judgment which binds them.'"

18  *Andersen*, 333 F.R.D. at 204 (citation omitted). Fed. R. Civ. P. 23(a)(4) requires the representative

19  parties "fairly and adequately protect the interests of the class." This determination turns on two

20  questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with

21  other class members, and (2) will the representative plaintiffs and their counsel prosecute the action

22  vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Andersen*,

23  333 F.R.D. at 204. Both components are met.

24      Like all Settlement Class members, Plaintiffs have claims against Defendant arising from the

25  Data Incidents. Joint Decl. ¶ 10. Plaintiffs were similarly injured by Defendant's allegedly wrongful

26  acts. *Id.* Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and

27  fact as the claims of the Settlement Class as a whole. *Id.* Thus, Plaintiffs and the Settlement Class

28  they seek to represent have the same interests in recovering damages. Further, Plaintiffs have also

diligently and adequately prosecuted the Actions through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, the 2019 Plaintiffs responding to written discovery requests and being deposed, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Joint Decl. ¶ 11. Plaintiffs' willingness to serve as Class Representatives demonstrates their serious commitment to bringing about the best results for the Settlement Class.

Also, Class Counsel, who the Court has already appointed on an interim basis, are adequate to represent the Settlement Class' interests and should be appointed Settlement Class Counsel. In retaining these firms, Plaintiffs employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation omitted). With their extensive experience in class actions and other complex litigation, including data breach litigation, there can be no doubt Class Counsel are adequate to represent the Settlement Class here. Joint Decl. ¶ 13 and Ex. 1-9. Class Counsel have litigated this Actions, including, inter alia, evaluating the claims, preparing comprehensive pleadings, pursuing formal and informal discovery, consulting with data security experts, responding to motions to dismiss and preparing and responding to other motions, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *Id.* ¶ 14, 16. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**3.    Rule 23(b)(3)** - Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

***Predominance*** – The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."

15

*Amchem*, 521 U.S. at 623. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). There is no definitive test. In general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

Here, all Settlement Class members had their Private Information compromised in the Data Incidents and the security practices at issue did not vary from person to person. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. *Id.* Predominance is readily satisfied.

***Superiority*** – "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." All of these factors are present here. Adjudicating individual actions would be impractical. The amount in dispute for each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. Joint Decl. ¶ 15. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. *Id.* Accordingly, a class action is superior. *Id.*

Thus, the Settlement Class should be provisionally certified.

**B.    The Settlement Should be Preliminarily Approved.**

After determining settlement class certification is likely, the Court must determine whether

16

the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).[3]

The question at the preliminary approval stage is whether the Court is likely to find the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the Ninth Circuit traditional "*Churchill*" factors.[4]

The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

The *Churchill* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

---

[3] Courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).

[4] Rule 23(e)(2) was amended in 2018 to include explicit class settlement approval factors. However, consistent with the Advisory Committee note to that rule amendment, courts in this Circuit have made clear the amendment does not entirely displace the traditional Ninth Circuit factors, which overlap with the express Rule 23(e)(2) factors. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2024) (citing Fed. R. Civ. P. 23 Advisory Committee's note to the 2018 amendment). Thus, Plaintiffs address them all for the Court's benefit.

17

1    participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth*

2    *Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen.*

3    *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

4         The Settlement warrants Preliminary Approval under the Rule 23(e)(2) and *Churchill* factors.[5]

5         **1.**    **Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5)** - Both Class

6    Counsel and the Class Representative have adequately represented the Settlement Class. Class

7    Counsel fully investigated and litigated the facts and legal claims. Joint Decl. ¶¶ 12-15. Their

8    substantial efforts are exhibited by the formal and informal discovery regarding the 2019 Data

9    Incident. *Id.* While settlement of the 2023 Data Incident claims is coming at an earlier stage, Class

10   Counsel's efforts to use informal discovery to learn what occurred to cause the 2023 Data Incident

11   and the Private Information impacted, before attending a full-day mediation session with an

12   experienced mediator, allowed for arm's length and good faith negotiations, without collusion. *Id.* ¶

13   14. Class Counsel used their experience in complex class action litigation, including similar data

14   breach actions, and devoted substantial time and resources to vigorous litigation. *Id.*

15        The Class Representatives also have demonstrated their adequacy by (i) having a genuine

16   personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing

17   information and documents to Class Counsel to permit investigation and development of the

18   complaints; (iv) being available as needed, including to respond to discovery and in the case of the

19   2019 Plaintiffs sitting for deposition; (v) monitoring the Actions; and (vi) reviewing the Settlement

20   terms. Joint Decl. ¶ 11. Plaintiffs' respective interests are coextensive and do not conflict with the

21   interests of the Settlement Class. *Id.* ¶ 12. Plaintiffs have the same interest in the Settlement relief,

22   and the absent Settlement Class members have no diverging interests. *Id.*

23        **2.**    **The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Churchill***

24   **Factor 6)** - This Circuit puts "a good deal of stock in the product of arms-length, negotiated

25   resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150

26   F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). There is "[a]n initial presumption of fairness is

27

28     [5] The seventh factor is inapplicable, and the eighth factor is best considered after Notice of the
Settlement is sent to see if there is any opposition to the Settlement.

usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

The Settlement is the result of good faith, informed, and arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues at stake. Joint Decl. ¶ 16. Class Counsel recommend approval of the Settlement after they thoroughly investigated and analyzed Plaintiffs' claims; fully briefed the motion to dismiss the 2019 Data Incident claims, which the court denied in part and granted in part; engaged in formal and informal discovery for the 2019 Data Incident and informal discovery for the 2023 Data Incident; and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Actions and preparing them for well-informed settlement negotiations. *Id.* The Settlement was reached with the assistance of a well-respected and experienced mediator. *Id.* For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement.[6]

**3.** **The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1-4)** - Although Plaintiffs believe their claims are strong and meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 976 (E.D. Cal. 2012). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded

---

[6] None of the so-called "*Bluetooth*" factors are of concern. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). First, Class Counsel will not receive a disproportionate distribution from the Settlement Fund. Second, there is no clear-sailing arrangement regarding the attorneys' fees Class Counsel will seek. Agreement ¶ 127. Third, there is no provision that unawarded attorneys fees would revert to Defendant.

with litigation." *Officers for Justice*, 688 F.2d at 624 (citation omitted).

Data breach class actions are risky. *See, e.g.*, *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"). *See also, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case). The Settlement's fairness is underscored by consideration of the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.

Given the significant risks involved with further litigation, the Settlement provides meaningful Settlement Class Member Benefits, including Cash Payments and Financial Account Monitoring. Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Financial Account Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. *See generally* Admin Decl.. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. *Andersen*, 2022 WL 181262 at *7.

Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursing the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee or costs award to Class Counsel or the Service Awards. Agreement ¶ 127. As the Application for Attorneys' Fees, Costs, and Service Awards will detail, the 30% of the common Settlement Fund that will be sought is within the typical range of acceptable attorneys' fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Finally, there are no separate agreements to disclose

20

1    under Rule 23(e)(3) because all of the Parties' agreements are in the Agreement. Joint Decl. ¶ 167.

2    This Settlement compares very favorably to the following approved common fund data breach

3    settlements from around the country, given the types of data involved in the Data Incidents and class

4    size: *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL

5    11878508 (W.D. Mo. June 29, 2023) ($350,000,000 for 100,000,000 class members); *In re Cap. One*

6    *Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA) E.D. Va. Sept. 13, 2022)

7    ($190,000,000 for 98,000,000 class members); *In re Equifax Inc. Customer Data Sec. Breach Litig.*,

8    999 F.3d 1247 (11th Cir. 2021) ($380,500,000 for 147,000,000 class members); *In re Yahoo! Inc.*

9    *Customer Data Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 20, 2020)

10   ($117,500,000 for 194,000,000 class members); *In re Experian Data Breach Litig.*, No. 8:15-cv-

11   01592 AG (DFMx), ECF No. 322 (C.D. Cal. May 10, 2019) ($22,000,000 for 15,000,000 class

12   members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ($115,000,000

13   for 79,200,000 class members). Thus, the fourth *Churchill* factor is also satisfied.

14   **4.    The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** - All

15   Settlement Class Members are given an equal opportunity to claim Settlement Class Member

16   Benefits. Specifically, each has the option to be reimbursed for documented losses up to $15,000.00,

17   may elect to receive a flat cash payment based upon their respective Settlement Class tier, and all may

18   select Financial Account Monitoring. The tiering of additional flat cash payments reasonably assigns

19   higher value to the more valuable categories of Private Information exfiltrated in the Data Incidents.

20   All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease,

21   depending on the number of Valid Claims and the value of all Cash Payments claimed. Thus, the

22   Settlement Class Member Benefits distribution method will be equitable and effective.

23   Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects

24   the interests of the Settlement Class members.

25   **C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.**

26   Plaintiffs have been integral to Class Counsel throughout litigation and settlement. Joint Decl.

27   ¶ 11. The 2019 Plaintiffs were very involved in this litigation. *Id.* They assisted with the preparation

28

of the 2019 Complaint, provided necessary factual information and helped respond to written discovery requests, had their depositions taken, communicated with Class Counsel when needed, and reviewed settlement documents. *Id.* The 2023 Plaintiffs assisted with the preparation of the 2023 Complaint, provided necessary factual information, communicated with Class Counsel when needed, and reviewed settlement documents. *Id.* Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* ¶ 12. Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § IV.A.3., *supra*.

For the same reasons discussed above for adequacy of representation, and when the Court appointed them on an interim basis in the Actions, the Court should designate John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel. Fed. R. Civ. P. 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. Joint Decl., Exs. 1-9. Before commencing litigation, they investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. *Id.* ¶ 14. Class Counsel has devoted substantial time and resources to the Actions and will continue to do so. *Id.*

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq has a long history of successful class action administrations. *See* Admin. Decl.

### D. The Notice Program Will Provide the Best Notice Practicable and the Claim Process is Reasonable.

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice of a proposed settlement

1   must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means

2   "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle*

3   *& Jacquelin*, 417 U.S. 156, 173 (1974); *see also Andersen*, 2022 WL 181262 at *6 (notice satisfactory

4   if it describes the settlement terms in sufficient detail to alert those with adverse viewpoints to

5   investigate and to come forward to be heard). The best notice practicable is that which "is reasonably

6   calculated, under all of the circumstances, to apprise interested parties of the pendency of the action

7   and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*

8   *Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion

9   [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class

10  members in a reasonable manner."

11       The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the

12  Notices with the Settlement Administrator's input and assistance. Notice will be directly disseminated

13  to all persons who fall within the Settlement Class definition and whose names, email addresses, and

14  postal addresses can be identified with reasonable effort from Defendant's records, and through

15  databases tracking nationwide addresses and address changes, as well as through publication on

16  digital media. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (notice

17  provided by mail and email was sufficient). In addition, Epiq will administer the Settlement Website

18  containing relevant information about the Settlement and maintain the toll-free telephone line that

19  Settlement Class members can call. Further, the Notices include, among other information: a

20  description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form

21  Deadline; the last day of the Opt-Out Period; the last day of the Objection Period for Settlement Class

22  Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service

23  Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement

24  Class members may access this Agreement and other related documents and information. Agreement

25  § VIII. The Long Form Notice and Settlement Website will also detail the opt-out and objection

26  procedures approved by the Court. Finally, the Notice Program satisfies the requirements of Rule

27  23(h)(1), as the Notices will notify the Settlement Class that Class Counsel may apply to the Court

28  for an award of attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of costs, and

23

for Service Awards for the Class Representatives. *Id.* Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement, Exs. 1-4.

The Court should also approve the Claim Form and Claim process. The Claim Form is easily understood and may be submitted online via the Settlement Website or U.S. Mail sent to the Settlement Administrator. *Id.* ¶ 111. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled, and the Claim review process is robust. *Id.* ¶¶ 112-116.

### E.    Proposed Schedule of Post-Settlement Events

Consistent with the Agreement, Plaintiffs propose the schedule below. Plaintiffs request the Final Approval Hearing be scheduled for the week of June 16, 2025, or a later available date.

| | |
|---|---|
| Deadline to commence Notice Program | Within 30 days of the Preliminary Approval Order |
| Deadline to complete Notice Program | 45 days before the original Final Approval Hearing date |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards | 45 days before the original Final Approval Hearing date |
| Opt-Out Period Ends | 30 days before the original Final Approval Hearing date |
| Objection Period Ends | 30 days before the original Final Approval Hearing date |
| Claim Form Deadline | 15 days before the original Final Approval Hearing date |
| Final Approval Hearing | Week of June 16, 2025 (or soon thereafter based on the Court's availability). |

## V.    CONCLUSION

Plaintiffs respectfully request the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class for settlement purposes; (3) appoint Plaintiffs as Class Representatives; (4) appoint John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel; (5) approve the Notices and Notice Program, including the opt-out and objection procedures; (6) approve the Claim Form and Claims process; (7) appoint Epiq as the Settlement Administrator; (8) schedule the Final Approval Hearing; and (9) enter the proposed Preliminary Approval Order, attached as ***Exhibit D***.

Dated:   January 17, 2025          Respectfully submitted,

*/s/ Douglas J. McNamara*
Douglas J. McNamara
(Admitted Pro Hac Vice)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave
5th Floor Washington, DC 20005
Tel.: 202-408-4600
dmcnamara@cohenmilstein.com

E. Michelle Drake
(Admitted Pro Hac Vice)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612-594-5999
emdrake@bm.net

John A. Yanchunis
(Admitted Pro Hac Vice)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: 813-223-5505
jyanchunis@forthepeople.com

David M. Berger
(Admitted Pro Hac Vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Tel.: 510-350-9700
dmb@classlawgroup.com

*Interim Counsel in Case No.: 2:20-cv-00376-GMN*

*/s/ J. Gerard Stranch IV*
J. Gerard Stranch IV
(Admitted Pro Hac Vice)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: 615-254-8801
gstranch@stranchlaw.com

James J. Pizzirusso
(Admitted Pro Hac Vice)
**HAUSFELD LLP**
888 16th Street, Ste 300
Washington, DC 20006
Tel: 202-540-7200
jpizzirusso@hausfeld.com

Lynn Toops
(Admitted Pro Hac Vice)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: 317-636-6481
ltoops@cohenandmalad.com

Gary Klinger
(Admitted Pro Hac Vice)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
*gklinger@milberg.com*

Jeff Ostrow
(Admitted Pro Hac Vice)
**KOPELOWITZ OSTROW, P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-332-4200
ostrow@kolawyers.com

*Interim Counsel in Master File No. 2:23-cv-01480-GMN*

25