# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE MGM INTERNATIONAL RESORTS DATA BREACH LITIGAITON<br><br>This Document Relates To: All actions. | Case No.: 2:20-cv-00376-GMN |

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| TANYA OWENS, et al.<br><br>       Plaintiffs,<br><br>       v.<br><br>MGM RESORTS INTERNATIONAL, et al.<br><br>       Defendants. | Master File No. 2:23-cv-01480-RFB<br>(Consolidated for pretrial proceedings with Case Nos. 2:23-cv-1481, 2:23-cv1537, 2:23-cv-1549, 2:23-cv-1550, 2:23-cv1577, 2:23-cv-1698, 2:23- cv-1719, 2:23-cv1777, 2:23-cv-1826, 2:23-cv- 1981, 2:23-cv2042, 2:23-cv-2064, 2:24-cv-81, 2:24-cv-00995, 2:24-cv-00999) |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement[1] is entered into between Plaintiffs, on behalf of themselves and the Settlement Class, on the one hand, and Defendant, on the other hand, as of the last date signed below. The Parties hereby agree to the following terms in full settlement of the Actions, subject to a Final Approval Order entered by the Court.

### I. <u>Background</u>

### 2019 Data Incident

1.    Defendant is a global gaming, hospitality, and entertainment company headquartered in Las Vegas, Nevada.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

2.      In the course of operating its business, Defendant collects certain information pertaining to its customers.

3.      In or about July 2019, unauthorized individuals accessed Defendant's network and downloaded certain customer data for approximately 37 million MGM guests. Defendant discovered the 2019 Data Incident on or about July 10, 2019. For the vast majority of customers, the exposure was limited to their name, postal address, email address, telephone number, and/or date of birth.

4.      Following the 2019 Data Incident, and commencing on February 21, 2020, Defendant was named in the first of eight class action lawsuits (ECF No. 1), which were eventually consolidated into the 2019 Action before the Honorable Gloria M. Navarro. (ECF No. 22, 86). The Court also appointed interim class counsel. (ECF No. 93.)

5.      On April 2, 2021, the 2019 Plaintiffs filed a consolidated class action complaint against Defendant, asserting claims for negligence, negligent misrepresentation, breach of implied contract, unjust enrichment, and violations of various state consumer protection laws. (ECF No. 101.)

6.      On June 1, 2021, Defendant filed a motion to dismiss the consolidated class action complaint. (ECF No. 103.)

7.      On November 2, 2022, the Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 128.)

8.      After the Court's ruling on Defendant's motion to dismiss, the Parties in the 2019 Action engaged in substantial fact discovery, including written discovery, document production, depositions, and motion practice.

9.      The 2019 Plaintiffs filed notices of related cases on December 6, 2023 (2020 ECF

No. 183) and December 20, 2023 (2020 ECF No. 185), seeking to relate several cases filed concerning the 2023 Data Incident, which Defendant and the 2023 Plaintiffs opposed. (ECF Nos. 184, 186, 187, 188.)

10.    On August 14, 2024, Defendant filed a notice of withdrawal of its response to the 2019 Plaintiffs' notices of related cases. (ECF No. 235.)

**The 2023 Data Incident**

11.    Beginning on September 8, 2023, in a separate cybersecurity incident, unauthorized individuals accessed Defendant's network and further gained access to certain customer data for approximately 75 million of Defendant's guests.

12.    Following the 2023 Data Incident, the Defendant was named in 16 class action lawsuits. (2023 ECF No. 1.)

13.    On March 22, 2024, the Court consolidated the cases into the 2023 Action before the Honorable Richard F. Boulware, II.  (2023 ECF No. 32.)

14.    The Court granted the 2023 Plaintiffs' motion for appointment of interim lead counsel on October 22, 2024. (2023 ECF No. 55.)

**2019 Plaintiffs and 2023 Plaintiffs' Agreement to Work Cooperatively**

15.    In July 2023, the 2019 Plaintiffs and the 2023 Plaintiffs agreed to participate in a joint mediation with Defendant before an experienced data breach mediator, Bruce Friedman, with JAMS in Las Vegas. In advance of the mediation, the 2019 Plaintiffs and the 2023 Plaintiffs propounded informal discovery requests. Through the provision of informal discovery, Plaintiffs in both cases were able to evaluate the merits of Defendant's position. The Parties also exchanged detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. The mediation was canceled for various reasons.

16.     On October 10, 2024, the Parties participated in an all-day mediation in Las Vegas. In advance of the mediation, Plaintiffs propounded additional informal discovery requests regarding the size and scope of the Data Incidents, including, but not limited to, the number of people potentially impacted, the data elements impacted, and the geographical makeup of the putative classes.

17.     After a full day of negotiations, the Parties were unable to reach a settlement. Over the next several weeks, however, the Parties continued to negotiate the contours of a potential global resolution.

18.     On October 31, 2024, the 2019 Plaintiffs filed a notice of settlement, notifying the Court that all Parties (including the 2023 Plaintiffs) were able to resolve the Actions. (ECF No. 238.)

19.     On November 7, 2024, Judge Boulware transferred the 2023 Action to Judge Navarro. (2023 ECF No. 57.)

20.     The Parties now agree to settle the Actions entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the Data Incidents and the allegations made in the Complaints, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to their business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaints, and disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaints. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or

other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims in the Complaints, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaints lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II. <u>Definitions</u>

21.     "Actions" means the 2019 Action and the 2023 Action, collectively.

22.     "2019 Action" means the lawsuit addressing the 2019 Data Incident entitled: *In re MGM Resorts International Data Breach Litigation*, Case No. 2:20-cv-00376-GMN-NJK, filed in the United States District Court for the District of Nevada.

23.     "2023 Action" means the lawsuit addressing the 2023 Data Incident entitled: *Tanya Owens, et al. vs. MGM Resorts International, et al.*, Case No. 2:23-cv-01480-FRB, filed in the United States District Court for the District of Nevada, and all actions consolidated therewith, including: *Kirwan v. MGM Resorts International*, Case No. 2:23-cv-01481; *Zussman v. Vici Properties 1 LLC*, Case No. 2:23-cv01537; *Lackey v. MGM Resorts International*, Case No. 2:23-cv-01549; *Pircio v. MGM Resorts International*, Case No. 2:23-cv-01550; *Terezo v. MGM Resorts International*, Case No. 2:23-cv-01577; *Rundell v. MGM Resorts International*, Case No. 2:23-cv-01698; *Zari v. MGM Resorts International*, Case No. 2:23-cv-01777; *Manson v. MGM Resorts International*, Case No. 2:23-cv-01826; *Albrigo v. MGM Resorts International*, Case No. 2:23-cv-

01981; *Sloan v. Vici Properties Inc.*, Case No. 2:23-cv-02042; *Righetti v. MGM Resorts International*, Case No. 2:23-cv-02064; *Mejia v. MGM Resorts International*, Case No. 2:24-cv-00081; *Lassoff v. MGM Resorts International*, Case No. 2:24-cv-00995; and *Cartagenova v. MGM Resorts International*, Case No. 2:24-cv-00999.

24.    "2019 Complaint" means the Second Consolidated Class Action Complaint filed in the 2019 Action on November 4, 2022.

25.    "2023 Complaints" means all complaints filed in the 2023 Action, and all actions consolidated therewith.

26.    "2019 Data Incident" means the cybersecurity incident discovered by MGM on or about July 10, 2019.

27.    "2023 Data Incident" means the cybersecurity incident discovered by MGM on or about September 9, 2023.

28.    "2019 Plaintiffs" means Ryan Bohlim, Duke Hwynn, Larry Lawter, Kerri Shapiro, Gennady Simkin, Robert Taylor, and Victor Wukovits.

29.    "2023 Plaintiffs" means Tonya Owens, Emily Kirwan, David Zussman, David Lackey, Michael Pircio, David Terezo, Ronald G. Rundell, Laura Willis Abrigo, Anita Johnson, Paul Zari, Michael Manson, Kyle Sloan, Michelle Righetti, Edgar Mejia, and DuJun Johnson.

30.    "Application for Attorneys' Fees, Costs, and Service Awards" means the application made with the Motion for Final Approval seeking Service Awards for Class Representatives and Class Counsel's attorneys' fees and reimbursement for costs, which shall be filed no later than 30 days before the end of the Objection Period.

31.    "CAFA Notice" means the Class Action Fairness Act notice which shall be served

upon the appropriate state and federal officials, providing notice of the Settlement.

32.    "Cash Payment" means the cash compensation paid to Settlement Class Members who submitted Valid Claims for a Documented Loss Cash Payment, Tier 1 Cash Payment, Tier 2 Cash Payment, or Tier 3 Cash Payment.

33.    "Claim" means the submission of a Claim Form by a Claimant.

34.    "Claim Form" means the proof of claim, substantially in the form attached hereto as *Exhibit 5*, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

35.    "Claim Form Deadline" shall be 15 days before the initial scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Settlement Class Member Benefit.

36.    "Claimant" means a Settlement Class Member who submits a Claim Form.

37.    "Class Counsel" means: John Yanchunis of Morgan & Morgan Complex Litigation Group; E. Michelle Drake of Berger Montague PC; Doug McNamara of Cohen Milstein Sellers & Toll, PLLC; David Berger of Gibbs Law Group LLP; J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC; Lynn Toops of Cohen & Malad LLP; James Pizzirusso of Hausfeld LLP; Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; and Jeff Ostrow of Kopelowitz Ostrow P.A.

38.    "Class List" means a list of all individuals in the Settlement Class. Defendant shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. The Class List shall include, if available, Settlement Class members' names, email addresses, postal addresses, and telephone numbers.

39.    "Class Representatives" means all Plaintiffs who sign this Agreement.

40.     "Complaints" means the 2019 Complaint and the 2023 Complaints.

41.     "Court" means the United States District Court for the District of Nevada and the Judge(s) assigned to the Actions.

42.     "Data Incidents" means the 2019 Data Incident and the 2023 Data Incident, collectively.

43.     "Defendant" means MGM Resorts International or MGM.

44.     "Defendant's Counsel" means Neil Gilman, Jason Kim, and Ann Marie Mortimer of Hunton Andrews Kurth LLP for the 2019 Data Incident; Angela Agrusa, Andrew J. Hoffman, II, and Eric M. Roberts of DLA Piper LLP (US) for the 2023 Data Incident; and Todd L. Bice and Brianna Smith of Pisanelli Bice PLLC for the 2019 and 2023 Data Incidents.

45.     "Documented Loss Cash Payment" means the Settlement Class Member Benefit that all Settlement Class members who incurred documented losses may elect under Section V herein.

46.     "Email Notice" means the email notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1***, that the Settlement Administrator shall disseminate to the Settlement Class.

47.     "Effective Date" means 10 days after the time for appeal of the Final Approval Order runs. If an appeal is filed, then the Effective Date shall be 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal and no other appeals are possible.

48.     "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

49.     "Financial Account Monitoring" means up to one year of three-bureau identity theft

protection and credit monitoring that Settlement Class Members may elect under Section V herein.

50.    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

51.    "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

52.    "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be substantially in a form attached hereto as ***Exhibit 7***.

53.    "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 4***, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail upon request made to the Settlement Administrator.

54.    "MGM Resorts International" or "MGM" means Defendant.

55.    "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

56.    "Motion for Preliminary Approval" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

57.    "Notice" means the Email Notice, Postcard Notice, Publication Notice, and Long Form Notice that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

58.    "Notice Program" means the methods provided for in this Agreement for giving Notice of the Settlement (Email Notice, Postcard Notice, Publication Notice, and Long Form

Notice), along with the Settlement Website and Settlement telephone line.

59.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

60.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends 30 days before the initial scheduled Final Approval Hearing.

61.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends 30 days before the initial scheduled Final Approval Hearing.

62.    "Party" means Plaintiffs and Defendant, individually, and "Parties" means Plaintiffs and Defendant, collectively.

63.    "Plaintiffs" means the 2019 Plaintiffs and the 2023 Plaintiffs, collectively.

64.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibit 2*, that the Settlement Administrator shall disseminate to those members of the Settlement Class whose Email Notice bounces back or is undeliverable.

65.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order.

66.    "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program, substantially in the form attached hereto as *Exhibit 6*.

67.    "Publication Notice" means the Settlement notice, substantially in the forms attached hereto as *Exhibit 3*, that the Settlement Administrator shall digitally publish on the internet and on select social media platforms.

68.    "Private Information" means Settlement Class members' information that may have

been accessible in either Data Incident, such as names, telephone numbers, email addresses, dates of birth, gender, drivers' license numbers, passport numbers, military identification numbers, and Social Security numbers.

69.    "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

70.    "Released Claims" means the claims described in Section XIII of this Agreement.

71.    "Released Parties" means Defendant, and its present and former parents, subsidiaries, divisions, departments, worldwide affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, employees, associated third Parties, predecessors, successors and assigns, and any other person acting on Defendant's behalf, in their capacity as such. It is understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

72.    "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him or her, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or

11

any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

73.    "Service Awards" shall mean the payment the Court may award the Plaintiffs who sign this Agreement for serving as Class Representatives.

74.    "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc. or Epiq.

75.    "Settlement Administration Costs" means all costs and fees of or incurred by the Settlement Administrator regarding Notice and Settlement administration.

76.    "Settlement Class" means all persons in the United States whose Private Information was accessed during the Data Incidents. Excluded from the Settlement Class are the judges presiding over the Actions and members of their direct families.

77.    "Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

78.    "Settlement Class Member Benefit" means the Cash Payments and Financial Account Monitoring available to Settlement Class Members under the Settlement.

79.    "Settlement Fund" means the non-reversionary $45,000,000.00 all cash fund that Defendant has agreed to pay or cause to be paid under the terms of the Settlement.

80.    "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and

information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website and URL may not include any of Defendant's logos or trademarks. The Settlement Website shall remain online and operable for six months after Final Approval.

81.    "Tier 1 Cash Payment" means the Settlement Class Member Benefit consisting of an estimated $75.00 cash payment (subject to *pro rata* increase or decrease) that Tier 1 Settlement Class Members may elect under Section V herein.

82.    "Tier 2 Cash Payment" means the Settlement Class Member Benefit consisting of an estimated $50.00 cash payment (subject to *pro rata* increase or decrease) that Tier 2 Settlement Class Members may elect under Section V herein.

83.    "Tier 3 Cash Payment" means the Settlement Class Member Benefit consisting of an estimated $20.00 cash payment (subject to pro rata increase or decrease) that Tier 3 Settlement Class Members may elect under Section V herein.

84.    "Tier 1 Settlement Class member" means a member of the Settlement Class who had their Social Security number or military identification number exposed in the Data Incidents and who is eligible to make a Claim for a Tier 1 Cash Payment.

85.    "Tier 2 Settlement Class member" means a member of the Settlement Class who had their passport number or driver's license number exposed in the Data Incidents, who is not also a Tier 1 Settlement Class member, and who is eligible to make a Claim for a Tier 2 Cash Payment.

86.    "Tier 3 Settlement Class member" means a member of the Settlement Class who

had their name, postal address, and date of birth exposed in the Data Incidents, who is not also a Tier 1 or 2 Settlement Class member, and who is eligible to make a Claim for a Tier 3 Cash Payment.

87.    "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Pacific Time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.    Settlement Fund

88.    Within 10 business days of Preliminary Approval, Defendant shall deposit $45,000,000.00 in cash into the Escrow Account to establish the Settlement Fund. Once the Settlement Fund is fully funded with $45,000,000.00, Defendant shall not be required to pay any more money under this Settlement.

89.    The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit Valid Claims; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs.

90.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg.§ 1.468B-l at all times from the creation of the Escrow Account.  All interest earned on the funds shall be for the benefit of the Settlement Class. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

## IV. <u>Certification of the Settlement Class</u>

91.    Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes only under Rule 23(b)(3). Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that these Actions shall proceed as a class action settlement; provided however, that if a Final Approval Order is not issued or is reversed on appeal, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement or any negotiations leading to this Agreement in support of any subsequent motion for class certification of any class in the Actions.

## V. **Settlement Consideration**

92.    All Settlement Class Members are eligible to submit a Claim for a Documented Loss Cash Payment and Financial Account Monitoring. Additionally, Tier 1 Settlement Class members may submit a Claim for a Tier 1 Cash Payment, Tier 2 Settlement Class members for a Tier 2 Cash Payment, and Tier 3 Settlement Class members for a Tier 3 Cash Payment. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendant without receiving a Settlement Class Member Benefit.

### a.    **Documented Loss Cash Payment**

All Settlement Class Members may submit a Claim for a Documented Loss Cash Payment for up to $15,000.00 per Settlement Class Member upon presentment of documented losses fairly traceable to either Data Incident. To receive a Documented Loss Cash Payment, a Settlement Class Member must elect Documented Loss Cash Payment on the Claim Form attesting under penalty of perjury to incurring documented losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. These losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the applicable Data Incident through the date of claim submission; and miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members with losses must submit documentation supporting their Claims. This can include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted

documentation. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected.

**b.    Tier 1 Cash Payment – $75.00 for Tier 1 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 1 Settlement Class Members may also elect to receive a Tier 1 Cash Payment, which is an estimated flat cash payment in the amount of $75.00.

**c.    Tier 2 Cash Payment – $50.00 for Tier 2 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 2 Settlement Class members may also elect to receive a Tier 2 Cash Payment, which is an estimated flat cash payment in the amount of $50.00.

**d.    Tier 3 Cash Payment – $20.00 for Tier 3 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 3 Settlement Class members may also elect to receive a Tier 3 Cash Payment which is an estimated flat cash payment in the amount of $20.00.

**e.    Financial Account Monitoring**

In addition to electing a Cash Payment, all Settlement Class Members may elect to submit a Claim for Financial Account Monitoring which is identity theft protection and credit monitoring as follows: one year of CyEx Identity Defense Total with three-bureau monitoring and at least $1,000,000 of fraud/identity theft insurance. The one-year period will commence when Settlement Class Members use their activation codes.

***Pro Rata*** **Adjustments on Cash Payments** - Settlement Class Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is

insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments will be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Financial Account Monitoring. Then, the Settlement Administrator shall *pro rata* reduce the remaining amounts for payment Documented Loss Cash Payments and all other Cash Payments on an equal percentage basis.

## VI.    <u>Settlement Approval</u>

93.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval, after review by Defendant.

94.    The Motion for Preliminary Approval shall, among other things, request the Court enter the Preliminary Approval Order, which will, at a minimum: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) appoint Class Counsel to represent the Settlement Class and the Plaintiffs as Class Representatives; (4) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (5) approve the Claim Form and Claim process; (6) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement; (7) stay the Actions and any related actions pending Final Approval of the Settlement; and (8) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendant's Counsel.

## VII.    <u>Settlement Administrator</u>

95.    The Parties agree that, subject to Court approval, Epiq shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement

Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws.

96.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims.

97.    The Settlement Administrator's duties include:

a.    Completing the Court-approved Notice Program by noticing the Settlement Class by Email Notice or Postcard Notice, initiating the Publication Notice, sending Long Form Notices and paper Claim Forms upon request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b.    Establishing and maintaining the Settlement Fund in the Escrow Account;

c.    Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class and objections from Settlement Class Members, and Claim Forms;

d.    Establishing and maintaining the Settlement Website to provide important information about the Settlement and electronic submission of Claim Forms;

e.    Establishing and maintaining an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

f.    Responding to any mailed Settlement Class member inquiries;

g.    Processing all opt-out requests from the Settlement Class;

h.    Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.    In advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j.    Distributing, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

k.    Sending Settlement Class Members who elect Financial Account Monitoring emails instructing how to activate the Financial Account Monitoring service;

l.    Paying Court-approved attorneys' fees, costs, and Service Awards out of the Settlement Fund;

m.    Paying Settlement Administration Costs, including any required taxes, out of the Settlement Fund following approval by Class Counsel; and

n.    Any other Settlement Administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

98.     The Notice Program and Notices will be reviewed and approved by the Settlement Administrator. The Notices may be revised if agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to the Notices may also be made prior to dissemination of Notice.

## VIII.   Notice to the Settlement Class

99.     Defendant will provide the Settlement Administrator with the Class List no later than 10 days after entry of the Preliminary Approval Order.

100.    Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program, including initiating the Publication Notice and sending Email Notice to Settlement Class members.

101.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

102.    The Settlement Administrator shall establish the Settlement Website no later than

the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

103.    Pursuant to the Settlement Administrator' digital notice plan, Publication Notice shall be made in the form of banner advertisements on the internet and across select social media platforms for the purpose of creating awareness about the Settlement.

104.    The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement; and the Email Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim, and even if her or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendant relating to the Released Claims.

105.    The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Email Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel,

Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

106.     For an objection to be considered by the Court, the objection must also set forth:

a.     the objector's full name, mailing address, telephone number, and email address (if any);

b.     all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.     the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.     the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

e.     the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections

that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

      f.     the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

      g.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

      h.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      i.     the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

107.    The Settlement Administrator shall perform reasonable physical address traces for those Email Notices that experience a hard bounce-back or are otherwise identified as undeliverable, incorrect, or are nonfunctional addresses. Those Settlement Class members whose physical addresses were identified will be sent a Postcard Notice no later than 60 days before the original date set for the Final Approval Hearing.

108.    The Notice Program shall be completed no later than 45 days before the initial scheduled date set for the Final Approval Hearing.

109.    If the Notice Program is not approved or is modified in a material way by the Court, Defendant shall have the right to unilaterally terminate the Settlement.

## IX.    Claim Process and Disbursement of Cash Payments

110.    The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

111.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

112.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

113.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

114.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and

Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

115.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant and Class Counsel otherwise agree.

116.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

      a.     Failure to fully complete and/or sign the Claim Form;

      b.     Illegible Claim Form;

      c.     The Claim Form is fraudulent;

d.    The Claim Form is duplicative of another Claim Form;

e.    The Claimant is not a Settlement Class Member;

f.    The Claimant submitted a timely and valid request to opt-out of the Settlement Class;

g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.    The Claim Form otherwise does not comply with the requirements of this Settlement.

117.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.    The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this paragraph.

c.    If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

118.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the

decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

119.    No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

120.    The Settlement Administrator shall distribute the Settlement Class Member Benefits no later than 75 days after the Effective Date.

121.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

122.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that elected Financial Account Monitoring with information on how to enroll in the program, including the activation code.

X.    **Final Approval Order and Final Judgment**

123.    Plaintiffs shall file their Motion for Final Approval of the Settlement inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service

Awards, provided the objector(s) submitted timely objections that meet all the requirements listed in the Agreement.

124.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. Such Final Approval Order shall, among other things:

a.    Determine that the Settlement is fair, adequate and reasonable;

b.    Finally certify the Settlement Class for settlement purposes only;

c.    Affirm the interim and/or conditional appointments of Class Representatives and Class Counsel;

d.    Determine that the Notice Program satisfies Due Process requirements;

e.    Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

f.    Release Defendant and the Released Parties from the Released Claims; and

g.    Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    Service Awards, Attorneys' Fees and Costs

125.    **Service Awards** – In recognition of the time and effort the Class Representatives

expended in pursuing the Actions and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $10,000.00 each for Class Representatives who were deposed and $3,500.00 each for other Class Representatives. If approved, the Service Awards shall be paid within 10 days after the Effective Date by the Settlement Administrator out of the Settlement Fund. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Settlement Fund.

126.    **Attorneys' Fees and Costs** - Class Counsel shall apply to the Court for an award of attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid within five days of Final Approval by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel.

127.    This Settlement is not contingent on the Court's approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement, and there is no agreement that Defendant will not oppose either request.

XII.    **Disposition of Residual Funds**

128.    The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining in the Settlement Fund, including from uncashed checks, within 45 days following the 180-day check negotiation period, the Parties will ask the Court to approve the distribution of

all remaining funds to a *cy pres* recipient agreed on by the Parties and approved by the Court.

## XIII.    **Releases**

129.    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Incidents; (b) the Actions; (c) the information at issue in the Data Incidents or the alleged value thereof; or (d) any of the alleged violations of laws or regulations cited in the Complaints.

130.    Plaintiffs and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

131.    Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Period do not release their individual claims and will not obtain any benefits under the Settlement.

132.    With respect to the Released Claims, Plaintiffs and Settlement Class Members understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members took that into account in entering into this Agreement, and a portion of the consideration

and the mutual covenants contained herein, having been bargained for between Plaintiffs and Defendants with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

133.    Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Actions shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash

Payment or Financial Account Monitoring from the Settlement.

134.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

**XIV.    <u>Termination of Settlement</u>**

135.    This Agreement shall be subject to and is conditioned on the occurrence of all the following events:

    a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

    b.    The Court having entered the Preliminary Approval Order substantially in the form proposed by the Parties;

    c.    The Court having entered the Final Approval Order substantially in the form proposed by the Parties, and all objections, if any, being overruled, and all appeals taken from the Final Approval Order having been resolved in favor of Final Approval; and

    d.    The Effective Date having occurred.

136.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement may be cancelled and terminated.  To the extent either Party elects to terminate the Agreement for failure by the Court to enter the Preliminary Approval Order or Final Approval Order substantially in the form proposed by the Parties, that Party must first, within seven days of entry of the order file a motion requesting that the Court modify or reconsider the relevant order

and then, within seven days of a ruling on that motion, inform the other Party of its election to terminate the Agreement. For the avoidance of doubt, any ruling by the Court related to Attorneys' Fees or Service Awards, even if subject to a motion to modify or reconsider, shall not be a basis for termination of Agreement.

137. Defendant shall have the option to terminate this Agreement if more than 5% of the Settlement Class opt-out of the Settlement. Defendant shall notify Class Counsel and the Court of its or their intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

138. In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Actions as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to reopen the Actions. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

139. In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by or on behalf of the Settlement Administrator. After payment of any Settlement Administration Costs that have been incurred and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the balance of the Settlement Fund to Defendant within 21 days of termination.

### XV.    Effect of Termination

140.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Actions as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

141.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Actions or any other action or proceeding for any purpose. In such event, all Parties to the Actions shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

### XVI.    No Admission of Liability

142.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant specifically denies that a class could or should be certified in either Action for litigation purposes. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Actions.

143.     Class Counsel believe the claims asserted in the Actions have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Actions. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

144.     This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

145.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Actions or in any proceeding in any court, administrative agency, or other tribunal.

146.     In addition to any other defenses Defendant may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the

36

Releases contained herein.

## XVII.  **Miscellaneous Provisions**

147.    <u>Gender and Plurals</u>. As used in this Agreement, the masculine or feminine gender, and the singular or plural number, shall each be deemed to include the other whenever the context so indicates.

148.    <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

149.    <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

150.    <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

151.    <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any party or any party's representative other than those set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind have been made by any party, except as provided for herein.

152.    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

153.    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be

construed in accordance with, and be governed by, the laws of the state of Nevada, without regard to the principles thereof regarding choice of law.

154.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

155.    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

156.    <u>Notices</u>. All notices provided for herein shall be sent by email with a hard copy sent by overnight mail to:

>    If to Plaintiffs or Class Counsel:

>>    John A. Yanchunis
>>    **Morgan & Morgan Complex Business Division**
>>    201 N. Franklin Street, 7th Floor
>>    Tampa, FL 33602
>>    jyanchunis@ForThePeople.com

J. Gerard Stanch, IV
**Stranch, Jennings & Garvey, PLLC**
223. Rosa L. Parks Ave., Ste. #200
Nashville, TN 32703
gstranch@stranchlaw.com

If to Defendant or Defendant's Counsel:

Neil Gilman
**Hunton Andrews Kurth LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
ngilman@huntonak.com

Eric M. Roberts
**DLA Piper LLP (US)**
444 West Lake Street, Ste. 900
Chicago, IL 60606
eric.roberts@us.dlapiper.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

157.    <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

158.    <u>No Waiver</u>. The waiver by any party of any breach of this Agreement by another party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

159.    <u>Authority</u>. Class Counsel (for Plaintiffs and the Settlement Class), and Defendant, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and Defendant to all terms of this Agreement. Any person executing this Agreement

in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

160.    Agreement Mutually Prepared. Neither Plaintiffs nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

161.    Independent Investigation and Decision to Settle. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with the Actions; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Actions as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their counsel, consultants, and/or experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with the Actions pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

162.    Receipt of Advice of Counsel. Each Party acknowledges, agrees, and specifically

warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signature Page to Follow*

## PLAINTIFFS


Ryan Bohlim (Jan 14, 2025 08:41 HST)

**RYAN BOHLIM**


Duke Hwynn (Jan 14, 2025 17:03 PST)

**DUKE HWYNN**

Larry James Lawter (Jan 14, 2025 19:44 EST)

**LARRY LAWTER**

Kerri Shapiro (Jan 14, 2025 14:04 EST)

**KERRI SHAPIRO**

Gennady Simkin (Jan 14, 2025 11:26 PST)

**GENNADY SIMKIN**

Robert Taylor

**ROBERT TAYLOR**

**VICTOR WUKOVITS**

Tonya Owens (Jan 14, 2025 14:25 EST)

**TONYA OWENS**

Emily Kirwan

**EMILY KIRWAN**

david zussman (Jan 16, 2025 11:55 CST)

**DAVID ZUSSMAN**

David Lackey (Jan 15, 2025 16:33 EST)

**DAVID LACKEY**

Michael Pircio (Jan 14, 2025 15:19 EST)

**MICHAEL PIRCIO**

David Terezo (Jan 17, 2025 10:46 EST)

**DAVID TEREZO**

Ronald Gregory Rundell (Jan 15, 2025 18:36 MST)

**RONALD G. RUNDELL**

**LAURA WILLIS**

**ANITA JOHNSON**

**PAUL ZARI**

*Michael Manson*
Michael Manson (Jan 16, 2025 10:12 MST)

**MICHAEL MANSON**

**KYLE SLOAN**

*Michelle Righetti*
Michelle Righetti (Jan 15, 2025 09:00 PST)

**MICHELLE RIGHETTI**

**EDGAR MEJIA**

**DUJUN JOHNSON**

**<u>CLASS COUNSEL</u>**



John Allan Yanchunis (Jan 14, 2025 08:40 PST)

**JOHN YANCHUNIS**
MORGAN & MORGAN
COMPLEX LITIGATION GROUP



**E. MICHELLE DRAKE**
BERGER MONTAGUE PC



douglas mcnamara (Jan 14, 2025 12:38 EST)

**DOUGLAS MCNAMARA**
COHEN MILSTEIN
SELLERS & TOLL PLLC



David Berger (Jan 14, 2025 17:21 PST)

**DAVID BERGER**
GIBBS LAW GROUP LLP

Gerard stranch (Jan 14, 2025 17:48 EST)

**J. GERARD STRANCH, IV**
STANCH, JENNINGS & GARVEY, PLLC

Lynn Toops (Jan 14, 2025 12:51 EST)

**LYNN TOOPS**
COHEN & MALAD, LLP

**JAMES PIZZIRUSSO**
HAUSFELD LLP

Gary M. Klinger (Jan 14, 2025 10:50 CST)

**GARY M. KLINGER**
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC

Jeffrey Ostrow (Jan 14, 2025 11:28 EST)

**JEFF OSTROW**
KOPELOWITZ OSTROW P.A.

**DEFNDANT**


**MGM RESORTS INTERNATIONAL**


_____

**ASHLEY EDDY**
SENIOR VICE PRESIDENT AND
LEGAL COUNSEL


**DEFENDANT'S COUNSEL**


_____

**NEIL GILMAN**
HUNTON ANDREWS KURTH LLP


_____

**ERIC ROBERTS**
DLA PIPER LLP (US)

**DEFNDANT**

**MGM RESORTS INTERNATIONAL**

_____

**ASHLEY EDDY**
SENIOR VICE PRESIDENT AND
LEGAL COUNSEL

**DEFENDANT'S COUNSEL**

*Neil Gilman*
Neil Gilman (Jan 17, 2025 13:44 EST)
_____
**NEIL GILMAN**
HUNTON ANDREWS KURTH LLP

*Eric Roberts*
Eric Roberts (Jan 17, 2025 12:48 CST)
_____
**ERIC ROBERTS**
DLA PIPER LLP (US)

# EXHIBIT 1
# (EMAIL NOTICE)

From: EMAIL ADDRESS

To: EMAIL ADDRESS

Re:  MGM Resorts International Court Ordered Notice of Class Action Settlement

## If your Private Information was compromised as a result of one of two Data Incidents involving MGM Resorts International in or around July 2019, and/or in or around September 2023, you may be entitled to benefits from a settlement.

*A court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

### You can learn more at: www.XXXXXXXXXXX.com

A $45 million settlement has been reached in two class action lawsuits against MGM Resorts International ("MGM" or "Defendant") arising out of two Data Incidents, one that occurred in or around July 2019, and a second separate Data Incident that occurred in or around September 2023 (together, the "Data Incidents"). Varying amounts of Private Information of customers and guests of MGM were accessed in the Data Incidents. The Private Information included, names, addresses, telephone numbers, email addresses, dates of birth, drivers' license numbers, passport numbers, and Social Security numbers.  Only certain people had their Social Security numbers, passport numbers and/or drivers' license numbers exposed.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included?** You are receiving this Email Notice because data provided by MGM indicates your information was included in one of the Data Incidents and you are a Settlement Class member. The Settlement Class includes all persons in the United States whose Private Information was compromised as a result of the Data Incidents and who were sent notice by the Defendant of the Data Incidents.

**What Does the Settlement Provide?**

**<u>Documented Loss Cash Payment</u>**.

You may submit a timely and valid Claim Form and provide supporting documentation that you spent money or incurred losses related to the Data Incident for up to $15,000.00. Please visit the website for information and examples on how to file for a Documented Loss Cash Payment.

**<u>Tiered Cash Payments</u>**.

Certain Settlement Class members are also eligible to receive a flat cash payment, without providing documentation, depending on what personal information may have been exposed in the Data Incidents. The three tiers of Cash Payments are listed below.

**Tier 1 Cash Payment** - If your Social Security number or military identification number was exposed, you may be eligible to receive an estimated $75 flat cash payment.

**Tier 2 Cash Payment** – If your passport number or driver's license number was exposed, you may be eligible to receive an estimated $50 flat cash payment.

**Tier 3 Cash Payment** – If your name, address, and/or date of birth was exposed, you may be eligible to receive an estimated $20 flat cash payment.

**According to data provided by MGM, you are eligible for a <<Tier 1>> Cash Payment**

Use this unique ID number <<UniqueID>> to file your Claim online

Your Cash Payment amount may be subject to a *pro rata* (a legal term meaning equal share) increase if the amount of Valid Claims received is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement, the amount of Cash Payments may be reduced *pro rata* accordingly.

**Financial Account Monitoring.**

In addition to the Cash Payments, you can file a Claim for one year of three-bureau identity theft protection, Financial Account Monitoring, and at least $1,000,000 of fraud/identity theft insurance.

You must submit a timely and valid Claim Form online here or by mail postmarked by **Month XX, 20YY**.

**Other Options.** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement no later than **Month XX, 20YY**. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties about the legal claims in the lawsuits. If you do not opt out, you may object to the Settlement by **Month XX, 20YY**. The Long Form Notice on the Settlement Website has instructions on how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement and Class Counsel's request for attorneys' fees of up to 30% of the $45 million Settlement Fund, and reimbursement of their litigation costs. Class Counsel will also seek Service Awards for the Class Representatives. You or your lawyer may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXX.com.

**This notice is a summary.** Learn more about the Settlement here or call toll free 1-XXX-XXX-XXXX.

# EXHIBIT 2
# (POSTCARD NOTICE)

MGM Data Incident Litigation
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXXX

BARCODE
NO-PRINT
ZONE

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice
*In re MGM International Resorts Data Breach Litigation*, 2:20-cv-00376-GMN-NJK and
*Tanya Owens et. al v. MGM Resorts International et al.*, 2:23-cv-01480-FRB
United States District Court for the District of Nevada

**If your Private Information was compromised as a result of one of two Data Incidents involving MGM Resorts International in or around July 2019, and/or in or around September 2023, you may be entitled to benefits from a Settlement.**

*A Court has authorized this notice. This is __not__ a solicitation from a lawyer.*

www.XXXXXXXXXXXXXX.com
1-XXX-XXX-XXXX

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

\$45 million Settlement Fund. Plaintiffs filed two class action lawsuits against MGM Resorts, Int'l ("Defendant") arising out of two Data Incidents, one that occurred in or around July 2019, and a second one that occurred in or around September 2023 (together, the "Data Incidents"). Varying amounts of Private Information of customers and guests of Defendant were accessed in the Data Incidents. The Private Information included, names, addresses, telephone numbers, email addresses, dates of birth, drivers' license numbers, passport numbers, Social Security numbers, and military identification numbers.

**Who is Included?** The Settlement Class includes all persons in the United States whose Private Information was compromised as a result of the Data Incidents and who were sent notice by the Defendant of the Data Incidents.

**What does the Settlement Provide?**

**Documented Loss Cash Payment:** You can file a Claim Form with supporting documentation that you spent money or incurred losses related to the Data Incident for up to \$15,000.

**Tiered Cash Payment:** Certain Settlement Class Members are also eligible to receive a flat cash payment, without providing supporting documentation, depending on what personal information may have been exposed in the Data Incidents. There are three Tiers: (1) Tier 1 payments are estimated to be \$75; (2) Tier 2 payments are estimated to be \$50; and (3) Tier 3 payments are estimated to be \$20. All payments may be adjusted upward or downward depending on the amount of Valid Claims filed. Please visit the website for information on the 3 different Tiered Cash Payments.

**According to data provided by MGM, you are eligible for a <<Tier 1>> Cash Payment**
Use this unique ID number <<UniqueID>> to file your Claim online

**Financial Account Monitoring:** In addition to Cash Payments, you can elect one year of Financial Account Monitoring.

You must submit your Claim Form online or by mail postmarked by **MONTH DD, 20YY**.

**Other Options**. If you do not want to be bound by the Settlement, you must opt-out by **MONTH DD, 20YY**. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties of legal claims in the lawsuits. If you do not-opt out, you may object to the Settlement by **MONTH DD, 20YY**. The Long Form Notice on the Settlement Website has instructions on how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement, any judgments, and orders. The Court will hold a Final Approval Hearing on **MONTH DD, 20YY**, to consider whether to approve the Settlement, the requested Service Awards, attorneys' fees of up to 30% of the \$45 million Settlement Fund, costs, and any objections. You or your own attorney may attend and ask to appear at the hearing, but are not required to do so.

**This notice is a summary. Learn more about the Settlement at www.XXXXXXXXXX.com, or by calling toll free 1-XXX-XXX-XXXX.**

# EXHIBIT 3
# (PUBLICATION NOTICE)

*MGM Data Breach*

*Banner Advertisements*

### Option 1

**300 x 250 Online Display Banner**
(Frame 1 – on screen for 10 seconds)



(Frame 2 – on screen for 5 seconds)



**Facebook Newsfeed**
(Static)



**Facebook Right Hand Column**
(Static)



**Instagram Newsfeed**
(Static)



**Option 2**

**300 x 250 Online Display Banner**
(Frame 1 – on screen for 10 seconds)



(Frame 2 – on screen for 5 seconds)



**Facebook Newsfeed**
(Static)



**Facebook Right Hand Column**
(Static)



**Instagram Newsfeed**
(Static)



# EXHIBIT 4
# (LONG FORM NOTICE)

# If your Private Information was compromised as a result of one of two Data Incidents involving MGM Resorts International in or around July 2019, and/or in or around September 2023, you may be entitled to benefits from a settlement.

*A court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A $45 million Settlement has been reached against MGM Resorts International ("MGM" or "Defendant") arising out of two Data Incidents, one that occurred in or around July 2019, and a second separate Data Incident that occurred in or around September 2023 (together, the "Data Incidents"). Varying amounts of Private Information of customers and guests of MGM were accessed in the Data Incidents. The Private Information may have included, names, addresses, telephone numbers, email addresses, dates of birth, drivers' license numbers, military identification numbers, passport numbers, and Social Security numbers.  Only certain people had their Social Security numbers, passport numbers and/or drivers' license numbers exposed.

- If you are a Settlement Class Member, you may be able to receive the following Settlement Class Member Benefits:

**Documented Loss Cash Payment:** You may submit a timely and valid Claim Form and provide supporting documentation that you spent money or incurred losses related to the Data Incident for up to $15,000.00.

**Tiered Cash Payments:** Certain Settlement Class Members are also eligible to receive a flat cash payment, without providing documentation, depending on what personal information may have been exposed in the Data Incidents. A timely and Valid Claim required for Tiered Cash Payments also.

**Tier 1 Cash Payment** - If your Social Security number or military identification number was exposed, you may be eligible to receive an estimated $75.00 flat cash payment.

**Tier 2 Cash Payment** – If your passport number or driver's license number was exposed, you may be eligible to receive an estimated $50.00 flat cash payment.

**Tier 3 Cash Payment** – If your name, address, and/or date of birth was exposed, you may be eligible to receive an estimated $20.00 flat cash payment.

**Financial Account Monitoring:** In addition to the Cash Payments, all Settlement Class members are eligible for one year of Financial Account Monitoring, upon submission of a timely and Valid Claim.

Your Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase or decrease. More information about this adjustment is found below.

### This Notice may affect your rights. Please read it carefully.

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | The only way to get Settlement Class Member Benefits is to submit a timely and valid Claim Form. | Submitted or Postmarked by: **MONTH DD, 20YY** |
| **Opt-Out of the Settlement** | Get no Settlement Class Member Benefits. Keep your right to file your own lawsuit against the Released Parties about the legal claims in these lawsuits that are released by the Settlement. | Postmarked by: **MONTH DD, 20YY** |
| **Object to the Settlement** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Postmarked by: **MONTH DD, 20YY** |

**Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

| **DO NOTHING** | Get no Settlement Class Member Benefits. Give up your legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The Court must decide whether to approve the Settlement and the requested Service Awards and attorneys' fees and Costs. Settlement Class Member Benefits will not be provided unless the Court approves the Settlement.

# BASIC INFORMATION

## 1. Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement and about all of your rights and options before the Court decides whether to grant Final Approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Gloria M. Navarro of the United States District Court for the District of Nevada is overseeing the combined Settlement of two class action lawsuits. The lawsuits are known as *In re MGM International Resorts Data Breach Litigation*, Case No.: 2:20-cv-00376-GMN-NJK and *Tanya Owens, et al. v. MGM Resorts International, et al.*, Case No. 2:23-cv-01480-FRB ("lawsuits"). The individuals who filed these lawsuits are called the "Plaintiffs" and/or "Class Representatives" and the company sued, MGM Resorts International, is called the "Defendant."

## 2. What are the lawsuits about?

Plaintiffs filed these lawsuits against Defendant, individually, and on behalf of customers and guests of Defendant whose Private Information, including but not limited to, names, addresses, telephone numbers, email addresses, dates of birth, drivers' license numbers, passport numbers, and Social Security numbers was compromised as a result of two separate Data Incidents.

Plaintiffs allege that on or around July 2019, and again on or around September 2023, as a result of the Data Incidents, unauthorized individuals accessed Defendant's network and their Private Information. Different Plaintiffs brought two separate lawsuits against Defendant arising out of each of the Data Incidents.

Defendant denies the legal claims in each lawsuit and denies any wrongdoing or liability. No court or other judicial entity has made any judgment or other determination of any wrongdoing by Defendant, or that any law has been violated. Instead, Plaintiffs and Defendant have agreed to a Settlement to avoid the risk, cost, and time of continuing the lawsuit.

## 3. Why is the lawsuit a class action?

In a class action, one or more people (called class representatives) sue on behalf of all people who have similar legal claims. Together, all these people are called a class or class members. One court resolves the issues for all Settlement Class members, except for those Settlement Class members who timely exclude themselves (opt-out) from the Settlement Class.

The Class Representatives in the lawsuits are the Plaintiffs who sued the Settlement Agreement.

## 4. Why is there a Settlement?

Sometime after each lawsuit was filed, the Plaintiffs in the lawsuit in the 2019 Data Incident and the Plaintiffs in the lawsuit in the 2023 Data Incident decided to work together and collectively pursue a

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

2

global settlement of both lawsuits with the Defendant. Plaintiffs and Defendant do not agree about the legal claims made in the lawsuits. Neither lawsuit has not gone to trial, and the Court has not decided in favor of Plaintiffs or Defendant in either one. Instead, Plaintiffs and Defendant have agreed to settle the lawsuits together. The Class Representatives, Defendant, and their lawyers believe the Settlement is best for all Settlement Class members because of the benefits to the Settlement Class members and the risks and uncertainty associated with continuing either of the lawsuits.

## WHO IS INCLUDED IN THE SETTLEMENT?

**5.  How do I know if I am part of the Settlement?**

The Settlement Class includes all persons in the United States whose Private Information was compromised as a result of the Data Incidents and who were sent notice by the Defendant of the Data Incidents.

**6.  Are there exceptions to being included in the Settlement?**

Yes. Excluded from the Settlement Class are the judges presiding over the lawsuits and members of their direct families.

**7.  What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class member, you may go to the Settlement Website at www.XXXXXXXXXXXX.com or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXXX.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.  What does the Settlement provide?**

If you are a Settlement Class member and you submit a timely and valid Claim Form, you may be eligible for the following Settlement Class Member Benefits:

**Documented Loss Cash Payment**.

You may submit a Claim Form with supporting documentation that you spent money or incurred losses related to the Data Incidents for up to $15,000.00.

Examples of losses include, but are not limited to:

- Unreimbursed losses relating to fraud or identity theft;
- Professional fees including attorneys' fees, accountants' fees, and fees for credit repair services;
- Costs associated with freezing or unfreezing credit with any credit reporting agency;
- Credit monitoring costs that were incurred on or after the Data Incidents through the Claims Deadline; and
- Miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges.

Examples of supporting documentation include, but are not limited to:

- credit card statements;
- bank statements;
- invoices;
- telephone records; and
- receipts

"Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

**Tiered Cash Payments**.

In addition to the Documented Loss Cash Payment, you may be eligible to receive a flat cash payment if you had certain information exposed in either of the 2019 or 2023 Data Incidents.  If you were sent Notice of the Settlement by email or mail, your Notice informed you if you were likely eligible for a Tier 1, Tier 2 or Tier 3 Cash Payment.

    **Tier 1 Cash Payment** - If your Social Security number or military identification number was exposed, you may be eligible to receive an estimated $75.00 flat cash payment.

    **Tier 2 Cash Payment** – If your passport number or driver's license number was exposed, you may be eligible to receive an estimated $50.00 flat cash payment.

    **Tier 3 Cash Payment** – If your name, address, and/or date of birth was exposed, you may be eligible to receive an estimated $20.00 flat cash payment.

Your Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase from the Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of Cash Payments may be reduced *pro rata* accordingly.

**Financial Account Monitoring.**

In addition to the Cash Payments, you may be eligible for one year of three-bureau identity theft protection, credit monitoring, and at least $1,000,000 of fraud/identity theft insurance.

### 9.  What am I giving up to receive Settlement benefits or stay in the Settlement Class?

Unless you opt-out of the Settlement, you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties about the legal issues in the lawsuits that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

### 10.  What are the Released Claims?

Section XIII of the Settlement Agreement describes the Released Claims and the Release, in necessary legal terminology, so please read these sections carefully. The complete Settlement Agreement is available at www.XXXXXXXXXXXX.com. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed in Question 14 for free, or you can talk to your own lawyer at your own expense.

## How to Get Benefits from the Settlement

### 11. How do I make a Claim for Settlement Class Member Benefits?

You must submit a timely and valid Claim Form for the Settlement Benefits described in Question 8. Your Claim Form must be submitted online at www.XXXXXXXXXXXXX.com by **MONTH DD, 20YY**, or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **MONTH DD, 20YY**. Claim Forms are also available on the Settlement Website at www.XXXXXXXXXXX.com or by calling 1-XXX-XXX-XXXX or by writing to:

*MGM Data Incident Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

### 12. How do I know if I qualify for a Tier 1, Tier 2, or Tier 3 Cash Payment?

If you were sent Notice of the Settlement via email or mail, your Notice indicated whether you were eligible for a Tier 1, Tier 2, or Tier 3 Cash Payment. You were also provided with a unique ID number to help you easily file your Claim online at the Settlement Website. If you still have questions about your eligibility, visit www.XXXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX.

### 13. What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*MGM Data Incident Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

### 14. When will I receive my Settlement Class Member Benefits?

If you file a timely and valid Claim Form, the Settlement Class Member Benefits will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXXXXXX.com for updates.

## The Lawyers Representing You

### 15. Do I have a lawyer in this lawsuit?

Yes, the Court has appointed John Yanchunis of Morgan & Morgan Complex Litigation Group, E. Michelle Drake of Berger Montague PC, Doug McNamara of Cohen Milstein Sellers & Toll, PLLC, David Berger of Gibbs Law Group LLP, J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC, Lynn Toops of Cohen & Malad LLP, James Pizzirusso of Hausfeld LLP, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and Jeff Ostrow of Kopelowitz Ostrow P.A. as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire

your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this lawsuit.

## 16. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees and costs payable out of the $45,000,000 Settlement Fund. They will seek 30% of the Settlement Fund in attorneys' fees and reimbursement of their litigation costs. Class Counsel will also ask the Court to approve Service Awards in the amount of $10,000.00 each for those Class Representatives who had their depositions taken and $3,500.00 each for all other Class Representatives. The Service Awards are for the Class Representatives' efforts in participating in the Actions and for achieving the Settlement. If awarded by the Court, the Attorneys' Fees, Costs, and the Service Awards will be paid from the Settlement Fund. The Court may award less than these amounts.

Class Counsel's Application for attorneys' fees, Costs, and Service Awards will be made available on the Settlement Website at www.XXXXXXXXXXXXXX.com.

# OPTING-OUT FROM THE SETTLEMENT

If you are a Settlement Class member and want to keep any right you may have to individually sue or continue to sue the Released Parties on your own based about the legal claims in the lawsuits or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

## 17. How do I opt-out of the Settlement?

To opt-out of the Settlement, you must mail a written request for exclusion, which includes the following:

1) Your name, address, telephone number, and email address (if any);
2) Your personal physical signature; and
3) A statement that you want to be excluded from the Settlement Class, such as "I hereby request to be excluded from the Settlement Class in *In re MGM International Resorts Data Breach Litigation*, Case No.: 2:20-cv-00376-GMN-NJK and *Tanya Owens, et al. v. MGM Resorts International, et al.*, Case No. 2:23-cv-01480-FRB."

The opt-out request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

*MGM Data Incident Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**You cannot opt-out (exclude yourself) by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class members or multiple Settlement Class members where the opt-out has not been signed by each and every individual Settlement Class member will not be allowed.

## 18. If I opt-out can I still get anything from the Settlement?

No. If you timely opt-out, you will not be entitled to receive Settlement Class Member Benefits, but you will not be bound by the Settlement or any judgment in the lawsuits. You can only get Settlement Class Member Benefits if you stay in the Settlement and submit a timely and valid Claim Form.

## 19. If I do not opt-out, can I sue Defendant for the same thing later?

No. Unless you timely opt-out, you give up any right to individually sue any of the Released Parties for the legal claims this Settlement resolves and Releases relating to the Data Incidents. You must opt-out of the lawsuits to start or continue with your own lawsuit or be part of any other lawsuit against the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

# OBJECTING TO THE SETTLEMENT

## 20. How do I tell the Court that I object to the Settlement?

If you are a Settlement Class Member, you can tell the Court you object to all or any part of the Settlement.

To object, you must send your written objection by U.S. mail to the Clerk of Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, stating you object to the Settlement in *In re MGM International Resorts Data Breach Litigation*, Case No.: 2:20-cv-00376-GMN-NJK and *Tanya Owens, et al. v. MGM Resorts International, et al.*, Case No. 2:23-cv-01480-FRB.

To file an objection, you cannot opt-out of the Settlement Class. Your objection must include all of the following information:

1) Your full name, address, telephone number, and email address (if any);
2) All grounds for the objection, accompanied by any legal support for the objection known to you as the objector or your own lawyer;
3) The number of times you have objected to a class action settlement within the 5 years preceding the date that you file the objection, the caption of each case in which you have made an objection, and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;
4) The identity of all lawyers representing you, including any former or current lawyers who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;
5) The number of times in which your lawyer or your lawyer's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which your lawyer or the firm has made the objection and a copy of any orders related to or ruling upon your lawyer's or the lawyer's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which your lawyer's and/or lawyer's law firm have objected to a class action settlement within the preceding 5 years;
6) The identity of all lawyers (if any) representing you who will appear at the Final Approval Hearing;
7) A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);
8) A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and
9) Your signature as the objector (a lawyer's signature is not sufficient).

Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX

7

To be timely, written notice of an objection including all of the information above must be mailed to the Clerk of Court, Class Counsel, Defendant's Counsel and the Settlement Administrator by **MONTH DD 20YY**, at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| Clerk U.S. District Court Lloyd D. George Federal Courthouse 333 Las Vegas Blvd South Las Vegas, NV 89101 | John A. Yanchunis Morgan & Morgan 201 North Franklin Street, 7th Floor Tampa, FL 33602  J. Gerard Stranch IV Stranch, Jennings, Garvey, PLLC 223 Rosa L. Parks Ave Suite 200 Nashville, TN 32703 | Neil Gilman Hunton Andrews Kurth LLP 2200 Pennsylvania Avenue, NW Washington, DC 20037 ngilman@huntonak.com  Eric M. Roberts DLA Piper LLP (US) 444 West Lake Street Suite. 900 Chicago, IL 60606 eric.roberts@us.dlapiper.com | MGM Data Incident Litigation Settlement Administrator PO Box XXXX Portland, OR 97XXX-XXXX |

If you fail to comply with the requirements for objecting as detailed above, you waive and forfeit any and all rights you may have to appear separately and/or to object to the Settlement and you will be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in the lawsuits.

## 21. What is the difference between objecting and asking to opt-out?

Objecting is simply telling the Court you do not like something about the Settlement or the requested Attorneys' Fees, Costs, or Service Awards. You can object only if you stay in the Settlement Class (meaning you do not opt-out of the Settlement). Opting-out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt-out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak if you file an objection by the deadline, but you do not have to.

## 22. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at X:XX a.m./p.m.** before the Honorable Gloria M. Navarro, II at the Lloyd D. George Federal Courthouse, 333 Las Vegas Blvd. South, Las Vegas, Nevada 89101. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's Application for the Attorneys' Fees, Costs, and Service Awards.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you would like to speak at the hearing, the Court will also listen to you or your lawyer speak at the hearing, if you so request.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Settlement Class. The Court may also decide to hold the hearing via video conference or by

telephone. You should check the Settlement Website www.XXXXXXXXXXXXX.com to confirm the date and time of the Final Approval Hearing has not changed.

### 23. Do I have to attend to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file a written objection by the deadline, the Court will consider it.

### 24. May I speak at the Final Approval Hearing?

Yes, as long as you do not opt-out and you file a timely written objection requesting to speak at the hearing, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 19 above—and specifically include a statement whether you and your lawyer will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

### 25. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will not receive any of the Settlement Class Member Benefits, and you will give up rights explained in the "Opting-Out from the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties about the legal issues in this lawsuit that are released by the Settlement relating to the Data Incidents.

## GETTING MORE INFORMATION

### 26. How do I get more information?

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*MGM Data Incident Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S
CLERK OFFICE REGARDING THIS NOTICE.**

# EXHIBIT 5
# (CLAIM FORM)



*0000PLACEHOLDER0000*

**Must be postmarked or submitted online NO LATER THAN _____, 2025**

MGM Data Incident Litigation Settlement Administrator
P.O. BOX XXXX
Portland, OR 97208-XXXX
WWW.XXXXXXXXXXXXXXXXX.COM

# MGM Data Incident Litigation Claim Form

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

If you are a person in the United States whose Private Information was compromised in the MGM Data Incidents that occurred on July 10, 2019, and/or September 7, 2023, you may submit a Claim.

**The easiest way to submit a Claim is online at www.XXXXXXX.com,** or you can complete and mail this Claim Form to the mailing address above.

<u>**You may submit a Claim for one or more of these Settlement Class Member Benefits**</u>:

1. **Financial Account Monitoring:** Use the claim form to request free Financial Account Monitoring.

2. **Documented Loss Cash Payment:** If you spent unreimbursed money trying to avoid or recover from fraud or identity theft that you believe is fairly traceable to the Data Incidents, you can be reimbursed up to $15,000.00. You must submit documents supporting your Claim.

3. **Tiered Cash Payment**. If you have been identified as a Tier 1, Tier 2, or Tier 3 Settlement Class member, you are also eligible to receive a flat cash payment. The three Tiers of Cash Payments are listed below.
   - **Tier 1 Cash Payment** - If your Social Security number or military identification number was exposed, you may be eligible to receive an estimated $75.00 flat cash payment.
   - **Tier 2 Cash Payment** – If your passport number or driver's license number was exposed, you may be eligible to receive an estimated $50.00 flat cash payment.
   - **Tier 3 Cash Payment** – If you name, address, and date of birth was exposed, you may be eligible to receive an estimated $20.00 flat cash payment.

**Monetary compensation from this Settlement is available under Option 2, Documented Loss Cash Payment, and Option 3, Tiered Cash Payment.**

<u>**All Settlement Class Members are eligible to file a Claim for Financial Account Monitoring and a Documented Loss Cash Payment, but not every Settlement Class Member is eligible to file a Claim for a Tiered Cash Payment.**</u>

**Claims must be submitted online or mailed by _____, 2025. Use the address at the top of this form for mailed Claims.**

*Please note: The Settlement Administrator may contact you to request additional documents to process your Claim. Your Cash Payment amounts may increase or decrease depending on the number and amount of Valid Claims submitted.*

For more information and complete instructions visit www._____.com.

**Please note that Settlement Class Member Benefits will be distributed only after the Settlement is approved by the Court and becomes final.**

If your Claim for a Cash Payment is accepted, after the Settlement is approved, you will receive an email at the email address you provide prompting you to select how you would like to be paid. You can receive your Cash Payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a paper check.

If you file a Valid Claim for Financial Account Monitoring, after the Settlement is approved, you will receive an email with a code and activation instructions at the email address you provide.

MAIL ID
*0000PLACEHOLDER0000*

## Your Information

*We will use this information to contact you and process your Claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify the Settlement Administrator.*

First Name                                          Middle Initial    Last Name

Alternative Name(s) (If Any):

Unique ID (As shown on the notice you received):

Mailing Address (Required):

City                                                State    ZIP

Phone Number:

Email Address:

Year of Birth:

MAIL
ID
*0000PLACEHOLDER0000*

## Financial AccountMonitoring

*You may be eligible to receive free financial account monitoring services.*

You can elect to submit a Claim for Financial Account Monitoring including identity theft protection and credit monitoring.  This benefit includes one year of Cyex Identity Defense Total with three-bureau monitoring and at least $1,000,000 of fraud/identity theft insurance. The one-year period will commence when you use your code to activate the Financial Account Monitoring.

*Please select Option 1 if you want the Financial Account Monitoring for which you are eligible.*

☐ **Option 1, Financial Account Monitoring:** I want to receive free Financial Account Monitoring.

*If you select this option, you will be sent instructions and an activation code after the Settlement is final to your email address or home address. You won't be "upsold" any services by enrolling or otherwise asked to submit any payment for these services now or in the future.*

## Documented Loss Cash Payment: Money You Lost or Spent

If you lost or spent money trying to prevent or recover from fraud or identity theft that you believe is fairly traceable to the Data Incidents, and have not been reimbursed for that money, you can receive reimbursement for up to $15,000.00.

It is important for you to send documents that show what happened and how much you lost or spent, so that you can be reimbursed.

*Please select Option 2 if you want to claim for Reimbursement of Out-of-Pocket Losses or Expenses.*

☐ **Option 2, Documented Loss Cash Payment:** I have experienced a documented out-of-pocket loss related to the MGM Data Incidents. I am providing the necessary information and documentation.

To look up more details about how Cash Payments work, visit **www.XXXXXX.com** or call toll-free 1-XXX-XXX-XXXX. You will find more information about the types of costs and losses that can be paid back to you, what documents you need to attach, and how the Settlement Administrator decides whether to approve your payment. *By filling out the boxes on the next page of this form, you are certifying that the money you spent doesn't relate to other data breaches.*

**You may make as many copies of the Claim Form pages as necessary to list all of your expenses. If you need more space to list your costs and losses, please submit additional pages of this Claim Form to provide that information.**

MAIL ID

*0000PLACEHOLDER0000*

| Loss Type | Approximate Date of Loss | | | Amount of Loss |
|---|---|---|---|---|
| Costs for freezing or unfreezing your credit report on or after 7/10/2019 | MM | DD | YY | $ ⬚⬚⬚⬚⬚ • ⬚⬚ |

**Description of Loss or Money Spent and Supporting Documents**
(Identify what you are attaching, and why it's related to the Data Incidents)
*Examples: Receipts, notices, or account statements reflecting payment for a credit freeze*

_____

_____

_____

| Loss Type | Approximate Date of Loss | | | Amount of Loss |
|---|---|---|---|---|
| Credit monitoring and identity theft protection purchased between 7/10/2019 and the date of your claim submission | MM | DD | YY | $ ⬚⬚⬚⬚⬚ • ⬚⬚ |

**Description of Loss or Money Spent and Supporting Documents**
(Identify what you are attaching, and why it's related to the Data Incidents)
*Examples: Receipts or statements for credit monitoring services*

_____

_____

| Loss Type | Approximate Date of Loss | | | Amount of Loss |
|---|---|---|---|---|
| Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information on or after 7/10/2019 and that you believe are fairly traceable to the Data Incidents | MM | DD | YY | $ ⬚⬚⬚⬚⬚ • ⬚⬚ |

**Description of Loss or Money Spent and Supporting Documents**
(Identify what you are attaching, and why it's related to the Data Incidents)
*Examples: Account statement with unauthorized charges highlighted; police reports; IRS documents; FTC Identity Theft Reports; letters refusing to refund fraudulent charges; credit monitoring services you purchased*

_____

| Loss Type | Approximate Date of Loss | | | Amount of Loss |
|---|---|---|---|---|
| Professional fees paid to address identity theft on or after 7/10/2019 and that you believe are fairly traceable to the Data Incidents | MM | DD | YY | $ ⬚⬚⬚⬚⬚ • ⬚⬚ |

**Description of Loss or Money Spent and Supporting Documents**
(Identify what you are attaching, and why it's related to the Data Incidents)
*Examples: Receipts, bills, and invoices from accountants, lawyers, or others*

| Loss Type | Approximate Date of Loss | | | Amount of Loss |
|---|---|---|---|---|
| Other expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges related to the Data Incidents | MM | DD | YY | $ ⬚⬚⬚⬚⬚ • ⬚⬚ |

**Description of Loss or Money Spent and Supporting Documents**
(Identify what you are attaching, and why it's related to the Data Incidents)
*Examples: Phone bills, receipts, detailed list of places you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled*

*0000PLACEHOLDER0000*

## Tiered Cash Payment

If you have been identified as a Tier 1, Tier 2, or Tier 3 Settlement Class member, you are eligible to receive a flat cash payment. The three Tiers of Cash Payments are listed below.

**Tier 1 Cash Payment** - If your Social Security number was exposed, you may be eligible to receive an estimated $75.00 flat cash payment.

**Tier 2 Cash Payment** – If your passport number or driver's license number was exposed, you may be eligible to receive an estimated $50.00 flat cash payment.

**Tier 3 Cash Payment** – If your name, address, and date of birth was exposed, you may be eligible to receive an estimated $20.00 flat cash payment.

*Please select Option 3 if you want the Tiered Cash Payment for which you are eligible.*

☐ **Option 3, Tiered Cash Payment: I am eligible to receive one of the Tiered Cash Payments based on the Notice I received, and I wish to claim the Tiered Cash Payment I am eligible for**.

*If you select this option, we will confirm your eligibility against MGM's records. If you are not a Tier 1, Tier 2 or Tier 3 Settlement Class member, you will not receive a Tiered Cash payment. Only individuals whose Notice identified them as eligible will be able to claim this option.*

.

## Signature

I affirm under the laws of the United States that the information I have supplied in this form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

|  |
|---|
| Print Name |

|  |  | Date: | MM | – | DD | – | YYYY |
|---|---|---|---|---|---|---|---|
| Signature |  |  |  |  |  |  |  |

# EXHIBIT 6
# (PRELIMINARY APPROVAL ORDER)

1

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

3

4

5

| IN RE MGM INTERNATIONAL RESORTS DATA BREACH LITIGAITON<br><br>This Document Relates To: All actions. | Case No.: 2:20-cv-00376-GMN |

6

7

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

9

10

11

12

13

14

| TANYA OWENS, et al.<br><br>            Plaintiffs,<br><br>        v.<br><br>MGM RESORTS INTERNATIONAL<br><br>            Defendant. | Master File No. 2:23-cv-01480-GMN (Consolidated for pretrial proceedings with Case Nos. 2:23-cv-1481, 2:23-cv1537, 2:23-cv-1549, 2:23-cv-1550, 2:23-cv1577, 2:23-cv-1698, 2:23- cv-1719, 2:23-cv1777, 2:23-cv-1826, 2:23-cv- 1981, 2:23-cv2042, 2:23-cv-2064, 2:24-cv-81, 2:24-cv-00995, 2:24-cv-00999) |

15

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMIMNARY APPROVAL OF CLASS ACTION SETTLEMENT**

16

17

18

19

Pending before the Court is Plaintiffs'[1] Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law, requesting the Court preliminarily certify the Settlement Class and preliminarily approve the Settlement. (ECF No. ___.) For the reasons set forth herein, the Motion for Preliminary Approval is **GRANTED**.

20

**I.    INTRODUCTION**

21

22

23

24

Defendant is a global gaming, hospitality, and entertainment company headquartered in Las Vegas, Nevada. In the course of operating its business, Defendant collects, maintains, and stores Private Information pertaining to its customers, including, but not limited to, names, contact information (such as telephone numbers, email addresses, and postal addresses), gender, dates of birth, driver's license numbers, passport numbers, and Social Security numbers.

25

26

27

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached to the Motion for Preliminary Approval as *Exhibit A*.

28

In July of 2019, and then again in September of 2023, Defendant's computer systems were hacked in separate incidents by cybercriminals resulting in the unauthorized access of tens of millions of Defendant's customers' Private Information. Following the Data Incidents, Plaintiffs and Settlement Class members began receiving notices that their Private Information was potentially involved. Thereafter, lawsuits were filed against Defendant related to each incident.

To avoid the risk and expense of litigation, the Parties agreed to a global settlement to resolve Plaintiffs' claims for both Data Incidents on a classwide basis.[2] As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary all cash $45,000,000.00 Settlement Fund and valuable non-monetary relief.

## II.    BACKGROUND

The Motion for Preliminary Approval details the history of the 2019 Action and the 2023 Action. This Preliminary Approval Order highlights those facts, which support Preliminary Approval.

**The 2019 Action**

In or about July 2019, unauthorized individuals accessed Defendant's network and downloaded certain customer data of approximately 37 million MGM guests. *See* Joint Declaration of Class Counsel attached to the Motion for Preliminary Approval as Exhibit B. Defendant discovered the 2019 Data Incident on or about July 10, 2019. *Id.* According to Defendant, the unauthorized individuals acquired personally identifiable information including customers' names, postal addresses, telephone numbers, email addresses, dates of birth, and passport numbers. *Id.* However, for the vast majority of the victims, the exposure was limited to their names, postal addresses, email addresses, telephone numbers, and/or their dates of birth. *Id.*

Following the 2019 Data Incident and commencing on February 21, 2019, Defendant was named in the first of eight class action lawsuits (ECF No. 1), which were eventually consolidated into

---

[2] Due to this Court's familiarity with the 2019 Data Incident and the similarity of the claims in both cases, including the overlapping classes, Plaintiffs' counsel for the 2019 Action and the 2023 Action collectively determined it would be in the best interest of all concerned – the Plaintiffs, the Defendant, the putative classes, and the Court – to have this Court preside over both cases, which are now being joined for settlement purposes. The Court agrees that a single settlement process for the Actions makes sense as it will be more efficient and less expensive.

2

the 2019 Action. (ECF No. 22, 86). The Court also appointed the 2019 Plaintiffs' interim class counsel. (ECF No. 93.)

On April 2, 2021, the 2019 Plaintiffs filed a consolidated class action complaint, asserting claims for negligence, negligent misrepresentation, breach of implied contract, unjust enrichment, and various state consumer protection law violations. (ECF No. 101.).

On June 1, 2021, Defendant filed a motion to dismiss the consolidated class action complaint, which was fully briefed. (ECF No. 103, 109, 117.) On November 2, 2022, the Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 128.) The Court allowed the 2019 Plaintiffs' claims for negligence, breach of implied contract, and violations of some state consumer protection laws, but dismissed claims for violations of other state consumer protection laws, negligent misrepresentation, and unjust enrichment. *Id.* On December 19, 2022, Defendant answered the 2019 consolidated complaint, denying all material allegations and alleging affirmative defenses. (ECF No. 136.)

After the Court's ruling on Defendant's motion to dismiss, the Parties in the 2019 Action engaged in substantial fact discovery, including written discovery, document production, depositions, and motion practice. *See* Joint Declaration.

The 2019 Plaintiffs filed notices of related cases on December 6, 2023 (ECF No. 183) and December 20, 2023 (ECF No. 185), seeking to relate several cases filed relating to the 2023 Data Incident, which Defendant and 2023 Plaintiffs opposed. (ECF Nos. 184, 186, 187, 188.)

On July 9, 2024, the 2019 Parties filed a stipulation to stay the case pending mediation, which the Court granted that same day. (ECF Nos. 233, 234.)

On August 14, 2024, Defendant filed a notice of withdrawal of its response to the 2019 Plaintiffs' notices of related cases. (ECF No. 235.)

On September 18, 2024, the Court issued a Minute Order accepting transfer of the consolidated cases in the 2023 Action. (ECF No. 237.)

**The 2023 Action**

Beginning on September 7, 2023, in a separate cybersecurity incident, unauthorized individuals accessed Defendant's network by impersonating an information technology administrator

and gaining access to employees' network access credentials. *See* Joint Declaration. Once inside the network, the unauthorized individuals locked down Defendant's network and further gained access to approximately 37 million customers' personally identifiable information, including, but not limited to MGM's customers and guests' names, addresses, telephone numbers, email addresses, dates of birth, driver's license numbers, passport numbers, military identification numbers, and in some cases, Social Security numbers. *Id*.

Following the 2023 Data Incident, and commencing on September 21, 2023, the Defendant was named in the first of 14 class action lawsuits. (2023 ECF No. 1.)

On March 19, 2024, the 2023 Plaintiffs moved to consolidate the cases. (2020 ECF No. 29.) On March 22, 2024, the Court consolidated the cases into the 2023 Action before the Honorable Richard F. Boulware, II. (2023 ECF No. 32.)

On April 19, 2024, the 2023 Plaintiffs moved the Court for appointment of interim lead counsel, which the Court granted on October 21, 2024. (2023 ECF No. 42, 55.)

On March 19, 2024, the 2023 Plaintiffs filed their consolidated class action complaint against Defendant. (2023 ECF No. 29.)

**The 2019 Plaintiffs and 2023 Plaintiffs Agreement to Work Cooperatively for Mediation**

In July 2024, the 2019 Plaintiffs and the 2023 Plaintiffs agreed to participate in a joint mediation with Defendant before an experienced data breach mediator, Bruce Friedman, Esq., with JAMS in Las Vegas on August 5, 2024. *See* Joint Declartion.  In advance of the mediation, the 2019 Plaintiffs and the 2023 Plaintiffs propounded informal discovery requests to learn as much as possible about the 2019 Data Incident and the 2023 Data Incident. *Id*. Through the provision of informal discovery, Plaintiffs in both cases were able to evaluate the merits of Defendant's position. *Id*. The Parties also exchanged detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id*. The mediation was canceled for various reasons. *Id*. Thereafter, the 2019 Plaintiffs and the 2023 Plaintiffs decided to work together and collectively pursue a global settlement of the Actions. *Id*.

The Parties rescheduled and participated in mediation for October 10, 2024, with Mr. Friedman, in Las Vegas. (ECF No. 236.) In advance of the mediation, Plaintiffs propounded

additional informal discovery requests regarding the size and scope of the Data Incidents, including, but not limited to, the number of persons potentially impacted, the data elements impacted, and the geographical makeup of the putative classes. After a full day of negotiations, the Parties were unable to reach a settlement. Over the next several weeks, however, the Parties continued to negotiate the contours of a potential global resolution. *See* Joint Declaration.

On October 31, 2024, the 2019 Plaintiffs filed a notice of settlement, notifying the Court that all Parties (including the 2023 Plaintiffs) were able to resolve the cases. (ECF No. 238.)

On November 4, 2024, the Court entered a Minute Order requiring the Parties to file a joint status report every 60 days, beginning on December 2, 2024, informing the Court of the status of settlement. (ECF No. 239.)

On November 7, 2024, consistent with the September 18, 2024 Minute Order (ECF No. 237), the Clerk of Court was directed to transfer the 2023 Action for all further proceedings (2023 ECF No. 57).

The Parties signed the Agreement wich requires Plaintiffs to move for Preliminary Approval of the collective Settlement of the Actions.

## III.    MATERIAL TERMS OF THE SETTLEMENT

**A.    Settlement Class -** Plaintiffs seek Preliminary Approval of the following Settlement Class:

> [A]ll persons in the United States whose Private Information was accessed during the Data Incidents.

Excluded from the Settlement Class are the judges presiding over the Actions and members of their direct families. Agreement ¶ 76.

**B.    Settlement Fund -** The Settlement provides for a non-reversionary $45,000,000 all cash Settlement Fund, which will be fully funded by the Defendant within 10 business days of Preliminary Approval and used to pay: (1) all Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel and any Service Awards to the Class Representatives; and (3) all Settlement Administration Costs. *Id*. ¶ 89. Once Defendant funds the Settlement Fund, Defendant will not be required to make any other payments under this Settlement. *Id*. ¶ 88.

**C.    Settlement Class Member Benefits** - All eligible Settlement Class members who may elect to receive Cash payments consisting of: (1) a Documented Loss Cash Payment in a maximum amount of $15,000.000 per individual; and (2) a Tier 1, 2, or 3 Cash payment depending on whether they are a Tier 1, 2, or 3 Settlement Class Member; and (3) Financial Account Monitoring. *Id.* ¶ 92. All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against without receiving a Settlement Class Member Benefit. *Id.*

### *Documented Loss Cash Payment*

All Settlement Class Members may submit a Claim Form for a Documented Loss Cash Payment for up to $15,000.00 per Settlement Class Member upon presentment of documented losses fairly traceable to either Data Incident and attest under penalty of perjury to incurring documented losses, supported by reasonable documentation. These losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the applicable Data Incident through the date of claim submission; and miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges. The supporting documentation may include receipts or other documentation not "self-prepared" by the Claimant. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. The lack of reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected. *Id.* ¶ 92.a.

### *Tier Cash Payments*

In addition to a Documented Loss Cash Payment, all Settlement Class members may elect a Tier Cash Payment, which is a flat cash payment based on whether the Settlement Class member is a Tier 1 Settlement Class Member, Tier 2 Settlement Class Member, or Tier 3 Settlement Class

6

Member. The tiers are determined by the type of data a Settlement Class member had exposed in the Data Incidents. The Notice will provide a unique identifier that Settlement Class members can use on the Settlement Website to determine the applicable tier. *Id.* ¶ 92.b.-d.

### 1.   Tier 1 Cash Payment - $75.00 for Tier 1 Settlement Class members

In addition to a Documented Loss Cash Payment, Tier 1 Settlement Class Members may also elect to receive a Tier 1 Cash Payment, which is an estimated flat cash $75.00 payment. *Id.* ¶ 92.b.

### 2.   Tier 2 Cash Payment - $50.00 for Tier 2 Settlement Class members

In addition to a Documented Loss Cash Payment, Tier 2 Settlement Class members may also elect to receive a Tier 2 Cash Payment, which is an estimated flat cash $50.00 payment. *Id.* ¶ 92.c.

### 3.   Tier 3 Cash Payment - $20.00 for Tier 3 Settlement Class members

In addition to a Documented Loss Cash Payment, Tier 3 Settlement Class members may also elect to receive a Tier 3 Cash Payment which is an estimated flat cash $20.00 payment. *Id.* ¶ 92.d.

### *Financial Account Monitoring*

In addition to electing a Cash Payment, all Settlement Class Members may elect to submit a Claim for Financial Account Monitoring consisting of identity theft protection and credit monitoring as follows: one year of CyEx Identity Defense Total with three-bureau monitoring and at least $1,000,000 of fraud/identity theft insurance. The one-year period will commence when Settlement Class Members use their codes to activate the Financial Account Monitoring product. *Id.* ¶ 92.

**D.**   **Settlement Class Notice** - The Parties have agreed on a comprehensive Notice Program, which includes Email Notice, Postcard Notice, Publication Notice, Long Form Notice, a Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* § VIII.

Within 10 days of Preliminary Approval, Defendant will provide the Settlement Administrator with a Class List containing, if available, the Settlement Class members' names, email addresses, postal addresses, and telephone numbers. *Id.* ¶¶ 38, 99. Within 30 days of Preliminary Approval, the Settlement Administrator will initiate Publication Notice (digitally publish on the internet and on select social media platforms) and send Email Notice to all Settlement Class members for which an email address has been provided by Defendant. *Id.* ¶¶ 67, 100. Those Settlement Class Members whose Email Notice is undelivered or bounces back, as well as those Settlement Class members for

1  which email addresses are unknown, shall be sent a Postcard by U.S. Mail no later than 60 days before

2  the original scheduled Final Approval Hearing date. *Id.* ¶ 107. Notice shall also be published on the

3  Settlement Website and available by mail in a Long Form Notice upon request of the Settlement

4  Administrator. *Id.* ¶¶ 53, 100. The Notice Program shall be completed 45 days before the original

5  scheduled Final Approval Hearing. *Id.* ¶ 108.

6      Settlement Class members may review the Long Form Notice, key documents and dates, and

7  answers to frequently asked questions on the Settlement Website, and they can also obtain answers

8  to those frequently asked questions and request the Long Form Notice and Claim Form by calling a

9  toll-free telephone number. *Id.* ¶¶ 97(d)-(e),101-102.

10      The Notice, in forms similar to those attached to the Agreement as Exhibits 1-4, will inform

11  the Settlement Class of the general terms of the Settlement, including a description of the Actions,

12  the identity of the Settlement Class, and what claims will be released. All Notices shall include, among

13  other information: a description of the material terms; how to submit a Claim Form; the Claim Form

14  Deadline; the Opt-Out deadline to be excluded from the Settlement Class; the Objection Deadline to

15  object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the

16  Final Approval Hearing date; and the Settlement Website address at which Settlement Class members

17  may access the Agreement and other related documents and information. Additionally, the opt-out

18  procedures will be explained in the Long Form Notice, as well as how Settlement Class Members

19  may exercise their right to object to the proposed Settlement and/or Application for Attorneys' Fees,

20  Costs, and Services Awards at the Final Approval Hearing. *Id.* ¶¶ 101, 104-105.

21      **E.    Claim Submission Process -** To receive Settlement Class Member Benefits, Settlement

22  Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX.  A

23  copy of the proposed Claim Form is attached to the Agreement as Exhibit 5. Claim Forms may be

24  submitted online through the Settlement Website or through U.S. Mail sent to the Settlement

25  Administrator at the address designated on the Claim Form. *Id.* ¶ 111. The Settlement Administrator

26  will review all Claim Forms to determine their validity, eligibility, and the type and amount of the

27  Cash Payment to which the Settlement Class Member may be entitled. *Id.* ¶ 112. The Claims process

28  includes procedures for the Settlement Administrator to identify and reject duplicate Claims; to take

8

any reasonable steps to prevent fraud and abuse; to send a Notice of Deficiency to a Settlement Class Member whose Claim Form was rejected for containing incomplete or inaccurate information, and/or omitting required information in the Claim Form, allowing for the submission of information to validate the Claim; and to reduce or reject a Claim. *Id.* ¶¶ 113-116. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after the Effective Date. *Id*. ¶ 120. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Financial Account Monitoring with activation instructions. *Id*. ¶¶ 121-122. Greater detail on the Claims process is in Section IX of the Agreement.

F.    **Disposition of Residual Funds** - The Settlement is designed to exhaust the Settlement Fund. However, in the event there are funds remaining in the Settlement Fund, including from uncashed checks, within 45 days following the 180-day check negotiation period, the Parties will ask the Court to approve the distribution of all remaining funds to an appropriate *cy pres* recipient. *Id*. ¶ 128.

G.    **Settlement Administrator** - The proposed Settlement Administrator, Epiq, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. *Id*. ¶ 74; *see also generally* Declaration of Cameron R. Azari ("Admin. Decl."). The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement § VII.

The Settlement Administrator's duties include, *inter alia*: (i) initiating and completing the Court-approved Notice Program; (ii) establishing and maintaining the Settlement Fund Escrow Account; (iii) establishing and maintaining a post office box to receive opt-out requests, objections, and Claim Forms; (iv) establishing and maintaining the Settlement Website; (v) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call; (vi) responding to any mailed Settlement Class member inquiries; (vii) processing all opt-out requests from the Settlement Class; (viii) providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency

1  sent, opt-out requests and objections received that week, the total number of opt-out requests and

2  objections received to date, and other pertinent information; (ix) in advance of the Final Approval

3  Hearing, preparing a declaration confirming the Notice Program was completed in accordance with

4  the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program

5  was completed, indicating the number of Claim Forms received and the amount of Valid Claims,

6  providing the names of each Settlement Class member who timely and properly requested to opt-out

7  from the Settlement Class, indicating the number of objections received, and other information as

8  may be necessary to allow the Parties to seek and obtain Final Approval; (x) distributing, out of the

9  Settlement Fund, Cash Payments electronically or by paper check and sending out Financial Account

10  Monitoring activation emails; (xi) paying Court-approved attorneys' fees, costs, and Service Awards

11  out of the Settlement Fund; (xii) paying Settlement Administration Costs, including any required

12  taxes, out of the Settlement Fund following approval by Class Counsel; and (xiii) any other Settlement

13  Administration function at the instruction of Class Counsel and Defendant including, but not limited

14  to, verifying the Settlement Fund has been properly administered and the Cash Payments have been

15  properly distributed. *Id.* ¶ 97. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 95.

16      **H.    Opt-Out and Objection Procedures** - Consistent with the Settlement's opt-out

17  procedures, the Long Form Notice details that Settlement Class members who do not wish to

18  participate in the Settlement may opt-out up to 30 days prior to the original Final Approval Hearing

19  date. *Id.* ¶ 61. During the Opt-Out Period, they may mail an opt-out request to the Settlement

20  Administrator including the Settlement Class member's name, address, telephone number, and email

21  address (if any), and a statement requesting to be excluded from the Settlement Class. *Id.* ¶ 104. Any

22  Settlement Class member who does not timely opt-out shall be bound by the Agreement's terms even

23  if that Settlement Class Member does not submit a Claim Form. *Id.*

24      The Agreement and Long Form Notice also specify how Settlement Class Members may

25  object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶

26  105. Objections must be mailed to the Settlement Administrator. *Id.* For an objection to be considered

27  by the Court, it must be submitted no later than the last day of the Objection Period, as specified in

28  the Notice (30 days before the original Final Approval Hearing date). *Id.* If submitted by mail, an

1  objection shall be deemed to have been submitted when posted if received with a postmark date

2  indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the

3  instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to

4  have been submitted on the shipping date reflected on the shipping label. *Id*. It must set forth: (a) the

5  objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds

6  for the objection, accompanied by any legal support for the objection known to the objector or

7  objector's counsel; (c) the number of times the objector has objected to a class action settlement

8  within the five years preceding the date that the objector files the objection, the caption of each case

9  in which the objector has made such objection, and a copy of any orders related to or ruling upon the

10  objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the

11  identity of all counsel who represent the objector, including any former or current counsel who may

12  be entitled to compensation for any reason related to the objection to the Settlement and/or

13  Application for Attorneys' Fees, Costs, and Service Awards; (e) the number of times in which the

14  objector's counsel and/or counsel's law firm have objected to a class action settlement within the five

15  years preceding the date of the filed objection, the caption of each case in which counsel or the firm

16  has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's

17  law firm's prior objections that were issued by the trial and appellate courts in each listed case in

18  which the objector's counsel and/or counsel's law firm have objected to a class action settlement

19  within the preceding five years; (f) the identity of all counsel (if any) representing the objector who

20  will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the

21  Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the

22  objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the

23  objector's signature (an attorney's signature is not sufficient). Class Counsel and/or Defendant's

24  Counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

25      **I.**    **Release of Claims** - Plaintiffs and Settlement Class Members who do not timely and

26  validly opt-out of the Settlement Class will be bound by the Settlement terms, including the Releases

27  discharging the Released Claims against the Released Parties. *Id.* § XIII. The Released Claims are

28  narrowly tailored to only claims arising out of or relating to the Data Incidents. *See* Joint Declaration.

1    **J.    Service Awards** - The amount of any Service Awards for the Class Representatives

2    shall be determined by the Court and payable from the Settlement Fund. Agreement ¶ 125. Class

3    Counsel will apply to the Court for a Service Award in the amount of $10,000.00 each for those

4    Plaintiffs that were deposed in the 2019 Action and $3,500.00 each for all other Plaintiffs. *Id.* The

5    Settlement is not contingent on approval of the requests for Service Awards, and if the Court grants

6    amounts other than what was requested, the remaining provisions of the Agreement shall remain in

7    force. *Id.* ¶ 127. The Notice will advise the Settlement Class of the amounts of the Service Awards

8    that will be sought. *Id.*, Ex. 1-4. Because Plaintiffs will separately apply for the Service Award at the

9    time of seeking Final Approval of the proposed class action Settlement, the Court does not reach a

10   determination as to the fairness of the proposed Service Awards.

11   **K.    Attorneys' Fees and Costs** - The amount of any attorneys' fees and costs shall be

12   determined by the Court and payable from the Settlement Fund. Agreement ¶ 126. Class Counsel will

13   apply to the Court for an award of attorneys' fees of up to 30% of the Settlement Fund, plus

14   reimbursement of costs. *Id.* The attorneys' fees and costs will be formally sought in the Application

15   for Attorneys' Fees, Costs, and Service Awards filed as part of the Motion for Final Approval. The

16   Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court

17   grants amounts other than what was requested, the remaining provisions of the Agreement shall

18   remain in force. *Id.* ¶ 127. The Notice will advise the Settlement Class of the amount of attorneys'

19   fees that Class Counsel intends to seek. *Id.*, Ex. 1-4. Because Plaintiffs will separately apply for the

20   attorneys' fees at the time of seeking Final Approval of the proposed class action Settlement, the

21   Court does not reach a determination as to the fairness of the proposed attorneys' fees.

22   **IV.    LEGAL STANDARD**

23   A class action may not be settled without the approval of the court. Fed. R. Civ. Proc. 23(e).

24   The decision to approve or reject a proposed settlement "is committed to the sound discretion of the

25   trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Supreme Court

26   has recognized the benefits of a proposed settlement of a class action can be realized only through the

27   certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

28   The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.

12

1  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may

2  not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action

3  reach a settlement agreement prior to class certification, "courts must peruse the proposed

4  compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*

5  *v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess

6  whether a class exists. *Id.* (citing *Amchem*, 521 U.S. 591 at  620). Second, the court must determine

7  whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d

8  at 1026. If the court preliminarily certifies the class and finds the proposed settlement fair to its

9  members, the court schedules a fairness hearing where it will make a final determination as to the

10  fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class

11  members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

12  **V.    DISCUSSION**

13         The Motion for Preliminary Approval contends the Court should find the Settlement is within

14  the range of reasonableness necessary to grant Preliminary Approval under Fed. R. Civ. P. 23(e) and

15  enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the

16  Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv)

17  appointing John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch

18  IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel for the Settlement

19  Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form

20  and the Claim process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement

21  Administrator; (viii) establishing procedures and deadlines for members of the Settlement Class to

22  opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing at which time the

23  Court will consider whether to grant Final Approval of the Settlement and the Application for

24  Attorneys' Fees, Costs and Service Awards. Accordingly, the Court grants class certification for the

25  purposes of settlement and approves the proposed Settlement on a preliminary basis as fair,

26  reasonable, and adequate.

27         **A.    Provisional Class Certification.**

28         Plaintiffs must satisfy all Fed. R. Civ. P. 23(a) requirements (numerosity, commonality,

13

typicality, and adequacy), and one of the requirements of Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). The Court finds that the Settlement Class meets these class certification requirements.

1.    **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "precise, objective, and presently ascertainable." *Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2020 WL 633599, at *1 (D. Nev. Jan. 13, 2020). Class certification and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. For purposes of class certification, a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017). Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notice that their Private Information may have been accessed during the Data Incidents. Agreement ¶ 76.

2.    **Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each requirement is satisfied here.

*Numerosity -* Rule 23(a)(1) requires that a class include so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). Generally, numerosity is satisfied when the class

14

exceeds 40 members. *Andersen v. Briad Restaurant Group, LLC*, 333 F.R.D. 194, 202 (D. Nev. 2019). Here, there are millions of Settlement Class members. Therefore, the Court can safely conclude the Settlement Class is sufficiently numerous such that the joinder of each member would be impracticable.

**Commonality -** Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is a permissive requirement, and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019–20. A single common question will do. *Andersen*, 333 F.R.D. at 203.

Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re PostMeds, Inc. Data Breach Litig.*, No. 23-cv-05710-HSG, 2024 WL 4894293, at *2 (N.D. Cal. Nov. 26, 2024) (commonality satisfied because claims turn on whether defendant had legal duty to use reasonable security measures to protect class members' personal information, whether that duty was breached, and whether defendant's data security was adequate to protect personal information). Here, as in other data breach cases, the claims turn on whether Defendant's security environment was adequate to protect the Settlement Class' Private Information. That inquiry can be fairly resolved because it revolves around evidence that does not vary between members, at least for purposes of the Settlement, for all Settlement Class members at once. Indeed, the Data Incidents impacted each Settlement Class member's Private Information.

The Court is therefore satisfied that, if Plaintiffs were to continue to pursue the Actions, the answers to these questions would result in classwide resolution of the claims asserted. Therefore, the Court finds Plaintiffs have satisfied the commonality requirement.

**Typicality -** The commonality and typicality analyses often overlap—both focus on whether

1   a sufficient nexus exists between the legal claims of the named class representatives and those of

2   individual class members to warrant class certification. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG

3   (RAOx), 2022 WL 2155117, at *3 (C.D. Cal. Feb. 22, 2022) (citing *Gen. Tel. Co. Sw. v. Falcon*, 457

4   U.S. 147, 157 n.13 (1982)). "The test of typicality 'is whether other members have the same or similar

5   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

6   other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale*

7   *Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). *See also Andersen*, 333 F.R.D. at 203

8   (same). "Typicality refers to the nature of the claim or defense of the class representative, and not to

9   the specific facts from which it arose or the relief sought." *Id.* "Under the 'permissive standards' of

10  Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of

11  absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020.

12      The Court is satisfied that typicality is met because Plaintiffs' interests are aligned with the

13  Settlement Class in that they all received a notice letter informing them their Private Information may

14  have been compromised as a result of the Data Incidents and were therefore impacted by the same

15  purportedly inadequate data security that allegedly harmed the rest of the Settlement Class. Their

16  claims are based on the same legal theories and underlying event.

17      ***Adequacy of Representation –*** "'To satisfy constitutional due process concerns, absent class

18  members must be afforded adequate representation before entry of a judgment which binds them.'"

19  *Andersen*, 333 F.R.D. at 204 (citation omitted). Fed. R. Civ. P. 23(a)(4) requires the representative

20  parties "fairly and adequately protect the interests of the class." This determination turns on two

21  questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with

22  other class members, and (2) will the representative plaintiffs and their counsel prosecute the action

23  vigorously on behalf of the class?" *Staton*, 327 F.3d 938, 957 (9th Cir. 2003); *Andersen*, 333 F.R.D.

24  at 204. Both components are met.

25      In the instant case, the Court is satisfied at this stage that Plaintiffs will adequately represent

26  the Settlement Class. Like all Settlement Class members, Plaintiffs have claims against Defendant

27  arising from the Data Incidents that allegedly impacted their Private Information. Plaintiffs were

28  similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would

1  necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class

2  as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in

3  recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted the Actions

4  through Class Counsel by, among other things, reviewing filings, promptly providing documents and

5  information to Class counsel, the 2019 Plaintiffs responding to written discovery requests and being

6  deposed, acting in the best interest of the Settlement Class, and accepting the classwide Settlement.

7  *See* Joint Declaration. Plaintiffs' willingness to serve as Class Representatives demonstrates their

8  serious commitment to bringing about the best results possible for the Settlement Class.

9      The Court further finds that Class Counsel have significant experience in data breach class

10  action lawsuits and have adequately demonstrated their vigorous advocacy on behalf of the Settlement

11  Class' interests in the Actions. *See* Joint Declaration., Ex. 1-9. In retaining these firms, Plaintiffs

12  employed counsel who are "qualified, experienced and able to conduct the proposed litigation."

13  *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009)

14  (internal quotation omitted). Class Counsel have litigated the Actions, including, inter alia, evaluating

15  the claims, preparing comprehensive pleadings, pursuing formal and informal discovery, consulting

16  with data security experts, responding to motions to dismiss and preparing and responding to other

17  motions, complying with Court orders and requirements, and participating in a mediation that

18  ultimately resulted in this Settlement. Accordingly, Plaintiffs and Class Counsel will adequately

19  protect the Settlement Class. *See* Joint Declaration.

20      **3.**    **Rule 23(b)(3)** **-** Rule 23(b)(3) requires the court to find "questions of law or fact

21  common to class members predominate over questions affecting only individual members, and that a

22  class action is superior to other available methods for fairly and efficiently adjudicating the

23  controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may

24  consider the class will be certified for settlement purposes only, and that a showing of manageability

25  at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

26  class certification, a district court need not inquire whether the case, if tried, would present intractable

27  management problems, . . . for the proposal is that there be no trial.").

28

PROPOSED ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    ***Predominance*** – The predominance inquiry looks at "the legal or factual questions that

2    qualify each class member's case as a genuine controversy, questions that preexist any settlement."

3    *Amchem*, 521 U.S. at 623. If common questions "present a significant aspect of the case and they can

4    be resolved for all members of the class in a single adjudication," then "there is clear justification for

5    handling the dispute on a representative rather than on an individual basis," and the predominance

6    test is satisfied. *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). There is no definitive

7    test, however, in general, predominance is met when there exists generalized evidence which proves

8    or disproves an [issue or] element on a simultaneous, classwide basis, since such proof obviates the

9    need to examine each class members' individual position. The main concern is "the balance between

10   individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

11   Here, all Settlement Class members had their Private Information compromised in the Data

12   Incidents and the security practices at issue did not vary from person to person. Thus, because these

13   common questions represent a significant aspect of the case and they can be resolved for all members

14   of the class in a single adjudication, there is a clear justification for handling the dispute on a

15   representative rather than on an individual basis. *Id.* Predominance is satisfied.

16   ***Superiority*** – "[T]he purpose of the superiority requirement is to assure that the class action

17   is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover*

18   *N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the

19   interest of members of the class in individually controlling the prosecution or defense of separate

20   actions; (B) the extent and nature of any litigation concerning the controversy already commenced by

21   or against members of the class; (C) the desirability or undesirability of concentrating the litigation

22   of the claims in the particular forum; and (D) the difficulties likely to be encountered in the

23   management of a class action." All of these factors are present here. Adjudicating individual actions

24   would be impractical. The amount in dispute for each Settlement Class member is too small, the

25   technical issues too complex, and the expert testimony and document review too costly. *See* Joint

26   Declaration. Further, individual claim prosecution would be prohibitively expensive, needlessly delay

27   resolution, and may lead to inconsistent rulings. *Id.* Accordingly, a class action is the superior method

28   of adjudicating this case. *Id.*

Accordingly, because the Settlement Class satisfies the requirements of Rule 23(a) and 23(b), the Court hereby provisionally certifies the Settlement Class for settlement purposes.

### B.    Preliminarily Approval of the Settlement.

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).[3]

Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986).

The question at the preliminary approval stage is whether the Court is likely to find the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the Ninth Circuit traditional "*Churchill*" factors.[4]

The Rule 23(e)(2) factors are:

---

[3] Courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).

[4] Rule 23(e)(2) was amended in 2018 to include explicit class settlement approval factors. However, consistent with the Advisory Committee note to that rule amendment, courts in this Circuit have made clear the amendment does not entirely displace the traditional Ninth Circuit factors, which overlap with the express Rule 23(e)(2) factors. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2024) (citing Fed. R. Civ. P. 23 Advisory Committee's note to the 2018 amendment). Thus, the Court addresses them all.

19

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Churchill* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Where, as here, "a settlement agreement is negotiated prior to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *Id.* Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing *Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (cautioning that courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (noting that reviewing courts must employ "even more than the usual care"); *see also Manual for Complex Litig.* § 21.612 (4th ed. 2004). Therefore, before approving a precertification settlement, the Court must not only show that it "has explored [the Rule 23(e)(2) and *Churchill*] factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 947. Because collusion is unlikely to be evident from the face

20

of the settlement itself, "courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.*

Because collusion is unlikely to be evident from the face of the settlement itself, "courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* A few such signs include: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

For the following reasons, the Settlement is granted Preliminary Approval, applying the Rule 23(e)(2) and *Churchill* factors.[5] The Court is likely to find the Settlement is fair, reasonable, and adequate at the final approval stage.

**1.    Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5)** – Both Class Counsel and the Class Representative have adequately represented the Settlement Class. Class Counsel have adequately represented the Settlement Class by fully investigating and litigating the facts and legal claims. Their substantial efforts are exhibited by the formal and informal discovery regarding the 2019 Data Incident, and, while settlement of the 2023 Data Incident claims is coming at an earlier stage, Class Counsel's efforts to use informal discovery to learn what occurred to cause the 2023 Data Incident and the Private Information impacted, before attending a full-day mediation session with an experienced mediator, which allowed for arm's length and good faith negotiations, without collusion. *See* Joint Declaration. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id.*

---

[5] The seventh factor is inapplicable, and the eighth factor is in applicable at this time and is best considered after Notice of the Settlement is sent to see if there is any opposition to the Settlement. The Court will consider the final Churchill factor at the final approval stage.

1    The Class Representatives also have demonstrated their adequacy by (i) having a genuine

2  personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing

3  information and documents to Class Counsel to permit investigation and development of the

4  complaints; (iv) being available as needed, including to respond to discovery and in the case of the

5  2019 Plaintiffs sitting for deposition; (v) monitoring the Actions; and (vi) reviewing the Settlement

6  terms. *See* Joint Declaration. Plaintiffs' respective interests are coextensive and do not conflict with

7  the interests of the Settlement Class. *Id*. Plaintiffs have the same interest in the Settlement relief, and

8  the absent Settlement Class members have no diverging interests. *Id.* Therefore, the Court finds Rule

9  23(e)(2)(A) and *Churchill* factor 5 weigh in favor of approval.

10    **2.    The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Churchill***

11  **Factor 6)** – This Circuit puts "a good deal of stock in the product of arms-length, negotiated

12  resolution." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150

13  F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). Critically, there is "[a]n initial presumption of

14  fairness is usually involved if the settlement is recommended by class counsel after arm's-length

15  bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6

16  (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May

17  13, 2011).

18    The Settlement is the result of good faith, informed, and arm's-length negotiations between

19  experienced attorneys familiar with class action litigation and with the legal and factual issues at

20  stake. *See* Joint Declaration. Class Counsel recommend approval of the Settlement after they

21  thoroughly investigated and analyzed Plaintiffs' claims; fully briefed the motion to dismiss the 2019

22  Data Incident claims, which the court denied in part and granted in part; engaged in formal and

23  informal discovery for the 2019 Data Incident and informal discovery for the 2023 Data Incident; and

24  consulted with data security experts, enabling them to gain an understanding of the evidence related

25  to central questions in the Actions and preparing them for well-informed settlement negotiations. *Id*.

26  The Settlement was reached with the assistance of a well-respected and experienced mediator. *Id*. For

27  these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in

28

PROPOSED ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 arriving at the Settlement.[6] Therefore, the Court finds Rule 23(e)(2)(B) and Churchill factor 6 weigh

2 in favor of approval.

3       **3.**     **The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1-**

4 **4)** – Although Plaintiffs believe the claims asserted in the Actions are strong and meritorious and the

5 Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses

6 significant risks that make any recovery for the Settlement Class uncertain. In assessing the degree of

7 risk of continued litigation, "the court evaluates the time and cost required." *Adoma v. Univ. of*

8 *Phoenix, Inc.*, 913 F.Supp.2d 964, 976 (E.D. Cal. 2012). "[U]nless the settlement is clearly

9 inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

10 uncertain results." *Id.* (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

11 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk

12 of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the

13 saving of cost and elimination of risk, the parties each give up something that they might have won

14 had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v.*

15 *Armour & Co.*, 402 U.S. 673, 681–82 (1971)).

16       Data breach class actions are risky. *See, e.g.*, *In re Mednax Serv., Customer Data Sec. Breach*

17 *Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024); *In re Equifax*

18 *Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save

19 the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019

20 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field

21 of litigation because [they] are uncertain and class certification is rare"). *See also, e.g.*, *In re*

22 *Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C.

23 May 14, 2024) (denying class certification in a data breach case). The Settlement's fairness is

24 underscored by consideration of the obstacles the Settlement Class would face in ultimately

25

26 ───────────────

[6] None of the so-called "*Bluetooth*" factors are of concern. *See In re Bluetooth*, 654 F.3d at 947. First,
27 Class Counsel will not receive a disproportionate distribution from the Settlement Fund. Second, there
is no clear-sailing arrangement regarding the attorneys' fees Class Counsel will seek. Agreement ¶
28 127. Third, there is no provision that unawarded attorneys' fees would revert to Defendant.

1    succeeding on the merits, as well as the expense and likely duration of the litigation.

2          Despite the risks involved with further litigation, the Settlement provides outstanding benefits,

3    including Cash Payments and Financial Account Monitoring for all Settlement Class Members. Also,

4    the Claim Form submission process and distribution of Settlement Class Member Benefits is fair,

5    convenient, and effective. Settlement Class Members will promptly receive Cash Payments by

6    electronic means or paper check issued by the Settlement Administrator and Financial Account

7    Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process.

8    *See* Joint Declaration. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain

9    significant benefits without having to face further risk of not receiving any relief at all. *Andersen*,

10   2022 WL 181262 at *7.

11         Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class

12   Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only

13   after reaching agreement on all other material Settlement terms. *See* Joint Declaration. The

14   Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent

15   on approval of the attorneys' fee or costs award to Class Counsel or the Service Awards. Agreement

16   ¶ 127. As the Application for Attorneys' Fees, Costs, and Service Awards will detail, the 30% of the

17   common Settlement Fund that will be sought is within the typical range of acceptable attorneys' fees

18   in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Smith v.*

19   *One Nevada Credit Union*, No. 2:16-cv-02156, 2018 WL 4407251, at *8 (D. Nev. Sept. 16, 2018).

20   Finally, the Parties' agreements are all in the Agreement. *See* Joint Declaration.

21         Therefore, the Court finds Rule 23(e)(2)(C) and *Churchill* factors 1-4 weigh in favor of

22   approval.

23         **4.    The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** – All

24   Settlement Class Members are given an equal opportunity to claim Settlement Class Member

25   Benefits. Specifically, each has the option to be reimbursed for documented losses up to $15,000.00,

26   may elect to receive a flat cash payment based upon their respective Settlement Class tier, and all may

27   select Financial Account Monitoring. The tiering of additional flat cash payments reasonably assigns

28   higher value to the more valuable categories of Private Information exfiltrated in the Data Incidents.

All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. Thus, the Settlement Class Member Benefits distribution method will be equitable and effective. Therefore, the Court finds Rule 23(e)(2)(D) weighs in favor of approval.

Accordingly, the Court is likely to find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

### C.    The Court Appoints the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs have been integral to Class Counsel throughout litigation and settlement. *See* Joint Declaration. The 2019 Plaintiffs were very involved in this litigation. *Id.* They assisted with the preparation of the 2019 Complaint, provided necessary factual information and helped respond to written discovery requests, had their depositions taken, communicated with Class Counsel when needed, and reviewed settlement documents. *Id.* The 2023 Plaintiffs assisted with the preparation of the 2023 Complaint, provided necessary factual information, communicated with Class Counsel when needed, and reviewed settlement documents. *Id.* Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court appoints them as Class Representatives.

For the same reasons discussed above for adequacy of representation, and when appointing them on an interim basis in the Actions, the Court designates John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel. Fed. R. Civ. P. 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive

25

experience prosecuting and resolving complex class actions. *See* Joint Declaration, Ex. 1-9. Before commencing litigation, they investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. *Id*. Class Counsel has devoted substantial time and resources to the Actions and will continue to do so. *Id.*

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq has a long history of successful class action administrations. *See generally* Admin. Decl. The Court approves Epiq as the Settlement Administrator.

**D.    The Proposed Notice Program and Claim Process Are Reasonable.**

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Andersen*, 2022 WL 181262 at *6 (notice satisfactory if it describes the settlement terms in sufficient detail to alert those with adverse viewpoints to investigate and to come forward to be heard). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the Settlement Administrator's input and assistance. The Notice will be directly disseminated to all persons who fall within the Settlement Class definition and whose names, email addresses, and postal addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes, as well as through publication on digital media. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (notice provided by mail and email was sufficient). In addition, Epiq will administer the Settlement Website containing relevant information about the Settlement and maintain the toll-free

26

1   telephone line that Settlement Class members can call. Further, the Notices include, among other

2   information: a description of the material terms of the Settlement; how to submit a Claim Form; the

3   Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of

4   the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to

5   the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval

6   Hearing date; and the Settlement Website address at which Settlement Class members may access

7   this Agreement and other related documents and information. Agreement § VIII. The Long Form

8   Notice and Settlement Website will also detail the opt-out and objection procedures approved by the

9   Court. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as the Notices will

10  notify the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees

11  of up to 30% of the Settlement Fund, plus reimbursement of costs, and for Service Awards for the

12  Class Representatives. *Id.*

13          Thus, the Court approves the Notice Program, including the form and content of the Notices.

14  Agreement, Exs. 1-4. The Court also approves the opt-out and objection procedures set forth in the

15  Agreement and summarized in this Order.

16          The Court also approves the Claim Form and Claim process. The Claim Form is easy to

17  understand and may be submitted online through the Settlement Website or through U.S. Mail sent

18  to the Settlement Administrator. *Id.* ¶ 111. As noted above, the Settlement Administrator will review

19  all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment

20  to which the Settlement Class Member may be entitled, and the Claim review process is robust. *Id.*

21  ¶¶ 112-116.

22          The Court directs the Settlement Administrator to disseminate the Notices and Claim Form as

23  approved herein. Class Counsel and Defendant's Counsel are hereby authorized to use all reasonable

24  procedures in connection with approval and administration of the Settlement that are not materially

25  inconsistent with this order or the Settlement, including making, without the Court's further approval,

26  minor form or content changes to the Notices and Claim Form they jointly agree are reasonable or

27  necessary.

28

PROPOSED ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## VI.    CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Preliminary Approval (ECF No. ___) is **GRANTED** as follows:

1.    The Settlement Class is granted provisional class certification.

2.    Plaintiff's Counsel, John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow are appointed as Class Counsel.

3.    Plaintiffs are appointed as Class Representatives.

4.    Epiq Class Action & Claims Solutions, Inc. is appointed as Settlement Administrator.

5.    The proposed Settlement agreement is preliminarily approved as fair, reasonable, and adequate.

6.    If the Settlement is terminated, not approved, canceled, fails to become effective for any reason, or the Effective Date does not occur, this Preliminary Approval Order shall become null and void and shall be without prejudice to the rights of Plaintiffs, the Settlement Class members, and Defendant, all of whom shall be restored to their respective positions in the Actions as provided in the Agreement.

7.    All pretrial proceedings in the Actions are stayed and suspended until further order of this Court, except such actions as may be necessary to implement the Settlement and this Preliminary Approval Order.

8.    Upon the entry of this Preliminary Approval Order, with the exception of Class Counsel's, Defendant's Counsel's, Defendant's, and the Class Representatives' implementation of the Settlement and the approval process in the Actions, all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims or continuing any litigation against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

9.    For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure the effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

10.    The Final Approval Hearing will be conducted for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Actions on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Fund is fair and reasonable and should be approved; (d) to determine whether any requested award of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. The Court may elect to hold the Final Approval Hearing virtually by Zoom or some other application, and if it does, the instructions on how to attend shall be posted by the Settlement Administrator on the Settlement Website.

11.    Consistent with the Agreement, the following scheduled is imposed leading up to the Final Approval Hearing that shall take place on _____, 2025, at ____ a.m./p.m. in Courtroom __, located at Lloyd D. George Federal Courthouse, 333 Las Vegas Boulevard South, Las Vegas, Nevada 89101, before District Court Judge Gloria M. Navarro:

| Deadline to commence Notice Program | Within 30 days of the Preliminary Approval Order |
|---|---|
| Deadline to complete Notice Program | 45 days before the original Final Approval Hearing date |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards | 45 days before the original Final Approval Hearing date |
| Opt-Out Period Ends | 30 days before the original Final Approval Hearing date |
| Objection Period Ends | 30 days before the original Final Approval Hearing date |
| Claim Form Deadline | 15 days before the original Final Approval Hearing date |
| Final Approval Hearing | _____, 2025 at __:__ a.m./p.m. |

**DATED** this __ day of _____, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

29

# EXHIBIT 7
# (FINAL APPROVAL ORDER)

1

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

3

4

5

6

| | |
|---|---|
| IN RE MGM INTERNATIONAL RESORTS DATA BREACH LITIGAITON<br><br>This Document Relates To: All actions. | Case No.: 2:20-cv-00376-GMN |

7

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

9

10

11

12

13

14

| | |
|---|---|
| TANYA OWENS, et al.<br><br>        Plaintiffs,<br><br>    v.<br><br>MGM RESORTS INTERNATIONAL<br><br>        Defendant. | Master File No. 2:23-cv-01480-GMN<br>(Consolidated for pretrial proceedings with Case Nos. 2:23-cv-1481, 2:23-cv1537, 2:23-cv-1549, 2:23-cv-1550, 2:23-cv1577, 2:23-cv-1698, 2:23- cv-1719, 2:23-cv1777, 2:23-cv-1826, 2:23-cv- 1981, 2:23-cv2042, 2:23-cv-2064, 2:24-cv-81, 2:24-cv-00995, 2:24-cv-00999) |

15

16

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND FINAL JUDGMENT**

17

18

19

20

On January ___, 2025, after extensive arms-length negotiations, and private mediation conducted before Bruce Friedman, Esq., with JAMS in Las Vegas, Plaintiffs and Defendant entered into the Settlement Agreement, which is subject to review under Fed. R. Civ. P. 23, for monetary damages as set forth in the Agreement.

21

On January ___, 2025, the Plaintiffs filed the Agreement with the Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law. (ECF No. ___.)

22

23

24

25

26

27

On January ___, 2025, upon consideration of the Agreement, Motion for Preliminary Approval, and the record, the Court entered the Preliminary Approval Order. (ECF No. ___.) Pursuant to the Preliminary Approval Order, the Court, among other things, (i) provisionally certified the Settlement Class for settlement purposes; (ii) appointed the Plaintiffs as Class Representatives; (iii) appointed John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel for the Settlement Class;

28

(iv) approved the form of the Notices and the Notice Program; (v) approved the Claim Form and the Claim process; (vi) appointed Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (vii) established procedures and deadlines for members of the Settlement Class to opt-out of or object to the Settlement; and (viii) scheduled the Final Approval Hearing at which time the Court would consider whether to grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs and Service Awards. *Id.*

On _____, 2025, Plaintiffs filed the Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards. ECF No. __. Pursuant to the Motion for Final Approval, the Parties request Final Approval of the proposed class action Settlement, and awards of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives. *Id.*

On _____, 2025, a Final Approval Hearing was held on the Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards. Class Counsel appeared for the Plaintiffs and Settlement Class, and Defendant's Counsel appeared for Defendant.

Having received and considered the Settlement, the supporting papers filed by the Parties, and the evidence and argument received by the Court before entering the Preliminary Approval Order and at the Final Approval Hearing, the Court grants Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards, enters this order, and **IT IS HEREBY ORDERED**:

1.    **INCORPORATION OF DEFINED TERMS**: This order incorporates the definitions of all capitalized terms defined in Section II of the Settlement Agreement, and all capitalized terms used in this order have the same meanings as set forth in that Agreement.

2.    **JURISDICTION**: The Court has subject matter jurisdiction over the Action and personal jurisdiction over the Parties and Settlement Class Members.

3.    **NOTICE PROGRAM AND CLAIMS PROCESS**: Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator has complied with the approved Notice Program as confirmed in its declaration filed with the Court. The form and method for notifying the Settlement Class of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due

2

PROPOSED ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

process, and constituted the best notice practicable under the circumstances. The Court finds that the Notice Program was clearly designed to advise the Settlement Class members of their rights. Further, the Court finds that the Claim Process set forth in the Agreement was followed and that the process was the best practicable procedure under the circumstances.

4.     **FINAL CLASS CERTIFICATION**: The Court again finds the Actions satisfy the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, namely:

a.     The Settlement Class members are so numerous that joinder of all of them in the Lawsuit would be impracticable;

b.     There are questions of law and fact common to the Settlement Class members, which predominate over any individual questions;

c.     The claims of Plaintiffs are typical of the claims of the Settlement Class members;

d.     Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all the Settlement Class members; and

e.     Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication.

5.     **CERTIFICATION OF SETTLEMENT CLASS**: The Court finally certifies the following Settlement Class:

All persons in the United States whose Private Information was accessed during the Data Incidents.

Excluded from the Settlement Class are the judges presiding over the Actions and members of their direct families.

6.     **APPOINTMENTS**: Consistent with the Preliminary Approval Order, the Court hereby appoints the following as Class Representatives, Class Counsel, and Settlement Administrator:

a.     Plaintiffs are appointed as Class Representatives.

b.     Plaintiffs' counsel, John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow, are appointed as Class Counsel;

1       c.      Epiq Class Action & Claims Solutions, Inc. is appointed as Settlement Administrator.

2       7.      **SETTLEMENT TERMS REASONABLE**: The Court finds that the Settlement of the Actions, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class, applying the Fed. R. Civ. P. 23(e)(2) factors and Ninth Circuit's traditional *Churchill* factors.

8.      **FINAL APPROVAL**: The Agreement, which has been filed with the Court and shall be deemed incorporated herein, and the proposed Settlement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court.

9.      **OPT-OUTS**: A list of the individuals who have opted-out of the Settlement is attached as ***Exhibit A***. Those individuals will not be bound by the Agreement or the Releases contained therein.

10.      **OBJECTIONS**: The Settlement Class Members were given an opportunity to object to the Settlement. No Settlement Class Members filed objections.

11.      **SETTLEMENT BINDING**: This Order is binding on all Settlement Class Members, except those individuals who validly and timely opted-out from the Settlement Class.

12.      **SERVICE AWARDS; ATTORNEYS' FEES AND COSTS**:

a.      The Class Representatives are awarded reasonable Service Awards, applying the factors in *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). Plaintiffs Ryan Bohlim, Duke Hwynn, Larry Lawter, Kerri Shapiro, Gennady Simkin, Robert Taylor, and Victor Wukovits in the 2019 Action shall receive $_____ each. Plaintiffs Tonya Owens, Emily Kirwan, David Zussman, David Lackey, Michael Pircio, David Terezo, Ronald G. Rundell, Laura Willis Abrigo, Anita Johnson, Paul Zaro, Michael Manson, Kyle Sloan, Michelle Righetti, Edgar Mejia, and DuJun Johnson in the 2023 Action shall receive $_____ each. The Service Awards shall be paid out of the Settlement Fund in accordance with the Agreement.

b.      Class Counsel are awarded $_____ for attorneys' fees and $_____ for costs. These payments shall be made out of the Settlement Fund in accordance with the Agreement. The Court evaluated settlement Class Counsel's request using a common

4

PROPOSED ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

fund analysis, applying the factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), and concludes that amount is fair and within the range of reason.

13. **VALID CLAIMS**: Based on the information presented to the Court, the Claim process has proceeded as ordered and consistent with the Agreement and Preliminary Approval Order. The distribution plan for Settlement Class Member Benefits proposed by the Parties in the Agreement is fair, reasonable, and adequate. All Settlement Class Members who submitted Valid Claims shall receive their Settlement Class Member Benefits pursuant to the Settlement's terms. All Settlement Class Members who did not submit a Claim, or for whom the Claim is determined to be invalid, shall still be bound by the terms of the Settlement and Releases therein.

14. **PAYMENT OF SETTLEMENT ADMINISTRATION COSTS**: The Parties are authorized to approve the payment of the Settlement Administration Costs to the Settlement Administrator from the Settlement Fund.

15. **RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT**: As of the Effective Date, Plaintiffs and all Settlement Class Members and Releasing Parties, and persons purporting to act on their behalf, are permanently barred and enjoined from commencing or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement, against any of the Released Parties in any action or proceeding in any court, arbitration forum, or tribunal. The Released Claims are compromised, discharged, and dismissed with prejudice by virtue of these proceedings and this order.

16. **RESIDUAL FUNDS**: In the event there are funds remaining in the Settlement Fund, including from uncashed checks, within 45 days following the 180-day check negotiation period, the Court approves the distribution of all remaining funds to _____.

17. **JURISDICTION RETAINED**: The Court hereby retains and reserves jurisdiction over: (1) implementation of this Settlement and any distributions of Settlement Class Member Benefits to the Settlement Class Members; (2) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms of the Agreement, including the exhibits appended thereto; and (3) all Parties, for the purpose of

1  enforcing and administering the Settlement.

2      18.   In the event the Effective Date of the Settlement does not occur, the Settlement shall be

3  rendered null and void to the extent provided by and in accordance with the Agreement, and this order

4  and any other order entered by this Court in accordance with the terms of the Agreement shall be

5  vacated, *nunc pro tunc*. In such event, all orders entered and releases delivered in connection with the

6  Settlement shall be null and void and have no further force and effect, shall not be used or referred to

7  for any purpose whatsoever, and shall not be admissible or discoverable in any proceeding. The

8  Action shall return to its status immediately prior to execution of the Agreement.

9      19.   **ENTRY OF JUDGMENT**: There being no just reason for delay, the Clerk of Court is

10  hereby directed to enter final judgment forthwith pursuant to Fed. R. Civ. P. 58.

11     **DATED** this __ day of _____, 2025.

13                          _____
                        Gloria M. Navarro, District Judge
                        UNITED STATES DISTRICT COURT

PROPOSED ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

**EXHIBIT A**

**OPT-OUT LIST**

(To Be Completed Before Final Approval Hearing)