John A. Yanchunis
(Admitted Pro Hac Vice)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: 813-223-5505
jyanchunis@forthepeople.com

David M. Berger
(Admitted Pro Hac Vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Tel.: 510-350-9700
dmb@classlawgroup.com

J. Gerard Stranch IV
(Admitted Pro Hac Vice)
**STRANCH, JENNINGS & GARVEY,**
**PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: 615-254-8801
gstranch@stranchlaw.com

James J. Pizzirusso
(Admitted Pro Hac Vice)
**HAUSFELD LLP**
888 16th Street, Ste 300
Washington, DC 20006
Tel: 202-540-7200
jpizzirusso@hausfeld.com

Douglas J. McNamara
(Admitted Pro Hac Vice)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave
5th Floor Washington, DC 20005
Tel.: 202-408-4600
dmcnamara@cohenmilstein.com

E. Michelle Drake
(Admitted Pro Hac Vice)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612-594-5999
emdrake@bm.net

Lynn Toops
(Admitted Pro Hac Vice)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: 317-636-6481
ltoops@cohenandmalad.com

Gary Klinger
(Admitted Pro Hac Vice)
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Jeff Ostrow
(Admitted Pro Hac Vice)
**KOPELOWITZ OSTROW, P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-332-4200
ostrow@kolawyers.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE MGM INTERNATIONAL RESORTS DATA BREACH LITIGAITON<br><br>This Document Relates To: All actions. | Case No.: 2:20-cv-00376-GMN |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TANYA OWENS, et al.<br><br>   Plaintiffs,<br><br>  v.<br><br>MGM RESORTS INTERNATIONAL<br><br>   Defendant. | Master File No. 2:23-cv-01480-GMN<br>(Consolidated for pretrial proceedings with<br>Case Nos. 2:23-cv-1481, 2:23-cv1537,<br>2:23-cv-1549, 2:23-cv-1550, 2:23-cv1577,<br>2:23-cv-1698, 2:23- cv-1719, 2:23-cv1777,<br>2:23-cv-1826, 2:23-cv- 1981, 2:23-cv2042,<br>2:23-cv-2064, 2:24-cv-81, 2:24-cv-00995,<br>2:24-cv-00999) |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS'**
**FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW**

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   PROCEDURAL HISTORY ........................................................................................2

III.  SUMMARY OF THE SETTLEMENT ......................................................................6

    A.  Settlement Class ................................................................................................6

    B.  Settlement Fund ................................................................................................7

    C.  Settlement Class Member Benefits ..................................................................7

    D.  Release ..............................................................................................................8

    E.  Disposition of Residual Funds .........................................................................9

    F.  Service Awards .................................................................................................9

    G.  Attorneys' Fees and Costs ...............................................................................9

IV.   NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS .........................9

    A.  Notice Program .................................................................................................9

    B.  Claim Process..................................................................................................11

    C.  Objections and Opt-Outs ................................................................................11

V.    ARGUMENT ............................................................................................................11

    A.  The Settlement Class Should Be Certified, and the Appointments of Class
        Representatives, Class Counsel, and the Settlement Administrator Affirmed ..............11

    B.  The Settlement Should be Finally Approved..................................................12

        1.  Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5).................13

        2.  The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and
            *Churchill* Factor 6)........................................................................................14

        3.  The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and
            *Churchill* Factors 1-4)...................................................................................15

        4.  The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D)) ...........17

        5.  The Reaction of the Settlement Class ........................................................17

    C.  Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements...............18

i

VI.    APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ..........18

A.    The Attorneys' Fees Requested Are Reasonable Under Ninth Circuit Precedent ..........19

1.    The Percentage of the Fund Method is Appropriate ..................................19

2.    Class Counsel's Percentage of the Fund Fee Request is Reasonable ......................21

a.    Class Counsel's Efforts Resulted in Substantial Benefits..................................22

b.    Plaintiffs Faced Significant Risks..................................23

c.    Counsel's Experience Benefited the Settlement Class ........................................23

d.    Counsel Took the Case on a Contingency Assuming Financial Risks ................24

e.    The Fee Request is Consistent with Fee Awards in Similar Cases.....................25

3.    The Requested Attorneys' Fee Award Is Supported By a Lodestar Crosscheck ......26

B.    The Litigation Costs are Reasonable ................................................................29

C.    The Service Awards Are Reasonable ................................................................29

D.    The Settlement Administration Costs Are Reasonable..................................31

VII.    CONCLUSION..................................................................................................31

# TABLE OF AUTHORITIES

**Case**                                                                                                                      **Page(s)**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  2017 WL 11630767 (C.D. Cal. Dec. 4, 2017) ................................................................. 27

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F.Supp.2d 964 (E.D. Cal. 2012) ............................................................................. 15

*Alliance Ophthalmology, PLLC v. ECL Group, LLC*,
  Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226 (M.D.N.C. June 27, 2024) .................... 25

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 12

*Andersen v. Briad Restaurant Group LLC*,
  No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262 (D. Nev. Jan. 19, 2022) .................... 12, 16

*Barbosa v. Cargill Meat Sol. Corp.*,
  297 F.R.D. 431 (9th Cir. 2000) ............................................................................... 21, 25

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................................... 20

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ......................................................................................... 27

*Chalmers v. Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ....................................................................................... 27

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................. *Passim*

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................................................... 12

*Daniels v. Aria Resort & Casino, LLC*,
  2023 WL 11910245 (D. Nev. July 31, 2023) ....................................................... 21, 22, 25

*Farrell v. Bank of Am. Corp., N.A.*,
  827 F. App'x 628 (9th Cir. 2020) .................................................................................. 26

*Fischel v. Eq. Life Assur. Soc'y of the U.S.*,

   307 F.3d 997 (9th Cir. 2002) ........................................................................ 27

*FultonGreen v. Accolade, Inc.*,

   No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019).................................. 15, 23

*Gonzalez-Rodriguez v. Mariana's Enter., et. al.*,

   No. 2:15-cv-00152-JCM-PAL, 2016 WL 3869870 (D. Nev. July 14, 2016)................................. 29

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,

   2016 WL 6156076 (C.D. Cal. Aug. 16, 2016) ........................................................ 28

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 12, 13, 14

*Hester v. Vision Airlines, Inc.*,

   No. 2:09–cv–00117–RLH–NJK, 2014 WL 3547643 (D. Nev. July 17, 2014) .............................. 21

*In re Anthem, Inc. Data Breach Litig.*,

   327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................... 17

*In re Apple Inc. Device Performance Litig.*,

   50 F.4th 769 (9th Cir. 2022) ........................................................................... 30

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ................................ 16, 23

*In re Bluetooth Headset Prods. Liab. Litig.*,

   654 F.3d 935 (9th Cir. 2011) ................................................................. 13, 15, 20, 26

*In re CorrectCare Data Breach Litig.*,

   No. 5:22-319-DCR, 2024 WL 4211480 (E.D. Ky. Sept. 14, 2024) ................................ 25

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

   999 F.3d 1247 (11th Cir. 2021) .................................................................. 15, 17

*In re: Forefront Data Breach Litigation*,

   No. 1:21-cv-000887-LA, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023)................................ 25

*In re Fortra File Transfer Software Data Sec. Breach Litigation*,

   24-MD-03090-RAR, 2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ................................ 15

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

*In re Google Referrer Header Privacy Litig.*,

   869 F.3d 737 (9th Cir. 2017) ................................................................................26

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

   293 F.R.D. 21 (D. Me. 2013) ...............................................................................23

*In re Mednax Serv., Customer Data Sec. Breach Litig.*,

   No. 21-MD-02994-RAR, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) .......................15

*In re Mego Corp. Sec. Litig.*,

   213 F.3d 454 (9th Cir. 2000) ................................................................................30

*In re The Home Depot Inc Customer Data Sec. Breach Litig.*,

   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ....................17

*In re T-Mobile Customer Data Sec. Breach Litig.*,

   No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo. June 29, 2023) .................16

*In re Yahoo! Inc. Customer Data Breach Litig.*,

   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 20, 2020) ......................17

*Ingram v. Oroudjian*,

   647 F.3d 925 (9th Cir. 2011) ................................................................................27

*Int'l Broth. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,

   No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19,2012) .............29

*Kelly v. Wengler*,

   822 F.3d 1085 (9th Cir. 2016) ..............................................................................27

*Kerr v. Screen Extras Guild, Inc.*,

   526 F.2d 67 (9th Cir. 1975) .............................................................................26, 28

*Lee v. Enterprise Leasing Co.-West*,

   No. 3:10–CV–00326–LRH–WGC, 2015 WL 2345540 (D. Nev. May 15, 2015) ............31

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

   339 U.S. 306 (1950) ...........................................................................................18

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................15

v

*Officers for Justice v. Civ. Serv. Comm'n*,

    688 F.2d 615 (9th Cir. 1982) ................................................................................ 14, 15

*Paul, Johnson, Alston & Hunt v. Graulty*,

    886 F.2d 268 (9th Cir. 1989) ...................................................................................... 20

*Powers v. Eichen*,

    229 F.3d 1249 (9th Cir. 2000) ................................................................................... 21

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ...................................................................................... 14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990) ................................................................................... 20

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ................................................................................ 12, 20

*Szymborski v. Ormat Technologies, Inc.*,

    No. 3:10–CV–132–RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ................................ 20, 21

*United Steelworkers of Am. v. Phelps Dodge Corp.*,

    896 F.2d 403 (9th Cir. 1990) ...................................................................................... 27

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ............................................................................ *Passim*

*Wren v. RGIS Inventory Specialists*,

    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................ 14

*Yamada v. Nobel Biocare Holding AG*,

    825 F.3d 536 (9th Cir. 2016) ...................................................................................... 26

*Yuga Labs, Inc. v. Hickman*,

    No. 2:23-CV- 111 JCM (NJK), 2024 WL 2801495 (D. Nev. May 31, 2024) ................. 27

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. 1

Fed. R. Civ. P. 23(a) .................................................................................................... 2, 31

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 11

Fed. R. Civ. P. 23(b)(3)........................................................................................2, 11, 31

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................18

Fed. R. Civ. P. 23(e) ..........................................................................................2, 11, 12

Fed. R. Civ. P. 23(e)(1)..................................................................................................13

Fed. R. Civ. P. 23(e)(2)..................................................................................13, 14, 15

Fed. R. Civ. P. 23(e)(3)..................................................................................................13

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................12

Fed. R. Civ. P. 23(g)(1)(B) ...........................................................................................12

Fed. R. Civ. P. 23(h) ......................................................................................................18

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of the Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards, and Memorandum of Law, supported by the Joint Declaration of Class Counsel ("Joint Decl."), attached as **Exhibit B**, the Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program ("Admin Decl."), attached as **Exhibit C**, and the Declaration of Brian T. Fitzpatrick, attached as **Exhibit D** ("Fitzpatrick Decl.").

## I.    INTRODUCTION

On January 22, 2025, this Court preliminarily approved the Settlement,[2] which provides for substantial Settlement Class Member Benefits, including a non-reversionary, all cash $45,000,000.00 Settlement Fund, from which Settlement Class members may elect to receive Cash Payments and Financial Account Monitoring. (2019 ECF No. 244).[3]  The Settlement Fund will be used to pay Settlement Class Member Benefits, any Court-awarded attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives, and all Settlement Administration Costs.

The Settlement satisfies all the criteria for Final Approval. Consistent with the requirements of this Court's Preliminary Approval Order, Amended Preliminary Approval Order, and the Settlement Agreement, Notice was properly effectuated to the Settlement Class. Admin Decl. ¶ 9. Currently, there are no objections and only 92 Settlement Class members have opted-out. *Id*. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. (2019 ECF No. 244 at 13). Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. Joint Decl. ¶ 16.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as **Exhibit A**.

[2] The Court is aware that due to the overlapping classes and similarity in claims between the 2019 Action and the 2023 Action, to preserve resources for all concerned (the Parties, Settlement Class members, and the Court), the Parties decided to resolve both actions in a single Settlement with one approval process before the Court.

[3] Record citations throughout this memorandum for case specific documents will be to either the 2019 Action entry ("2019 ECF No. ___") or the 2023 Action entry ("2023 ECF No. ___"), and when a document is filed in both Plaintiffs will cite to the 2019 Action record only.

Plaintiffs now move the Court for Final Approval and apply for an award of attorneys' fees, costs, and Service Awards. The Court should find the Settlement is within the range of reasonableness necessary to grant Final Approval under Fed. R. Civ. P. 23(e) and enter an order: (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) reappointing the Plaintiffs as Class Representatives; (4) reappointing John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel for the Settlement Class; (5) awarding Service Awards to the Class Representatives; (6) awarding attorneys' fees and costs to Class Counsel; (7) affirming the appointment of the Settlement Administrator and approving the payment of Settlement Administration Costs; (8) overruling any timely objections, if any; and (9) entering final judgment dismissing the Actions with prejudice and reserving jurisdiction over Settlement implementation.  A proposed Final Approval Order is attached as ***Exhibit D***.

## II.  PROCEDURAL HISTORY

Defendant is a global gaming, hospitality, and entertainment company headquartered in Las Vegas, Nevada. In the course of operating its business, Defendant collects, maintains, and stores Private Information pertaining to its customers, including, but not limited to, names, contact information (such as telephone number, email address, and postal address), gender, dates of birth, driver's license numbers, passport numbers, and Social Security numbers.

### The 2019 Data Incident and 2019 Action

In or about July 2019, unauthorized individuals accessed Defendant's network and downloaded certain customer data for approximately 37 million MGM guests. Joint Decl. ¶ 3. Defendant discovered the 2019 Data Incident on or about July 10, 2019. *Id.* According to Defendant, the unauthorized individuals acquired personally identifiable information including customers' names, postal addresses, telephone numbers, email addresses, dates of birth, and passport numbers. *Id.* However, for the vast majority of the victims, the exposure was limited to their name, postal address, email address, telephone number, and/or their date of birth. *Id.*

Defendant then began notifying the impacted individuals that their Private Information may have been impacted in the 2019 Data Incident. *Id.* ¶ 4. As a result, commencing on February 21, 2019,

1   Defendant was named in the first of eight class action lawsuits (2019 ECF No. 1), which were

2   eventually consolidated into the 2019 Action before the Honorable Gloria M. Navarro. (2019 ECF

3   No. 22, 86). The Court also appointed the 2019 Plaintiffs' interim class counsel. (2019 ECF No. 93.)

4           On April 2, 2021, the 2019 Plaintiffs filed a consolidated class action complaint, asserting

5   claims for negligence, negligent misrepresentation, breach of implied contract, unjust enrichment,

6   and various state consumer protection law violations. (2019 ECF No. 101). On June 1, 2021,

7   Defendant filed a motion to dismiss the consolidated class action complaint, which was fully briefed.

8   (2019 ECF No. 103, 109, 117).  On August 13, 2021, Defendant filed a motion to stay discovery

9   while the motion to dismiss was pending, which the 2019 Plaintiffs opposed, but the Court granted.

10  (2019 ECF No. 115, 116, 120, 121).  On November 2, 2022, the Court granted in part and denied in

11  part Defendant's motion to dismiss. (2019 ECF No. 128). The Court upheld the 2019 Plaintiffs'

12  claims for negligence, breach of implied contract, and violations of some state consumer protection

13  laws, but dismissed claims for violations of other state consumer protection laws, negligent

14  misrepresentation, and unjust enrichment. *Id.*

15          On December 19, 2022, Defendant answered the 2019 consolidated complaint, denying all

16  material allegations and alleging affirmative defenses. (2019 ECF No. 136). Thereafter, the Parties in

17  the 2019 Action engaged in substantial fact discovery, including written discovery, document

18  production, depositions, and discovery motion practice. Joint Decl. ¶ 6.  In connection therewith, the

19  Parties filed a Stipulated Discovery Plan and Scheduling Order on December 12, 2022. (2019 ECF

20  No. 133). On December 28, 2022, the Parties attended by telephone a Scheduling Conference

21  regarding their Joint Discovery Plan and Scheduling Order. (2019 ECF No. 142). On December 29,

22  2022, the Court entered a Scheduling Order, granting in part and denying in part the Parties' proposed

23  discovery plan and scheduling order. (2019 ECF No. 143). On April 7, 2023, the Parties filed a joint

24  stipulation and proposed protective order, which the Court entered on April 10, 2023. (2019 ECF

25  Nos. 160, 161). On August 8, 2023, the Parties filed a joint stipulation for voluntary dismissal without

26  prejudice of John Dvorak as a named plaintiff and proposed class representative, which the Court

27  granted the same day. (2019 ECF Nos. 163, 164).

28          After the Parties had engaged in and completed significant discovery, the Parties filed a

stipulation and proposed order regarding modification of the discovery schedule, to complete depositions and resolve any outstanding discovery disputes. (2019 ECF No. 175). The Court entered the stipulation on November 8, 2023. (2019 ECF Nos. 180, 181). The 2019 Plaintiffs' counsel took six depositions (five MGM employees and one of a third-party) and defended seven named-Plaintiff depositions. Joint Decl. ¶ 7. Following Plaintiffs' counsel's review and coding of over 170,000 of the 2019 Plaintiffs' documents, they produced thousands of responsive documents to the Defendant, while also reviewing and coding over 180,000 documents produced by the Defendant. *Id.*

On February 20, 2024, the 2019 Plaintiffs filed a motion to compel discovery regarding the 2023 Data Breach. (2019 ECF No. 200). On March 15, 2024, the 2019 Plaintiffs filed a motion to compel Rule 30(b)(6) deposition testimony from Defendant. (2019 ECF No. 211). The Court denied both motions without prejudice on May 8, 2024. (2019 ECF No. 229). On March 15, 2024, the 2019 Plaintiffs filed a motion to compel production regarding the 2019 Plaintiffs' Fourth Set of Requests for Production, which the Court denied on May 8, 2024. (2019 ECF Nos. 209, 230). On April 12, 2024, the Court entered an Order granting the 2019 Parties' second request to modify the case management schedule. (2019 ECF No. 224).

### The 2023 Data Incident and 2023 Action

Beginning on September 7, 2023, in a separate cybersecurity incident, unauthorized individuals accessed Defendant's network by impersonating an information technology administrator and gaining access to employees' network access credentials. Joint Decl. ¶ 8. Once inside the network, the unauthorized individuals locked down Defendant's network and further gained access to approximately 37 million customers' personally identifiable information, including, but not limited to MGM's customers and guests' names, addresses, telephone numbers, email addresses, dates of birth, driver's license numbers, passport numbers, military identification numbers, and in some cases, Social Security numbers. *Id.*

Similar to the 2019 Data Incident, the Defendant sent notice to the impacted individuals advising that their Private Information may have been involved in the 2023 Data Incident. Joint Decl. ¶ 9. As a result, commencing on September 21, 2023, the Defendant was named in the first of 14 class action lawsuits. (2023 ECF No. 1). On March 19, 2024, the 2023 Plaintiffs moved to consolidate the

4

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

cases. (2023 ECF No. 29). On March 22, 2024, the cases were consolidated into the 2023 Action before the Honorable Richard F. Boulware, II. (2023 ECF No. 32). On April 19, 2024, the 2023 Plaintiffs moved for the appointment of interim lead counsel, which the Court granted on October 21, 2024. (2023 ECF No. 42, 55).

The 2019 Plaintiffs filed notices of related cases on December 6, 2023 (2019 ECF No. 183) and December 20, 2023 (2019 ECF No. 185), seeking to relate several cases filed relating to the 2023 Data Incident, which Defendant and 2023 Plaintiffs opposed. (2019 ECF Nos. 184, 186, 187, 188).

**The 2019 Plaintiffs and 2023 Plaintiffs Agreement to Work Cooperatively for Mediation**

In July 2024, the 2019 Plaintiffs and the 2023 Plaintiffs agreed to participate in a joint mediation with Defendant before an experienced data breach mediator, Bruce Friedman, Esq., with JAMS in Las Vegas on August 5, 2024. Joint Decl. ¶ 10. On July 9, 2024, the 2019 Parties filed a stipulation to stay the case pending mediation, which the Court granted that same day. (2019 ECF No. 237.) Before mediation, the 2019 Plaintiffs and the 2023 Plaintiffs propounded informal discovery requests to learn as much as possible about the 2019 Data Incident and the 2023 Data Incident. Joint Decl. ¶ 11. Through the provision of informal discovery, Plaintiffs in both cases were able to evaluate the merits of Defendant's position. *Id.* The Parties also exchanged detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id.* The mediation was canceled for various reasons. *Id.* Thereafter, the 2019 Plaintiffs and the 2023 Plaintiffs decided to work together and collectively pursue a global settlement of the Actions. *Id.*

On August 14, 2024, Defendant withdrew its response to the 2019 Plaintiffs' notices of related cases. (2019 ECF No. 235). On September 18, 2024, the Court issued a Minute Order stating it would accept transfer of the consolidated cases in the 2023 Action. (2019 ECF No. 237).

The Parties rescheduled and participated in mediation for October 10, 2024, with Mr. Friedman, in Las Vegas. (*See* 2019 ECF No. 236). In advance of the mediation, Plaintiffs propounded additional informal discovery requests regarding the size and scope of the Data Incidents, including, but not limited to, the number of persons potentially impacted, the data elements impacted, and the geographical makeup of the putative classes. Joint Decl. ¶ 12. After a full day of negotiations, the Parties were unable to reach a settlement. Over the next several weeks, however, the Parties continued

to negotiate the contours of a potential global resolution. *Id.*

On October 31, 2024, the 2019 Plaintiffs filed a notice of settlement, notifying the Court that all Parties (including the 2023 Plaintiffs) were able to resolve the cases. (2019 ECF No. 238). On November 4, 2024, the Court entered a Minute Order requiring the Parties to file a joint status report every 60 days, beginning on December 2, 2024, informing the Court of the status of settlement. (2019 ECF No. 239). On November 7, 2024, the Clerk of Court was directed to transfer the 2023 Action for all further proceedings (2023 ECF No. 57).

The Parties negotiated the terms of the Settlement Agreement over the next couple of months ultimately signing it on January 17, 2025. Joint Decl. ¶ 13. Plaintiffs filed their Motion for Preliminary Approval on January 17, 2025, in both the 2019 Action and 2023 Action (2019 ECF No. 243), and the Court granted Preliminary Approval on January 22, 2025. (ECF No. 244).

On January 30, 2024, Plaintiffs filed their Consolidated Class Action Complaint in the 2023 Action, alleging negligence, negligence per se, breach of implied contract, unjust enrichment, breach of confidence, violation of California's Unfair Competition Law, violation of the California Consumer Records Act, violation of the California Consumer Privacy Act, land violation of the Nevada Consumer Fraud Act. (2023 ECF No. 64).

On March 28, 2025, the Parties modified the Settlement Agreement by signing the Amendment to Settlement Agreement solely pertaining to one aspect of Notice, attached hereto as ***Exhibit A-1***. On April 1, 2025, the Parties filed a Joint Motion to Approve Amendment to Settlement Agreement (ECF No. 250), and the Court granted the motion the same day (2019 ECF No. 251).

## III.  SUMMARY OF THE SETTLEMENT

**A.  Settlement Class –** Plaintiffs seek Final Approval of the following Settlement Class:

[A]ll persons in the United States whose Private Information was accessed during the Data Incidents.

In addition, there are three subclasses: Tier 1, Tier 2, and Tier 3. Agreement ¶¶ 84-86. Membership in the subclasses is determined based upon the type of data a Settlement Class Member had impacted in the Data Incidents. *Id.* Excluded from the Settlement Class are the judges presiding over the Actions and members of their direct families. *Id.* ¶ 76.

**B.    Settlement Fund** – The Settlement provides for a non-reversionary $45,000,000 all cash Settlement Fund. *Id.* ¶ 88. The Defendant has fully funded the Escrow Account after Preliminary Approval. Joint Decl. ¶ 14. The Settlement will be used to pay: (1) all Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel and any Service Awards to the Class Representatives; and (3) all Settlement Administration Costs. Agreement ¶ 89. The Defendant is not required to make any other payments under this Settlement. *Id.* ¶ 88.

**C.    Settlement Class Member Benefits** – All Settlement Class Members are eligible to submit a Claim for a Documented Loss Cash Payment in a maximum amount of $15,000.00 per individual and Financial Account Monitoring. *Id.* ¶ 92. Additionally, Tier 1 Settlement Class Members may submit a Claim for a Tier 1 Cash Payment, Tier 2 Settlement Class Members for a Tier 2 Cash Payment, and Tier 3 Settlement Class Members for a Tier 3 Cash Payment. *Id.* All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. *Id.* Settlement Class Members who do not submit a Valid Claim will release his or her claims against Defendant without receiving a Settlement Class Member Benefit. *Id.*

***Documented Loss Cash Payment***

All Settlement Class Members may submit a Claim Form for a Documented Loss Cash Payment for up to $15,000.00 per Settlement Class Member upon presentment of documented losses fairly traceable to either Data Incident, and attest under penalty of perjury to incurring documented losses, supported by reasonable documentation. *Id.* These losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the applicable Data Incident through the date of claim submission; and miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges. *Id.* The supporting documentation may include receipts or other documentation not "self-prepared" by the Claimant. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. *Id.*

The lack of reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, will result in the rejection of the Claim for a Documented Loss Cash Payment. *Id.* ¶ 92.a.

### *Tiered Cash Payments*

In addition to a Document Loss Cash Payment, all eligible Settlement Class Members may elect a Tier Cash Payment, the amount of which is based upon whether they are a Tier 1, 2, or 3 Settlement Class Member. *Id.* ¶ 92.b.-d.  The tiers are determined by the type of data a Settlement Class Member had exposed in a Data Incident. The Notices provides a unique identifier which Settlement Class members can use on the Settlement Website to determine the applicable tier. *Id.*

**1. Tier 1 Cash Payment – $75.00 for Tier 1 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 1 Settlement Class Members may also elect to receive a Tier 1 Cash Payment, which is an estimated cash $75.00 payment. *Id.* ¶ 92.b.

**2. Tier 2 Cash Payment – $50.00 for Tier 2 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 2 Settlement Class members may also elect to receive a Tier 2 Cash Payment, which is an estimated cash $50.00 payment. *Id.* ¶ 92.c.

**3. Tier 3 Cash Payment – $20.00 for Tier 3 Settlement Class members**

In addition to a Documented Loss Cash Payment, Tier 3 Settlement Class members may also elect to receive a Tier 3 Cash Payment which is an estimated cash $20.00 payment. *Id.* ¶ 92.d.

### *Financial Account Monitoring*

In addition to electing a Cash Payment, all Settlement Class Members may elect to submit a Claim for Financial Account Monitoring consisting of identity theft protection and credit monitoring as follows: one year of CyEx Identity Defense Total with three-bureau monitoring and at least $1,000,000 of fraud/identity theft insurance. *Id.* ¶ 92.e. The one-year period will commence when Settlement Class Members use their codes to activate the Financial Account Monitoring product. *Id.*

**D.    Release** – In exchange for the Settlement Class Member Benefits, the Releasing Parties agree to Release the Release Parties from all claims arising out of the Data Incidents, the Actions, the information at issue in the Data Incidents, or the alleged violations of laws or regulations cited in the Complaints. The detailed Release language is found in Section XIII of the Agreement.

8

1    **E.    Disposition of Residual Funds** – Any funds remaining in the Settlement Fund,

2    including from uncashed checks, following the 180-day check negotiation period shall be distributed

3    to a mutually agreeable *cy pres* recipient to be approved by the Court. *Id.* ¶ 128. The Parties propose

4    the UNLV Cyber Clinic (https://freecyberclinic.org/about) as the recipient. Joint Decl. ¶ 20. That non-

5    profit organization's mission matches the Action's goals to redress and protect consumer privacy

6    rights by "striving to protect and educate small businesses while building the foundation for

7    tomorrow's cybersecurity professionals." *Id.* (quoting https://freecyberclinic.org/team).

8    **F.    Service Awards** – Pursuant to the Agreement, Class Counsel request Service Awards

9    in the amount of $10,000.00 each for those Plaintiffs that were deposed in the 2019 Action and

10    $3,500.00 each for those Plaintiffs that served in the 2023 Action. Agreement ¶ 125. The Notices

11    advised The Settlement Class of the amount Class Counsel intended to seek. *Id.*, Ex. 1-4.

12    **G.    Attorneys' Fees and Costs** – Class Counsel request an award of attorneys' fees of 30%

13    of the Settlement Fund or $13,500,000, plus reimbursement of costs. *Id.* ¶ 126. The Notices advise

14    the Settlement Class of the amount of attorneys' fees Class Counsel intended to seek. *Id.*, Ex. 1-4.

15    **IV.    NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS**

16    **A.    Notice Program** – On January 22, 2025, pursuant to the Preliminary Approval Order,

17    Defendant provided the Settlement Administrator with the Class List. Admin Decl. ¶ 13. Thereafter,

18    the Settlement Administrator implemented the Notice Program, sending Email Notice to Settlement

19    Class members for whom a valid email address was available and sending Postcard Notice to non-

20    Tiered and Tier 1, Tier 2, and Tier 3 Settlement Class members with an available mailing address for

21    whom no valid email address is available. *Id.* ¶¶ 15-20.  Publication Notice, consisting of digital

22    notice, sponsored search listings, and an information release, was made to create awareness about the

23    Settlement to those Settlement Class members who may not have seen the Notice. *Id.* ¶¶ 22-37. A

24    Long Form Notice was available on the Settlement Website or by mail upon request from a Settlement

25    Class member. *Id.* ¶¶ 21, 38. Lastly, a Settlement telephone line was established for Settlement Class

26    members to obtain answers to frequently asked questions and a postal mailing address was established

27    to allow Settlement Class members the opportunity to request additional information or ask questions.

28    *Id.* ¶¶ 39-40.

Between February 20, 2025, and March 19, 2025, the Settlement Administrator initiated phase one of the Publication Notice plan which included banner advertisements on Google, Facebook, Instagram, Reddit and X. *Id*. ¶ 22. Phase 2 will continue to May 8, 2025 with the Settlement Administrator running the Publication Notice plan which includes running additional banner advertisements on the same platforms. *Id*. Search advertisements consisting of sponsored search listings for the Settlement Website began running on February 20, 2025, and will continue to run through June 3, 2025. *Id*. ¶ 35. Lastly, an informational release was published by the Settlement Administrator on February 20, 2025. *Id*. ¶¶ 36-37. More detail about the extensive Publication Notice is in the Settlement Administrator's declaration. *Id.* ¶¶ 22-37.

Beginning February 20, 2025, the Settlement Administrator sent 48,057,202 Email Notices. *Id*. ¶ 15. Beginning April 16, 2025, the Settlement Administrator sent 4,978,730 Postcard Notices. *Id*. ¶ 18. In summary, as of April 28, 2025, individual Notice efforts have reached approximately 90% of the identified Settlement Class. *Id*. ¶ 46.

A Settlement Website (www.mgmdatasettlement.com) was established and went live on February 19, 2025. Admin Decl. ¶ 38. It serves as a portal for Settlement Class Members to submit Claim Forms to the Settlement Administrator and contains detailed information about the Actions, including important documents such as the Claim Form, Complaint, Long Form Notice, Settlement Agreement, Amendment to Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, and eventually the Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards and the Final Approval. Order. *Id.* As of April 28, 2025, the Settlement Website had 793,819 unique visits and 3,297,945 page views. *Id*.

Also, on February 19, 2025, the Settlement Administrator established a toll-free telephone number (888.899.8358) for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 39. As of April 28, 2025, there have been 10,571 calls to the toll-free telephone number representing 21,193 minutes of use. *Id.*

A Long Form Notice and Claim Form were mailed on request via the toll-free telephone number or other means. *Id.* ¶ 21. As of April 28, 2025, the Settlement Administrator mailed 1,347 Notice Packages with the Long Form Notice and Claim Form to Settlement Class members. *Id.*

10

**B.** **Claim Process** – The Claim Process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claim, and decide whether to submit a Claim and to opt-out of or object to the Settlement. Joint Decl. ¶ 18. Settlement Class Members may continue to submit Claim Forms online or by mail prior to the June 3, 2025 Claim Form Deadline. *Id.* Settlement Class Members have the option of requesting an electronic payment or a traditional paper check on the Claim Form. *Id.* As of April 28, 2025, Epiq has received 414,415 Claim Forms (413,575 online and 940 paper). Admin Decl. ¶ 43. These numbers are preliminary. *Id.* Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

**C.** **Objections and Opt-Outs** – The Objection and Opt-Out Periods end on May 19, 2025. *Id.* ¶ 41. As of May 2, 2025, there are no objections[4] and only 92 opt-out requests. *Id*. Plaintiffs will update the Court at the Final Approval Hearing if anyone objects or about any additional opt-outs.

**V.** **ARGUMENT**

**A.** **The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Affirmed.**

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. (2019 ECF No. 244 at 13-19). Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. For brevity's sake, Plaintiffs incorporate the Motion for Preliminary Approval by reference. (ECF No. 243 at 11-16).

Plaintiffs' appointments as the Class Representatives should be affirmed as they remain

---

[4] Jeffrey L. Beckerleg's submitted an objection to the Settlement Administrator, but after consultation with Class Counsel about the Settlement on April 25, 2025, he confirmed the withdrawal of his objection. Joint Decl. ¶ 45.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

adequate. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the class action field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the potential claims, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 37. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶¶ 37-39. Finally, Epiq's appointment as the Settlement Administrator should be confirmed.

## B.    The Settlement Should be Finally Approved.

A class action may not be settled without the approval of the court. Fed. R. Civ. Proc. 23(e). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In *Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022) (Navarro, J.), this Court observed:

> The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997)). Second, the court must determine whether

12

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

The Preliminary Approval Order found the Court would likely finally approve the Settlement (ECF No. 244 at 21), after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the "*Churchill*" factors. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class's positive reaction to the Settlement with no objections, only 77 opt-outs and hundreds of thousands of Claims to date (the Claim Form Deadline is not until June 3, 2025).

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The "*Churchill*" factors include: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The Settlement warrants Final Approval under the Rule 23(e)(2) and *Churchill* factors, which Plaintiffs address together because they overlap.[5]

    **1.    Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5)** – Both Class Counsel and the Class Representatives have adequately represented the Settlement Class. Joint Decl. ¶22. Class Counsel fully investigated and litigated the facts and legal claims before settling the Action

---

[5] The seventh *Churchill* factor is inapplicable because there is no government participant.

and used their experience in complex class action litigation, including similar data breach actions. *Id.* Their substantial efforts to vigorously litigate the Action are exhibited by the motion practice and extensive discovery that took place in the 2019 Action, and the Parties' participated in the exchange of necessary informal discovery related to the 2023 Action. *Id.* Their understanding of the Data Incidents, the Defendant's liability, and the scope of damages at issue, before attending a full-day mediation session with an experienced mediator, allowed for arm's length and good faith negotiations, without collusion. *Id.* ¶ 23.

The Class Representatives also have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed, including to respond to discovery and in the case of the 2019 Plaintiffs sitting for deposition; (v) monitoring the Actions; and (vi) reviewing the Settlement terms. *Id.* ¶ 24. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 25. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

**2.    The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Churchill* Factor 6)** – This Circuit puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027; *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

The Settlement is the result of good faith, informed, and arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues at stake. Joint Decl. ¶ 15. Class Counsel endorse the Settlement after they thoroughly investigated and analyzed Plaintiffs' claims; fully briefed the motion to dismiss the 2019 Data Incident claims, which the court denied in part and granted in part; engaged in substantial formal and informal discovery for the 2019 Data

14

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

Incident and informal discovery for the 2023 Data Incident; and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Actions and preparing them for well-informed settlement negotiations. *Id.* The Settlement was reached with the assistance of a well-respected and experienced mediator. *Id.* For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in settling.[6]

**3.    The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1-4)** – Although Plaintiffs believe their claims are strong and meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. Joint Decl. ¶ 26. In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 976 (E.D. Cal. 2012). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (citation omitted).

Data breach class actions are risky. *See, e.g.*, *In re Fortra File Transfer Software Data Sec. Breach Litigation*, No. 24-MD-03090-RAR, 2025 WL 457896, at *9 (S.D. Fla. Feb. 11, 2025); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification

---

[6] None of the so-called "*Bluetooth*" factors are of concern. *See In re Bluetooth*, 654 F.3d at 947. First, Class Counsel will not receive a disproportionate distribution from the Settlement Fund. Second, there is no clear-sailing arrangement regarding the attorneys' fees Class Counsel will seek. Agreement ¶ 127. Third, there is no provision that unawarded attorneys' fees would revert to Defendant.

15

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

is rare"). *See also, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case). The Settlement's fairness is underscored by considering the obstacles the Settlement Class would face in ultimately succeeding on the merits, and the expense and likely duration of the litigation.

Given the significant risks, the Settlement provides meaningful Settlement Class Member Benefits, including Cash Payments and Financial Account Monitoring. The Claim Form process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Financial Account Monitoring, if elected. Joint Decl. ¶ 18. The Settlement Administrator is highly qualified to manage the entire process. *See generally* Admin Decl. Thus, the Settlement provides Plaintiffs and Settlement Class Members significant benefits without facing further risk of not receiving any relief. *Andersen*, 2022 WL 181262 at *7.

The attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. Joint Decl. ¶ 27. The Settlement, including the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee or costs award to Class Counsel or the Service Awards. Agreement ¶ 127. As the Application for Attorneys' Fees, Costs, and Service Awards details below, the 30% of the common Settlement Fund sought is within the typical range of acceptable attorneys' fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Finally, there are no separate agreements to disclose under Rule 23(e)(3)—all of the Parties' agreements are in the Agreement, as amended. Joint Decl. ¶ 28.

The amount of the Settlement is well within the range of reasonableness for data breaches of this size and for the type of information at issue. *Id.* at ¶ 17. If approved, the Settlement will provide certain, substantial, and immediate relief to the Settlement Class. *Id.* This Settlement compares very favorably to the following approved common fund data breach settlements from around the country, given the types of data involved in the Data Incidents and class size: *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo. June 29, 2023) ($350,000,000 for 100,000,000 class members); *In re Cap. One Consumer Data Sec. Breach Litig.*,

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

No. 1:19-md-2915 (AJT/JFA) E.D. Va. Sept. 13, 2022) ($190,000,000 for 98,000,000 class members); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021) ($380,500,000 for 147,000,000 class members); *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 20, 2020) ($117,500,000 for 194,000,000 class members); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 AG (DFMx), ECF No. 322 (C.D. Cal. May 10, 2019) ($22,000,000 for 15,000,000 class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ($115,000,000 for 79,200,000 class members); *In re Target Corp Customer Data Sec. Breach Litig.*, No. 0:14-MD-02522, ECF Nos. 645, 791 (D. Minn.) ($10,000,000 for 97,500.000 class members); *In re The Home Depot Inc Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ($13,000,000.00 for 61,000,000 class members). Thus, the fourth *Churchill* factor is also satisfied.

**4.    The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** – All Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each has the option to be reimbursed for documented losses up to $15,000.00, may elect to receive an additional Cash Payment based upon their respective Settlement Class tier, and all may select Financial Account Monitoring. Joint Decl. ¶ 19. The tiering of additional flat Cash Payments reasonably assigns higher value to the more valuable categories of Private Information exfiltrated in the Data Incidents. *Id.* All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims. *Id.* Thus, the Settlement Class Member Benefits distribution method will be equitable and effective. *Id.*

**5.    The Reaction of the Settlement Class** – As indicated above, to date there are no objections and only 92 opt-outs. Admin Decl. ¶ 41. Given the Settlement Class consists of tens of millions of people, and the hundreds of thousands of Claims submitted to date, it is fair to say the Settlement Class has had an overwhelming positive response to the Settlement.

****

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members and grant Final Approval.

1

## C.    Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements

2     The Court-approved Notice Program carried out by the Settlement Administrator conforms

3     with the procedural and substantive requirements of due process and Rule 23. Admin Decl. ¶¶ 45-48;

4     Joint Decl. ¶ 21. Settlement Class members received Notice of the settlement and have the opportunity

5     to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its

6     discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary

7     Approval, the Notice is the best notice practicable under the circumstances and constitutes due and

8     sufficient notice of the Settlement to all Class Members. (ECF No. 244 at 26-27). The best notice

9     practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested

10    parties of the pendency of the action and afford them an opportunity to present their objections."

11    *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among

12    other information: a description of the material terms of the Settlement; how to submit a Claim Form;

13    the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the

14    Settlement and/or Application for Attorneys' fees, Costs, and Service Awards; the Final Approval

15    Hearing date; and the Settlement Website address at which Settlement Class members may access

16    this Agreement and other related documents and information. Admin Decl., Attachments 1-4, 6, 10-

17    11. The Notice Program also included a toll-free number to ask Settlement-related questions and the

18    Settlement Website containing relevant Settlement Information. *Id.* ¶ 39. Finally, the Notice Program

19    satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may

20    apply to the Court for an award of attorneys' fees of up to 30% of the Settlement Fund, plus

21    reimbursement of costs.

22    ## VI.    APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

23    The 2019 Action has been litigated for over five years and the 2023 Action is now entering

24    year three. Joint Decl. ¶ 32. Class Counsel and the 2023 Action's Plaintiffs' Steering Committee have

25    collectively expended thousands of hours and advanced hundreds of thousands of dollars to achieve

26    this Settlement which includes substantial benefits for tens of millions of people. *Id.* To get to this

27    point, Class Counsel had to defeat a motion to dismiss and engage in contested motion practice in the

28    2019 Action and significant formal and informal discovery in the 2019 Action and 2023 Actions. *Id.*

¶ 15. The result is favorable when compared to other data breach settlements involving similar types of data and considering the entirety of the Data Incidents. *Id.* ¶ 34. Class Counsel have not been compensated for their time, nor reimbursed for the significant costs they have incurred. *Id.* ¶ 36. They undertook enormous risk, agreeing to represent Plaintiffs on a fully contingent basis, knowing there was no guarantee they would be reimbursed for their time and out of pocket costs. *Id.* ¶ 35. Due to the uncertainty of the data breach litigation landscape and the mix of decisions in this Circuit and across the country, there was significant risk of nonpayment. *Id.* ¶ 36.

As compensation for the skill, commitment, and time they dedicated to litigating these challenging Actions, consistent with the Agreement, the Notices, and recognized class action practice and procedure, Class Counsel now respectfully request an award of attorneys' fees of $13,500,000, which is equal to 30% of the $45,000,000.00 Settlement Fund they obtained for the Settlement Class. *Id.* ¶ 40. The requested attorneys' fee award is within the range of reason under the factors considered in the Ninth Circuit. Additionally, Class Counsel request $801,631.96 as reimbursement for their litigation costs necessarily incurred in representing the Plaintiffs and the Settlement Class in the Actions. *Id.* ¶ 41, 49-50. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after agreeing to all other material Settlement terms. *Id*. ¶ 27.

Lastly, in recognition for their efforts and the successful results they achieved for the Settlement Class, Class Counsel request Service Awards for the Class Representatives in the amount of $10,000 each for those 2019 Plaintiffs that were deposed and $3,500 each for those 2023 Plaintiffs that were not. Joint Decl. ¶ 159. The Service Award amounts were negotiated by the Parties after all material terms of the Settlement. *Id.*

### A.    The Attorneys' Fees Requested Are Reasonable Under Ninth Circuit Precedent

### 1.    The Percentage of the Fund Method is Appropriate.

Fed. R. Civ. P. 23(h) provides: "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." The general rule in litigation is that each party must bear its own litigation costs. However, the common benefit doctrine is the exception. A common benefit is created when a private plaintiff and his or her lawyer create a claim to which others have a claim. When a party confers a substantial benefit upon

19

1  a class, counsel is entitled to an attorneys' fees based on the benefit conferred. *Boeing Co. v. Van*

2  *Gemert*, 444 U.S. 472, 478 (1980). It removes a potential financial obstacle to a plaintiff's pursuit of

3  a class claim and equitably distributes the fees and costs of successful litigation among all who gained

4  from the plaintiff's efforts. The doctrine stems from the premise that those who receive the benefit of

5  a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful

6  litigant. *Id*. As a result, the Supreme Court and the Ninth Circuit have recognized that "a litigant or a

7  lawyer who recovers a common fund for the benefit of persons other than himself or his client is

8  entitled to a reasonable attorneys' fee from the fund as a whole." *Staton v. Boeing*, 327 F.3d 938, 967

9  (9th Cir. 2003) (quoting *Boeing Co.*, 444 U.S. at 478).

10      When determining an attorneys' fees award for creating a common fund, the Ninth Circuit

11  recognizes the "percentage-of-the-fund method" and the "lodestar method." *Paul, Johnson, Alston*

12  *& Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The former awards a percentage of the common

13  fund created by the lawyers, while the latter award is based upon the number of hours reasonably

14  spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks

15  associated with the representation. *Id*. Although both methods are approved and used, the percentage-

16  of-the-fund method is preferable because it is simpler and it more closely aligns the interests of

17  counsel and the class in that counsel directly benefits from increasing the size of the fund and working

18  in an efficient manner. *Szymborski v. Ormat Technologies, Inc.*, No. No. 3:10–CV–132–RCJ, 2012

19  WL 4960098, at *3 (D. Nev. Oct. 16, 2012); Fitzpatrick Decl. ¶¶ 11-23. Because the benefit to the

20  class is easily quantified in common-fund settlements, courts award attorneys' fees as a percentage

21  of the common fund in lieu of the often more time-consuming task of calculating the lodestar. *In re*

22  *Bluetooth*, 654 F.3d at 935; Fitzpatrick Decl. ¶ 12. Indeed, an attorneys' fee award as a percentage of

23  a common fund established by a class action settlement is well-established in Ninth Circuit

24  jurisprudence and is eminently appropriate here. *See Vizcaino*, 290 F.3d at 1047; *Six (6) Mexican*

25  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul*, 886 F.2d at 272. *See*

26  *also* Fitzpatrick Decl. ¶¶ 11-23.

27      Under the percentage-of-the-fund method, the Court first calculates the value of the

28  Settlement benefits to the Settlement Class and then selects a percentage of that value to award Class

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

1  Counsel. Once the Court determines the value, the Court has the discretion to award a reasonable

2  percentage. When determining a reasonable percentage, the Ninth Circuit recognizes 25% as a

3  benchmark. However, that percentage is just for guidance and can be adjusted upward or downward

4  based upon the circumstances of the case. *See Szymborski*, 2012 WL 4960098 at 3. The typical range

5  of acceptable attorneys' fees is 20% to 33.33% of the total settlement. *Barbosa v. Cargill Meat Sol.*

6  *Corp.*, 297 F.R.D. 431, 448 (9th Cir. 2000); *Daniels v. Aria Resort & Casino, LLC*, No. 2:20-CV-

7  00453-GMN-DJA, 2023 WL 11910245, at *2 (D. Nev. July 31, 2023). *See also* Fitzpatrick Decl. ¶¶

8  14-23 (addressing Ninth Circuit jurisprudence and empirical and economic research pertaining to

9  attorneys' fee awards in class actions).

10      For the reasons discussed below, in Class Counsel's Joint Declaration, and Professor

11  Fitzpatrick's declaration, Class Counsel respectfully request the Court employ the percentage-of-the-

12  fund method and award 30% of the common fund. Examples of cases in which this Court has awarded

13  30% of a common fund include: *Hester v. Vision Airlines, Inc.*, No. 2:09–cv–00117–RLH–NJK, 2014

14  WL 3547643 at *11 (D. Nev. July 17, 2014) (finding class counsel "achieved an exceptionally

15  favorable result for the members of the Settlement Classes by diligently pursuing this complex, and

16  often times trying, litigation for years despite the substantial risk of no recovery"); *Szymborski v.*

17  *Ormat Technologies, Inc.*, No. 3:10–CV–132–RCJ, 2012 WL 4960098, at *3-4 (D. Nev. Oct. 16,

18  2012) (noting class counsel "shouldered the risk of non-payment by taking the class action suit on a

19  contingency fee basis."). A lodestar crosscheck analysis is offered should the Court choose to do so.

20          **2.    Class Counsel's Percentage of the Fund Fee Request is Reasonable.**

21      Class Counsel's request for 30% of the $45,000,000 common fund is reasonable in light of

22  their efforts and the excellent results they obtained for the settlement Class. Fitzpatrick Decl. ¶¶ 14-

23  23. The fee is only a little above the benchmark and the adjustment is warranted when considering

24  the substantial risks they took and the significant value they created in a complex case involving two

25  Data Incidents. The fee is justified under the pertinent factors and when viewed in comparison to the

26  empirical data and the economics of class action litigation. When evaluating a fee award, the main

27  inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

28  When assessing whether the percentage requested is fair and reasonable, courts generally consider

the following factors: "(a) the results achieved; (b) the risk of the litigation; (c) the skill required; (d) the quality of the work performed; (e) the contingent nature of the fee and the financial burden; and (f) awards made in similar cases." *Daniels,* 2023 WL 11910245, at *2 (quoting *Vizcaino*, 290 F.3d at 1047-1050). *See also* Fitzpatrick Decl. ¶ 14.

### a. Class Counsel's Efforts Resulted in Substantial Benefits

Without Class Counsel's efforts to file and prosecute the Action, there would be no Settlement providing monetary benefits for the Settlement Class. Joint Decl. ¶ 33-34. When considering the issues Plaintiffs faced, a $45,000,000 Settlement Fund that provides for meaningful cash recovery available for the entire Settlement Class is substantial. *Id.* ¶ 33. As this Court is well aware, the 2019 Action was actively litigated. *Id.* ¶ 32. The 2019 Plaintiffs had to survive a motion to dismiss and engage in considerable discovery, including the production and review of hundreds of thousands of documents and the taking and defending of many depositions. *Id.* Not until the second data breach and the filing of the 2023 Action, requiring Caesars to defend two high profile cases, did Caesar's agree to explore settlement. *Id.* At that point, Class Counsel for the 2019 Action had already spent thousands of hours of time working on the 2019 Action and incurred hundreds of thousands of dollars in costs with experts preparing for class certification and eventually trial. *Id.*

This Settlement was only possible once the 2019 Plaintiffs and the 2023 Plaintiffs agreed to work cooperatively for the best interest of those impacted in the Data Incidents. *Id.* Even then the original mediation date was cancelled, delaying the eventual mediation and later negotiations that allowed for the Settlement. *Id.* ¶¶ 10-13. Class Counsel's efforts result in an all-cash fund of $45,000,000 for Settlement Class members to apply for out-of-pocket documented losses up to $15,000 each plus a separate Tiered Cash Payment, the amount of which is based upon the type of data they had impacted in the Data Incidents. *Id.* ¶ 33. Additionally, Settlement Class Members may elect to receive one year of Financial Account Monitoring— identity theft protection (with $1,000,000 in insurance) and credit monitoring. *Id.*

The Settlement, which provides for substantial tangible benefits now (as opposed to years in the future, if at all) are the direct result of Class Counsel's efforts. *Id.* ¶ 34. Defendant continues to maintain that Settlement Class members data was not exposed in any harmful way, and that for the

1   overwhelming majority of the Settlement Class Members their most sensitive Private Information

2   was not impacted, making the recovery of $45,000,000.00 outstanding. *Id.* The Settlement is

3   favorable when compared to other data breach settlements involving similar types of data and

4   considering the entirety of the Data Incidents. *Id. See also* Fitzpatrick Decl. ¶ 17.

5                              **b.  Plaintiffs Faced Significant Risks**

6           Plaintiffs and the Settlement Class faced serious litigation risks and could have ended up with

7   nothing if they did not settle at this stage. Joint Decl. ¶ 43. The risk involved is emphasized by the

8   fact that, historically, data breach class actions face substantial hurdles in surviving the class

9   certification stage. *Id. See also, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-

10  mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification);

11  *FultonGreen,* 2019 WL 4677954 at *8 (data breach class actions are "a risky field of litigation because

12  [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec.*

13  *Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); Fitzpatrick Decl. ¶ 17. Further, maintaining class

14  certification through trial is another overarching risk. Joint Decl. ¶ 43. But for this settlement, in

15  addition to certifying and maintaining a class, Plaintiffs would have had time to overcome summary

16  judgment, succeed at trial, and win on appeal to recover. *Id.* To date, no data breach has been tried

17  and so the outcome is even more uncertain. *Id.* Considering Defendant has compelling defenses,

18  continuing to pursue the Actions posed a significant risk for Plaintiffs and the Settlement Class. *Id.* ¶

19  44. Thus, Class Counsel's risks weigh in favor of Class Counsel's requested fee.

20                         **c.  Counsel's Experience Benefited the Settlement Class**

21          Class Counsel and the others appointed to the 2023 Action's Plaintiffs' Steering Committee

22  are some of the most experienced data breach class action plaintiffs' firms and attorneys in the

23  country.[7] Joint Decl. ¶ 29. This formidable team of attorneys used their years of experience of

24  handling privacy class actions in federal and state courts throughout the country to litigate the Actions

---

26  [7] Class Counsel's resumes outlining the depth of their experience are attached to the Motion for
27  Preliminary Approval as Exhibits B1-9. (2019 ECF No. 243-2). As the Court has already considered
    them in conjunction with the appointment of Class Counsel at the preliminary approval stage, to avoid
28  redundancy, Class Counsel did not attach them here.

1   here efficiently and to achieve a favorable resolution in the face of serious risks. *Id.*

2      Class Counsel are responsible for shaping much of the data breach jurisprudence that courts

3   rely on today, including the favorable rulings from this Court on the Motion to Dismiss in the 2019

4   Action, that no doubt would have been very persuasive to the Court in the 2023 Action. *Id.* ¶ 30. Their

5   experience in developing the legal framework in this sector was invaluable in navigating through the

6   complicated issues presented in these Actions. *Id.*

7      Class Counsel have led some of the most intricate multidistrict litigation privacy cases, and

8   in so doing have worked with nearly every privacy expert, briefed and argued nearly every type of

9   dispositive motion, argued for and obtained class certification, and settled some of the largest data

10  breaches in history. *Id.* Their history of negotiating hundreds of settlements was critical here. *Id.*

11  Combining overlapping classes from two separate data breaches into a single Settlement that fairly

12  and equitably distributes funds based upon sensitivity of impacted data elements required experience

13  and skills honed over many years. *Id.* ¶ 31. At the end of the day, the Settlement Class greatly

14  benefited from Class Counsel's experience.

15                    **d.   Counsel Took the Case on a Contingency Assuming Financial Risks**

16     Class Counsel, the 2023 Action's Plaintiffs' Steering Committee, and additional Plaintiffs'

17  counsel agreed to represent the Plaintiffs and the Settlement Class on a fully contingent basis,

18  knowing they would have to advance time and out-of-pocket costs with no guarantee of recovery. *Id.*

19  ¶ 35. In doing so, they forwent representing other clients in other cases so they could dedicate their

20  resources to the Actions. *Id.* The organization of counsel ensured work was coordinated to maximize

21  efficiency and minimize duplication of effort. *Id.*

22     Class Counsel devoted substantial time to investigating the claims. *Id.* ¶ 37. Class Counsel

23  also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and

24  resources were also dedicated to working with experts, engaging in motion practice and in formal and

25  informal discovery, including the taking and defending of many depositions and the production and

26  review of thousands of pages of documents, and preparing for and attending a successful mediation.

27  *Id.* ¶ 38. Significant time was then devoted to negotiating and drafting that Agreement, developing

28  the Claim process, the Preliminary Approval process, and to all actions required thereafter pursuant

to the Preliminary Approval Order. *Id.* Class Counsel has also spent substantial time leading up to the filing of this Motion for Final Approval, addressing the implementation of the Notice Program, Claim process, and preparing this Motion. *Id.* ¶ 39. Time will also be spent preparing for and attending the Final Approval Hearing. *Id.* Finally, Class Counsel will devote substantial time to Settlement administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement if fully implemented. *Id.* As Professor Fitzpatrick notes, the requested fee award is below the well-known and standard one-third contingent fee percentage seen in individual litigation, even with sophisticated clients. Fitzpatrick Decl. ¶ 20.

### e. The Fee Request is Consistent with Fee Awards in Similar Cases

Given the facts and circumstances presented herein, the 30% fee award sought here is within the range of fees typically awarded in this Circuit and in data breach cases across the country. In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33.3% of the settlement fund. *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 448 (9th Cir. 2000); *Daniels*, 2023 WL 11910245, at *2. There are actually many examples of attorneys' fee awards of 33.33% or higher in data breach cases. *See, e.g.*, *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Weschester Cty.) (approving 35% of common fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving one-third of common fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc.*, No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same). *See also* Fitzpatrick Decl. ¶ 16.

### 3.    The Requested Fee Award Is Supported By a Lodestar Crosscheck

The Court is not obligated to perform a lodestar cross-check in evaluating the percentage of the fund to be awarded. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017) (district court did but was not required to do a lodestar cross-check); *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) ("a cross-check is entirely discretionary"). *See also* Fitzpatrick Decl. ¶21 (citing *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020)). The foregoing should assuage the Court that using the percentage-of-the-fund method is appropriate without a cross-check. Nevertheless, recognizing this Court, at times, conducts a lodestar crosscheck, Class Counsel has provided the Court with the information needed to do so. The first step is to determine the lodestar amount, multiplying the Class Counsel's total number of hours expended by their reasonable hourly rates. *Bluetooth*, 654 F.3d at 941-42. The second step requires the Court to consider a multiplier to add or subtract from the lodestar in light of the reasonableness factors addressed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which overlap with the factors considered under the percentage method.[8]

Class Counsel's Joint Declaration evidences that they reasonably and collectively expended a total of 9,498.70 hours investigating, litigating, settling, and seeking settlement approval of both the 2019 Action and 2023 Action, inclusive of an estimate of 40 hours that they will spend to work to complete the Final Approval process and then spend post-Final Approval to distribute the Settlement benefits, along with the reasonable hourly rates for attorneys' and paralegals. Joint Decl. ¶¶ 52-158 (providing firm-specific lodestar calculations for Class Counsel firms, 2023 Action Plaintiffs' Steering Committee firms, and additional Plaintiffs' firms).[9]

---

[8] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

[9] Should the Court request additional detail related to the hours spent prosecuting the Action, Class Counsel will submit records for *in camera* consideration. Joint Decl. ¶ 48.

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). A "reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The market for attorneys specializing in data breach class actions is far more developed outside of Nevada, as demonstrated by the Court's appointment of counsel from around the country who have expertise in data privacy litigation to lead the Action, first on an interim basis and then as Class Counsel for the Settlement Class. "The court may consider rates outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Yuga Labs, Inc. v. Hickman*, No. 2:23-CV-111 JCM (NJK), 2024 WL 2801495, at *3 (D. Nev. May 31, 2024). (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition to affidavits and evidence, the court may also "rely on its own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Ninth Circuit precedent permits Class Counsel to base their lodestar calculations on current market rates in recognition that Class Counsel has taken this litigation as a contingent fee matter delaying any recovery until the outcome of the case. *Fischel v. Eq. Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1050-51. Therefore, Class Counsel believe the Court is justified in relying on the attorney rates ($260 to $1,600) and paralegal rates ($125 to $500 ) presented in this Action for the crosscheck, *even if* the Court were to conclude that a lower number of hours or lower hourly rates would be more appropriate, a higher lodestar multiplier would still fall within the range of those routinely approved in this Circuit, and would continue to support the requested fee. *See, e.g., Abdullah v. U.S. Sec. Assocs., Inc.*, 2017 WL 11630767, *10 (C.D. Cal. Dec. 4, 2017) (approving fee award of one-third of common fund, explaining that even after reducing class counsel's hourly rates and thereby using a more conservative

27

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW

1  lodestar, the higher lodestar multiplier thus required was appropriate because "Class Counsel took

2  this case on a contingent basis and achieved a significant recovery for the class."); *Good Morning to*

3  *You Prods. Corp. v. Warner/Chappell Music, Inc.*, 2016 WL 6156076, **15–16 (C.D. Cal. Aug. 16,

4  2016) (reducing class counsel's lodestar but nonetheless approving one-third of common fund where

5  the higher lodestar multiplier required still fell within the range of those frequently used).

6       Applying the requested rates to the total hours expended (inclusive of 40 estimated future

7  hours to be spent in this Action) results in a $7,503,023.21 lodestar. Joint Decl. ¶ 48. An award of

8  $13,500,000.00 would result in a reasonable lodestar multiplier of 1.80. *Id.* Multipliers in the 1.0 to

9  4.0 range are acceptable in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1052-54 (approving a 3.65

10  multiplier and noting the range of 1.0 to 4.0). *See also* Fitzpatrick Decl. ¶ 24 (noting multiplier in this

11  Action, if considered by the Court, is reasonable given Ninth Circuit precedent and empirical

12  research).

13       Class Counsel's contingent representation, combined with the excellent results obtained in

14  this risky litigation, and the quality of Class Counsel's previous work and future work to be done,

15  support application of the requested multiplier under the *Kerr* factors. 526 F.2d at 69-70. The cross-

16  check should not be given undue weight given that Class Counsel maximized the value for the class

17  under the circumstances, and the crosscheck should not be used to undermine the rationale of the

18  preferred percentage method in a case like this. Entertaining a lodestar crosscheck does not create the

19  best incentives for class action lawyers because it reintroduces the very same undesirable

20  consequences of the lodestar method that the percentage method was designed to correct in the first

21  place. Fitzpatrick Decl. ¶ 21 ("courts that entertain the lodestar crosscheck ultimately hurt class

22  members by creating bad incentives for their lawyers"). As the Ninth Circuit has observed, if class

23  counsel believe courts will cap the percentage awarded at some multiple of their lodestar, they will

24  be incentivized to build a high lodestar. Doing so would breed *inefficiency, performance of*

25  *unnecessary projects, delay results, and overbill and overstaff work* in order to justify what is already

26  a reasonable fee award under the percentage method. *See Vizcaino*, 290 F.3d at 1050 n. 5 ("[I]t is

27  widely recognized that the lodestar [cross-check] creates incentives for counsel to expend more hours

28  than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). The lodestar

28

1    crosscheck also caps the amount of compensation class counsel can receive from a settlement, thereby

2    misaligning their incentives from those of class members that the percentage method was designed to

3    correct in the first place, and blunting counsel's incentive to achieve the largest possible award for

4    the class. *See* Fitzpatrick Decl. ¶ 21-23.

5          Giving due consideration to the foregoing, the Court should conclude that a lodestar cross-

6    check against the $13,500,000.00 attorneys' fee award Class Counsel request supports that award, in

7    recognition of Class Counsel's achievements for the Settlement Class. Fitzpatrick Decl. ¶ 24.

8    Therefore, Class Counsel respectfully requests the Court grant this attorneys' fee award.

9          **B.    The Litigation Costs are Reasonable**

10         Class Counsel additionally requests the Court grant its request for reimbursement of

11   $801,631.96 in costs reasonably incurred in connection with the prosecution of the Actions. Class

12   Counsel assumed the risk of advancing the costs without knowing whether they would be reimbursed.

13   Joint Decl. ¶ 35. These costs are set forth by category of expense in the Joint Declaration of Class

14   Counsel. *Id.* ¶¶ 49, 50, 57, 62, 67, 73, 78, 83, 88, 93, 98, 103, 108, 113, 118, 123, 128, 133, 138, 143,

15   148, 153, 158. The costs, which include filing fees, service fees, expert fees, deposition fees,

16   deposition transcript fees, mediation fees, and travel and accommodations (billed at half) are

17   reasonable, customary, and reimbursable. *See Gonzalez-Rodriguez v. Mariana's Enter., et. al.*, No.

18   2:15-cv-00152-JCM-PAL, 2016 WL 3869870, at * 10 (D. Nev. July 14, 2016) (noting there is no

19   doubt that an attorney who creates a common fund for a class is entitled to reimbursement of

20   reasonable expenses from that fund). *See also Int'l Broth. of Elec. Workers Local 697 Pension Fund*

21   *v. Int'l Game Tech., Inc.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at * 5 (D. Nev. Oct.

22   19, 2012 (awarding reimbursement of costs, including fees for investigators, depositions,

23   computerized research, travel, copying, and filing fees). The Notices advised the Settlement Class

24   that Class Counsel would be seeking cost reimbursement, and not a single member objects. Joint

25   Decl. ¶ 45. As these costs were reasonably and necessarily incurred, the Court should approve

26   reimbursement of the requested costs out of the Settlement Fund.

27         **C.    The Service Awards Are Reasonable**

28         Class Counsel request Service Awards for the Class Representatives in recognition of their

29

1  initiating the Actions and serving as Class Representatives on behalf of the Settlement Class.

2  Specifically, Class Counsel request $10,000.00 for those Class Representatives that were deposed by

3  the Defendant and $3,500.00 for those who were not. The Service Award amounts were negotiated

4  by the Parties after all material terms of the Settlement, so they will not impact the recovery available

5  to the Settlement Class. Joint Decl. ¶ 159. The Notice advised the Settlement Class that Class Counsel

6  intended on seeking these amounts and not a single Settlement Class Member has objected. *Id.*;

7  Admin Decl., Attachments 1-4, 6, 10, 11.

8      The Ninth Circuit has "repeatedly held that reasonable incentive awards to class

9  representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th

10  Cir. 2022) (quotation marks and citation omitted). Indeed, service awards are "fairly typical in class

11  action cases." *Rodriguez v. W. Publ'g Corp.*, 563. F.3d 948 (9th Cir. 2009). Service Awards are

12  intended to compensate class representatives for work done on behalf of the class, to make up for

13  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

14  willingness to act as a private attorney general. *Id.* at 958-59.

15      Here, the Class Representatives were essential in securing relief for the Settlement Class. Joint

16  Decl. ¶ 160. They undertook personal risk to do so and worked closely with Class Counsel throughout

17  the Action. *Id.* The Plaintiffs in the 2019 Action were subject to aggressive discovery by the

18  Defendant. *Id.* They assisted with responding to written discovery, produced personal information,

19  and sat for deposition. *Id.* The plaintiffs in the 2023 Action were not deposed, but they were prepared

20  to do whatever was reasonably necessary for the benefit of the Settlement Class. *Id.* All Class

21  Representatives were instrumental in Class Counsel's investigation of the Data Incidents, stayed in

22  communication with Class Counsel, and remained involved in the entire process. *Id.* They each

23  reviewed the Settlement Agreement and agreed to the terms of the Settlement. *Id.* The Class

24  Representatives commitment to the Settlement Class' interests and desire to hold the Defendant

25  accountable was essential to the successful prosecution of this class action and warrants the

26  reasonable Service Awards requested here. *Id.*

27      Service awards for the requested amounts are routinely approved in this Circuit and in this

28  Court. *See, e.g. In re Mego Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (awarding $10,000

30

incentive awards to two named plaintiffs); *Lee v. Enterprise Leasing Co.-West*, No. 3:10–CV–00326–LRH–WGC, 2015 WL 2345540 (D. Nev. May 15, 2015) ($10,000 awarded to each plaintiff).

Consequently, for their service to the Settlement Class, Ryan Bohlim, Duke Hwynn, Larry Lawter, Kerry Shapiro, Gennady Simkin, Robert Taylor, and Victor Wukovits should be awarded $10,000.00 each, and Tonya Owens, Emily Kirwan, David Zussman, David Lackey, Michael Pircio, David Terezo, Ronald G. Rundell, Laura Willis Abrigo, Anita Johnson, Paul Zari, Michael Manson, Kyle Sloan, Michelle Righetti, Edgar Mejia, and DuJun Johnson should be awarded $3,500.00 each.

### D. The Settlement Administration Costs Are Reasonable

In granting Final Approval to the Settlement, the Court should also approve the payment of the Settlement Administration Costs from the Settlement Fund pursuant to the Agreement. Agreement ¶ 89. The robust Notice Program required for this Settlement to the Rule 23 and due process requirements has been completed, and the Settlement Administrator will then implement the Settlement terms by distributing the Document Loss Payments, Tiered Cash Payments, and Financial Account Monitoring. For this work, the Court should approve the payment of estimated Settlement Administration Costs totaling $6,997,408.00. Admin Decl. ¶ 44.

## VII. CONCLUSION

Plaintiffs respectfully request the Court enter an order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; (4) reappointment of John Yanchunis, Doug McNamara, E. Michelle Drake, David Berger, J. Gerard Stranch IV, Lynn Toops, James Pizzirusso, Gary Klinger, and Jeff Ostrow as Class Counsel; (5) awarding Service Awards to the Class Representatives; (6) awarding attorneys' fees and costs to Class Counsel; (7) affirming the appointment of the Settlement Administrator and approving the payment of Settlement Administration Costs; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attached a proposed Final Approval order as *Exhibit E*.

Dated:   May 2, 2025.                          Respectfully submitted,

*/s/ Douglas J. McNamara*                       */s/ J. Gerard Stranch IV*
Douglas J. McNamara                            J. Gerard Stranch IV
(Admitted Pro Hac Vice)                        (Admitted Pro Hac Vice)
**COHEN MILSTEIN SELLERS &**                    **STRANCH, JENNINGS & GARVEY, PLLC**
**TOLL, PLLC**                                  The Freedom Center
1100 New York Ave                              223 Rosa L. Parks Avenue, Suite 200
5th Floor Washington, DC 20005                 Nashville, Tennessee 37203
Tel.: 202-408-4600                             Tel: 615-254-8801
dmcnamara@cohenmilstein.com                    gstranch@stranchlaw.com

E. Michelle Drake                              James J. Pizzirusso
(Admitted Pro Hac Vice)                        (Admitted Pro Hac Vice)
**BERGER MONTAGUE PC**                          **HAUSFELD LLP**
43 SE Main Street, Suite 505                   888 16th Street, Ste 300
Minneapolis, MN 55414                          Washington, DC 20006
Tel.: 612-594-5999                             Tel: 202-540-7200
emdrake@bm.net                                 jpizzirusso@hausfeld.com

John A. Yanchunis                              Lynn Toops
(Admitted Pro Hac Vice)                        (Admitted Pro Hac Vice)
**MORGAN & MORGAN**                             **COHEN & MALAD, LLP**
**COMPLEX LITIGATION GROUP**                    One Indiana Square, Suite 1400
201 N. Franklin Street, 7th Floor              Indianapolis, Indiana 46204
Tampa, Florida 33602                           Tel: 317-636-6481
Tel.: 813-223-5505                             ltoops@cohenandmalad.com
jyanchunis@forthepeople.com

David M. Berger                                Gary Klinger
(Admitted Pro Hac Vice)                        (Admitted Pro Hac Vice)
**GIBBS LAW GROUP LLP**                         **MILBERG COLEMAN BRYSON**
1111 Broadway, Suite 2100                      **PHILLIPS GROSSMAN, PLLC**
Oakland, California 94607                       227 W. Monroe Street, Suite 2100
Tel.: 510-350-9700                             Chicago, IL 60606
dmb@classlawgroup.com                          Tel: 866.252.0878
                                               *gklinger@milberg.com*

                                               Jeff Ostrow
                                               (Admitted Pro Hac Vice)
                                               **KOPELOWITZ OSTROW, P.A.**
                                               One West Las Olas Blvd., Suite 500
                                               Fort Lauderdale, Florida 33301
                                               Tel: 954-332-4200
                                               ostrow@kolawyers.com

                                               *Class Counsel*

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW